**Parent A.B.**
**June 30, 2026**

**[REDACTED VERSION]**

# ANNUAL REVIEW MEETINGS
# UNDER
# FORT LEE BOARD OF EDUCATION CEASE-AND-DESISTS
# AND
# ARMED AGGRESSION AGAINST PARENTS

**Definitions**

"**1st C&D**" or "**March 3 Cease & Desist Email**" means the first cease-and-desist delivered to Parents by Taylor Law by email on March 3, 2026.

"**2nd C&D**" or "**March 21 Cease & Desist Letter**" means the second cease-and-desist delivered to Parents by Taylor Law by letter on March 21, 2026.

"**3rd C&D**" or "**May 15 Cease & Desist Email**" means the third cease-and-desist delivered to Parent A.B. by Taylor Law by email on May 15, 2026.

"**All Board Members**" or "**Board**" means Holly Morell, Kristen Richter, Tanya Byers-Kang, Keith Gosselin, Kim Curry, Amy Ko-Tang, Douglas Lopez, John McTiernan, and Michele Perez, the board members of the LEA.

"**Board Secretary Rinderknecht,**" "**Board Secretary and Business Administrator Rinderknecht**," or "**Business Administrator Rinderknecht**" means Michael Rinderknecht, the secretary of the FLBOE and the business administrator of the FLBOE.

"**[Case Manager 2]**" means the [Case Manager 2], the current case manager of [E.B.-2] at LFCMS and the former case manager of [E.B.-1] at LFCMS.

"**[Case Manager 1]**" means [Case Manager 1], the case manager of [E.B.-1] at FLHS.

"**District**" or "**LEA**" means the local educational agency composed of the Board and the Fort Lee School District.

"**DSC Drumgoole**" means Kate Drumgoole, the Director of School Counseling of the District.

"**DSS Heinze**" means Monica Heinze, Director of Special Services of the District.

"**[E.B.-2]**" means [E.B.-2], a disabled student at LFCMS and the younger sibling of [E.B.-1].

"**[E.B.-1]**" means [E.B.-1], a disabled student at FLHS and the older sibling of [E.B.-2].

"**Fee-Padding and Ethical Breach Solicitation Letter**" means the letter from Eric Harrison, the partner-in-charge of the federal litigation at M&W, PC, to Rue Law on June 3, 2026, requesting that all attorneys unilaterally increase their scopes of representation without client approval and pad their fees.

"**FLBOE**" means the Fort Lee Board of Education.

"**FLHS**" means Fort Lee High School.

"**FLHS Principal Glynn**" means Lauren Glynn, the principal of FLHS.

"**[Guidance Counselor]**" means Mary [Guidance Counselor], the guidance counselor of [E.B.-1] at FLHS.

"**[IB Coordinator]**" means [IB Coordinator], the coordinator of the International Baccalaureate program at FLHS.

"**LFCMS**" means Lewis F. Cole Middle School.

"**LFCMS Principal Diaz**" means William Diaz, the principal of LFCMS.

"**M&W, PC**" means Methfessel & Werbel, PC, the law firm representing the FLBOE.

"**NJDOE**" means the New Jersey Department of Education.

"**NJDOE OFAC**" means the New Jersey Department of Education, Office of Fiscal Accountability and Compliance.

"**Occupational Therapist [Occupational Therapist]**" means [Occupational Therapist], the occupational therapist of [E.B.-2] and [E.B.-1] at the LEA.

"**Parent(s)**" means [Parent A.B.] and/or [Parent B.B.], as applicable.

"**Parent A.B.**" means [Parent A.B.], the father of [E.B.-1] and [E.B.-2].

"**Parent B.B.**" means [Parent B.B.], the mother of [E.B.-1] and [E.B.-2].

"**President Morell**" means Holly Morell, the current President and former Vice President of the FLBOE.

"**Rue Law**" means Rue Law Group LLC, the law firm retained by Parents in the federal litigation.

"[**Special Education Teacher]**" means [Special Education Teacher], the embedded special education teacher assigned to [REDACTED] of [E.B.-1] at Fort Lee High School.

"**Speech Therapist [Speech Therapist]**" means [Speech Therapist], a speech therapist in the LEA that does not provide any direct services to [E.B.-2] or [E.B.-1], but consults with [Private Speech and Social Skills Provider], the outside speech and social skills provider of [E.B.-2] and [E.B.-1].

"**Superintendent Collazo**" means Diane Collazo, the superintendent of the District.

"**Taylor Law**" means Taylor Law Group LLC, the law firm representing the FLBOE.

"**USDOE OCR**" means the United States Department of Education, Office of Civil Rights.

"**USDOE SPPO**" means the United States Department of Education, Student Privacy Policy Office.

"**Vice President Richter**" means Kristen Richter, the current Vice President and former President of the FLBOE.

"***Violations of Laws Ledger***" means this "Annual Review Meetings Under Fort Lee Board of Education Cease-and-Desists" document as drafted, updated, and distributed by Parent A.B. at any time referenced herein.

"**Waterfall**" means the principles for selecting advanced courses as articulated by Parents and defined in an email from Parent A.B. to the District on February 9, 2026.

4

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 1. | 2/3/26 | Parent A.B. | Science | Parent A.B. informs three STEM teachers, [Guidance Counselor], and [IB Coordinator] that [E.B.-1] came home with an online form that requires [E.B.-1] to choose an advanced science course for next year. | District rejects student and parent input during 15-minute meeting with [E.B.-1] and constructs predetermined course schedule on 3/3/26. | District issues 1st C&D on 3/3/26.<br><br>District issues 2nd C&D on 3/21/26. |
| | | | | Parent A.B. informs three STEM teachers, [Guidance Counselor], and [IB Coordinator] that [E.B.-1] does not understand the difference between IB SL and IB HL courses and that [E.B.-1] wants AP-level science courses. | | |
| | | | | Parent A.B. informs three STEM teachers, [Guidance Counselor], and [IB Coordinator] that [E.B.-1] does not want to take honors-level science courses. | | |
| 2. | 2/3/26 | Parent B.B. | Science | Parent B.B. loops [Case Manager 1] into the email chain to discuss Study Hall and the Spanish teacher into the email chain to discuss summer courses in Spanish for [E.B.-1]. | District remains silent and does not provide information. | District issues 1st C&D on 3/3/26.<br><br>District issues 2nd C&D on 3/21/26. |
| 3. | 2/4/26 | [Guidance Counselor] | Science | [Guidance Counselor] responds that she will review the questions regarding physics courses, IB requirements, and potential summer course credits for Spanish as soon as possible, and she copies DSC Drumgoole. | District rejects student and parent input during 15-minute meeting with [E.B.-1] and constructs predetermined course schedule on 3/3/26. | District issues 1st C&D on 3/3/26.<br><br>District issues 2nd C&D on 3/21/26. |
| 4. | 2/4/26 | Parent A.B. | Science | Parent A.B. informs [Guidance Counselor], [IB Coordinator], and DSC Drumgoole that [E.B.-1] is concerned because the IB program is being implemented as a humanities program at FLHS and that [E.B.-1] does not want to lose any educational opportunities on the quantitative side. | District rejects student and parent input during 15-minute meeting with [E.B.-1] and constructs predetermined course schedule on 3/3/26. | District issues 1st C&D on 3/3/26.<br><br>District issues 2nd C&D on 3/21/26. |
| 5. | 2/4/26 | Parent A.B. | Science | Parent A.B. informs [Guidance Counselor], [IB Coordinator], and DSC | District rejects student and | District issues 1st C&D on |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | Drumgoole that:<br>(a) [E.B.-1] did not receive any guidance at school even though the deadline to choose advanced science courses was today;<br>(b) [E.B.-1] does not want to take [Advanced Course] his junior year; and<br>(c) [E.B.-1] wants to take [Advanced Course] and [Advanced Course] because he wants to reserve the option to simultaneously complete the IB program and take an AP-level science class. | parent input during 15-minute meeting with [E.B.-1] and constructs predetermined course schedule on 3/3/26. | 3/3/26.<br><br>District issues 2nd C&D on 3/21/26. |
| 6. | 2/5/26 | [IB Coordinator] | Science | [IB Coordinator] writes that he does not want to discuss the schedule of [E.B.-1] until new science courses for the IB program are finalized. [IB Coordinator] writes that he will reach out to Parent A.B. when the details are ironed out with FLHS Principal Glynn and DSC Drumgoole. | District remains silent and does not provide information. | District issues 1st C&D on 3/3/26.<br><br>District issues 2nd C&D on 3/21/26. |
| 7. | 2/5/26 | Parent A.B. | Science | Parent A.B. informs [IB Coordinator] that, if the school does not yet know the course offerings for advanced courses in science, then the school should not be distributing a form asking students and parents to choose advanced courses in science. | District rejects student and parent input during 15-minute meeting with [E.B.-1] and constructs predetermined course schedule on 3/3/26. | District issues 1st C&D on 3/3/26.<br><br>District issues 2nd C&D on 3/21/26. |
| 8. | 2/8/26 | Parent A.B. | Spanish | Parent A.B. informs the Spanish teacher of [E.B.-1] and [Guidance Counselor], [IB Coordinator], DSC Drumgoole and various administrators that [E.B.-1] will be taking a Spanish course over the summer. | District rejects student and parent input during 15-minute meeting with [E.B.-1] and constructs predetermined course schedule on 3/3/26. | District issues 1st C&D on 3/3/26.<br><br>District issues 2nd C&D on 3/21/26. |
| 9. | 2/9/26 | [Guidance Counselor] | Meeting regarding [E.B.-1]'s Junior Year Schedule | [Guidance Counselor] offers the Parents a meeting on February 23, 2026 to address the questions as a team. | Parent A.B. requests written communications instead of meetings on 2/9/26 because of [Religious observance]. | District issues 1st C&D on 3/3/26.<br><br>District issues 2nd C&D on |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | | | 3/21/26. |
| 10. | 2/9/26 | Parent A.B. | Meeting regarding [E.B.-1]'s Junior Year Schedule | Parent A.B. declines meeting during the daytime in [Religious observance] and informs [Guidance Counselor] that [E.B.-1] requests the following waterfall to be implemented when enrolling in advanced courses for his protection:<br>(a) [E.B.-1] will be automatically enrolled in the most advanced courses that [E.B.-1] is academically qualified for based on his grades;<br>(b) The school will obtain parental consent in writing prior to any claim that [E.B.-1] allegedly opted out of the most advanced courses; and<br>(c) The most advanced courses for a particular subject are defined as:<br>(i) HL-level courses, then<br>(ii) AP-level courses, then<br>(iii) SL-level courses, then<br>(iv) honors-level courses.<br>(d) All of the above principles for selecting advanced courses, including sections (a) through (c), and subsections (c)(i) through (c)(iv), collectively referred to as the "**Waterfall**." | District rejects student and parent input during 15-minute meeting with [E.B.-1] and constructs predetermined course schedule on 3/3/26. | District issues 1st C&D on 3/3/26.<br><br>District issues 2nd C&D on 3/21/26. |
| 11. | 2/10/26 | DSC Drumgoole | Meeting regarding [E.B.-1]'s Junior Year Schedule | DSC Drumgoole thanks Parent A.B. for the Waterfall. | District remains silent and does not provide information. | District issues 1st C&D on 3/3/26.<br><br>District issues 2nd C&D on 3/21/26. |
| 12. | 2/13/26 | [Case Manager 2] | Scheduling of Upcoming Meeting | [Case Manager 2] sends email to Parents to confirm availability for the annual review meeting of [E.B.-2] on March 9 or March 10, 2026. | District rejects legally compliant counterproposal from Parent A.B. on 2/18/26. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | | | District issues 1st C&D on 3/3/26. |
| 13. | 2/13/26 | Parent A.B. | Scheduling of Upcoming Meeting | Parent A.B. asks [Case Manager 2] to choose any date and time during a two-week window between March 23, 2026 and April 3, 2026 that both Parent A.B. and Parent B.B. blocked off in their calendars for the purposes of attending annual review meetings in person. | District rejects legally compliant dates on 2/18/26. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections.<br><br>District issues 1st C&D on 3/3/26. |
| 14. | 2/13/26 | Parent A.B. | Scheduling of Upcoming Meeting | Parent A.B. loops in [Case Manager 1] to the conversation because the due date of [E.B.-1] is a week earlier than [E.B.-2], and Parent A.B. proposes that [Case Manager 2] pick any date during the week of March 30, 2026 and that [Case Manager 1] pick any date during the week of March 23, 2026. | District rejects legally compliant dates on 2/18/26. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections.<br><br>District issues 1st C&D on 3/3/26. |
| 15. | 2/13/26 | [Case Manager 2] | Scheduling of Upcoming Meeting | [Case Manager 2] responds positively by stating that he will "target that time window and plan to follow up with more information late next week." | District rejects legally compliant dates on 2/18/26. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections.<br><br>District issues 1st C&D on 3/3/26. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 16 | 2/13/26 | [Case Manager 1] | Scheduling of Upcoming Meeting | [Case Manager 1] responds positively by stating that he will "will have to look at my calendar for those proposed dates," but points out that [Case Manager 1] was about to reach out to Parent A.B. to propose March 12, 2026. | District rejects legally compliant dates on 2/18/26. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections.<br><br>District issues 1st C&D on 3/3/26. |
| 17 | 2/13/26 | Parent A.B. | Scheduling of Upcoming Meeting | Parent A.B. restates the legally compliant annual review meeting dates. Parent A.B. gives the District flexibility to choose any date and time during a two-week window that both Parent A.B. and Parent B.B. blocked off in their calendars for the purposes of attending annual review meetings in person. | District rejects legally compliant dates on 2/18/26. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections.<br><br>District issues 1st C&D on 3/3/26. |
| 18. | 2/18/26 | [Case Manager 1] | Scheduling of Upcoming Meeting | [Case Manager 1] rejects the legally compliant meeting dates proposed by Parents.<br><br>[Case Manager 1] writes that the IEP will "expire" on the annual review due date.<br><br>[Case Manager 1] writes that the annual review meeting "has to be held at least 15 days prior to the expiration of the IEP."<br><br>[Case Manager 1] proposes two dates and times that conflict with the religious observances during [Religious observance] and work schedules of Parents. | Parents do not accept factual or legal analyses of the District. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections.<br><br>District issues 1st C&D on 3/3/26. |
| 19. | 2/18/26 | Parent A.B. | Scheduling of | Parent A.B. requests that [Case Manager 1] provide the New Jersey | District confirms IEPs are | District believes IEPs expire |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | Upcoming Meeting | code citation that requires meetings to be held at least 15 days prior to the expiration of IEPs. | subject to "expiration" on 2/19/26.<br><br>District remains silent on the issue of 15 days. | on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections.<br><br>District issues 1st C&D on 3/3/26. |
| 20. | 2/18/26 | Parent A.B. | Scheduling of Upcoming Meeting | Parent A.B. informs DSS Heinze that the New Jersey code does not contain a requirement to hold the annual review meetings 15 days prior to the annual review due date. | District confirms IEPs are subject to "expiration" on 2/19/26.<br><br>District remains silent on the issue of 15 days. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections.<br><br>District issues 1st C&D on 3/3/26. |
| | | | | Parent A.B. informs DSS Heinze that the past practice of the District was to hold annual review meetings months after the annual review meeting due date. | | |
| 21. | 2/18/26 | Parent A.B. | Scheduling of Upcoming Meeting | Parent A.B. informs Vice President Richter that IEPs do not expire and that a requirement to hold annual review meetings 15 days before the annual review due date does not exist. | District confirms IEPs are subject to "expiration" on 2/19/26.<br><br>District remains silent on the issue of 15 days. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections.<br><br>District issues 1st C&D on 3/3/26. |
| | | | | Parent A.B. informs Vice President Richter that Parents have not retained counsel for the purposes of the upcoming annual review meetings and should not be punished for proceeding pro se with respect to such routine meetings. | | |
| | | | | Parent A.B. reminds Vice President Richter that she authorized the District to retain counsel recently for the District to cease engaging in repeated violations of law. | | |
| 22. | 2/18/26 | Parent A.B. | Scheduling of Upcoming Meeting | Parent A.B. informs the District that case managers can consult ChatGPT as a resource to understand the gravity of falsifying legal | District confirms IEPs are subject to "expiration" on | District believes IEPs expire on annual review due dates |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | information and lying to parents. | 2/19/26.<br><br>District remains silent on the issue of 15 days. | and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections.<br><br>District issues 1st C&D on 3/3/26. |
| 23. | 2/18/26 | Parent A.B. | Scheduling of Upcoming Meeting | Parent A.B. informs the District that case managers can consult Google as a resource to understand the gravity of falsifying legal information and lying to parents. | District confirms IEPs are subject to "expiration" on 2/19/26.<br><br>District remains silent on the issue of 15 days. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections.<br><br>District issues 1st C&D on 3/3/26. |
| 24. | 2/18/26 | Parent B.B. | Scheduling of Upcoming Meeting | Parent B.B. informs the District that [Case Manager 1] managed to scare Parent B.B. by stating that the IEPs are going to "expire."<br><br>Parent B.B. informs the District that Parents have not requested any updated classroom observations or evaluations from any of their independent experts, Parents have not retained any attorney for the purposes of the upcoming annual review meetings, and Parents are not anticipating any due process hearings.<br><br>Parent B.B. reminds the District that the District constructed the IEPs of [E.B.-1] and [E.B.-2] very recently based on a wide variety of independent neuropsychological and other reports, and that the upcoming annual review meetings are supposed to be routine status updates.<br><br>Parent B.B. proposes new dates for annual review meetings, which | District confirms IEPs are subject to "expiration" on 2/19/26.<br><br>District remains silent on the issue of 15 days. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections.<br><br>District issues 1st C&D on 3/3/26. |

11

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | are noncompliant for [E.B.-1] by a few school days but compliant for [E.B.-2], to ensure she has time to carefully review any proposed IEPs after the annual review meetings. | | |
| 25. | 2/19/26 | [Case Manager 1] | IEP meeting | [Case Manager 1] confirms that IEPs are subject to expiration on the "IEP expiration date." | District confirms IEPs are subject to "expiration." | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections.<br><br>District issues 1st C&D on 3/3/26. |
| | | | | [Case Manager 1] proposes dates that are consistent with the new dates proposed by Parent B.B. from the prior evening, demonstrating that the District is able to accept legally noncompliant dates for annual review meetings upon parental request. | District remains silent on the issue of 15 days. | |
| 26. | 2/19/26 | Parent A.B. | IEP meeting | Parent A.B. notes that the District is misrepresenting the law while being advised by multiple law firms and lawyers. | District confirms IEPs are subject to "expiration" on 2/19/26.<br><br>District remains silent on the issue of 15 days. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections.<br><br>District issues 1st C&D on 3/3/26. |
| | | | | Parent A.B. notes that the concept of an IEP expiring or having an expiration date does not exist. | | |
| | | | | Parent A.B. asks if [Case Manager 1] is trying to purposefully mislead, scare, or antagonize Parents. | | |
| 27. | 2/19/26 | DSS Heinze | Scheduling [E.B.-1]'s IEP Meeting | DSS Heinze informs Parents that she is involving herself in the discussion for the first time. | District confirms IEPs are subject to "expiration" on 2/19/26.<br><br>District remains silent on the issue of 15 days. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections.<br><br>District issues 1st C&D on 3/3/26. |
| | | | | DSS Heinze requests that Parents accept the legally compliant dates Parents proposed prior to the coercive misrepresentations of law by the District. | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 28. | 2/19/26 | Parent A.B. | Scheduling [E.B.-1]'s IEP Meeting | Parent A.B. informs the District that the notion that [Case Manager 1] reached out to Parent A.B. multiple times without the knowledge or direction of DSS Heinze is unlikely. | District confirms IEPs are subject to "expiration" on 2/19/26.<br><br>District remains silent on the issue of 15 days. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections.<br><br>District issues 1st C&D on 3/3/26. |
| | | | | Parent A.B. requests a formal explanation from DSS Heinze regarding the coercive misrepresentations of law by the District. | | |
| 29. | 2/19/26 | Parent A.B. | Concerns of the Parent - October 29, 2025 | Parent A.B. asks Vice President Richter if the District needs guidance from the NJDOE to confirm (a) IEPs do not expire, (b) state law does not require meeting 15 days before the annual review due date, and (c) pressuring Parents with the false threat of an expiring IEP is misconduct. | District confirms IEPs are subject to "expiration" on 2/19/26.<br><br>District remains silent on the issue of 15 days. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections.<br><br>District issues 1st C&D on 3/3/26. |
| | | | | Parent A.B. asks Vice President Richter why the District is unaware of the basic tenets of special education law while being advised by multiple law firms and lawyers. | | |
| 30. | 2/20/26 | Parent A.B. | Concerns of the Parent - October 29, 2025 | Parent A.B. informs Vice President Richter of the negative shift in tone with respect to [Case Manager 1] between his email on February 13, 2026 to his email on February 18, 2026. | District confirms IEPs are subject to "expiration" on 2/19/26.<br><br>District remains silent on the issue of 15 days. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections.<br><br>District issues 1st C&D on 3/3/26. |
| | | | | Parent A.B. informs Vice President Richter that the supervisors of [Case Manager 1] appear to have directed [Case Manager 1] to be inflexible and oppressive compared to his earlier communication. | | |
| 31. | 2/20/26 | [Case Manager 2] | Scheduling of Upcoming Meeting: [E.B.-2] | [Case Manager 2] requests that Parents accept the legally compliant dates Parents proposed prior to the coercive misrepresentations of law by the District. | District confirms IEPs are subject to "expiration" on 2/19/26. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | [Case Manager 2] blacks out April 1 and 2 as potential meeting dates for reasons unknown to Parent A.B. at the time. | District remains silent on the issue of 15 days. | days prior to such expiration despite parental objections.<br><br>District issues 1st C&D on 3/3/26. |
| 32. | 2/20/26 | Parent A.B. | Scheduling of Upcoming Meeting: [E.B.-2] | Parent A.B. notes that [Case Manager 2] is aware that Parent A.B. is waiting for a formal explanation from DSS Heinze regarding the coercive misrepresentations of law by the District. | District confirms IEPs are subject to "expiration" on 2/19/26.<br><br>District remains silent on the issue of 15 days. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections.<br><br>District issues 1st C&D on 3/3/26. |
| 33. | 2/20/26 | Parent A.B. | Concerns of the Parent - October 29, 2025 | Parent A.B. informs Vice President Richter that DSS Heinze is likely engaging in gamesmanship by instructing both case managers to send emails to Parents while Parent A.B. is waiting for a formal explanation. | District confirms IEPs are subject to "expiration" on 2/19/26.<br><br>District remains silent on the issue of 15 days. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections.<br><br>District issues 1st C&D on 3/3/26. |
| 34. | 2/21/26 | Parent A.B. | Scheduling: April 14-24 | On Saturday morning, Parent B.B. alerts Parent A.B. that [Case Manager 2] likely blacked out April 1 and 2 because of Passover, which resonates strongly with Parent A.B.<br><br>Parent A.B. attempts to defuse tensions and remove the specter of coercion by proposing annual review meeting dates after [Religious observance], Passover, and Spring Break in order to accommodate the religious preferences of Parent A.B. and the case managers as | Proposal by Parents to hold annual review meetings after religious observances and a family vacation rejected by District under color of law on 2/26/26. | Parent participation is not a priority for the District under IDEA.<br><br>District issues 1st C&D on 3/3/26. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | well as to accommodate the family vacation of Parents during Spring Break. | | |
| | | | | Parent A.B. gives the District the flexibility to choose any date and time during a two-week window after the family vacation that would delay the annual review due date by only a few school days, if necessary. | | |
| 35. | 2/22/26 | Parent A.B. | Science | Parent A.B. emails [IB Coordinator], copying FLHS Principal Glynn, DSC Drumgoole, DSS Heinze, [Guidance Counselor], [Case Manager 1], and three STEM teachers, and writes:<br>(a) Parents found out from [E.B.-2] that [E.B.-1] will be unable to take two advanced science courses his junior year because advanced science courses require two periods instead of one period.<br>(b) Parents are proposing a revised schedule after discussions with [E.B.-1] because [E.B.-1] wants a heavily STEM schedule:<br>  (i) *[Advanced Course]* (requires 87, [E.B.-1] has 93)<br>  (ii) *[Advanced Course]* (requires 83, [E.B.-1] has 97)<br>  (iii) *[Advanced Course]* (requires 87, [E.B.-1] has 94)<br>  (iv) *[Advanced Course]* (requires 83, [E.B.-1] has 94)<br>  (v) *[Advanced Course]* (requires 87, [E.B.-1] has 93)<br>  (vi) *[Advanced Course]* (requires 87, [E.B.-1] has 94)<br>(c) Parent A.B. reminds the District of the Waterfall of course selection principles [E.B.-1] wants to implement to protect himself against manipulation. | District rejects student and parent input during 15-minute meeting with [E.B.-1] and constructs predetermined course schedule on 3/3/26. | District issues 1st C&D on 3/3/26.<br><br>District issues 2nd C&D on 3/21/26 |
| 36. | 2/23/26 | Parent A.B. | Make up Sessions [E.B.-1] and [E.B.-2] | Parent A.B. asks the District why the District is preventing [E.B.-1] and [E.B.-2] from making up speech and social skills sessions with the outside service provider when the outside service provider wants to make up such sessions. | District remains silent and does not provide information. | District issues 1st C&D on 3/3/26.<br><br>District issues 2nd C&D on 3/21/26 |
| 37. | 2/23/26 | Parent A.B. | Make up Sessions | Parent A.B. asks President Morell and Vice President Richter to clarify | District responds on 2/25/26 | District issues 1st C&D on |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | [E.B.-1] and [E.B.-2] | the policy and practice of make-up sessions for services within the District. | that [E.B.-1] can make up sessions for services. | 3/3/26.<br><br>District issues 2nd C&D on 3/21/26 |
| 38. | 2/25/26 | [Case Manager 1] | [Private Speech and Social Skills Provider] make up sessions | [Case Manager 1] writes: "As services are provided by [Private Speech and Social Skills Provider], they can be made up. Please reach out to them directly to arrange a time that works for you." | Parent A.B. requests description of global policy and practice on 2/25/26. | District does not identify a global policy or practice. |
| 39. | 2/25/26 | Parent A.B. | Make up Sessions [E.B.-1] and [E.B.-2] | Parent A.B. informs President Morell, Vice President Richter, and Superintendent Collazo that the answer of [Case Manager 1] is the exact opposite of the answer he gave to the outside service provider on December 22, 2025. | District remains silent and does not provide information. | District does not identify a global policy or practice.<br><br>District issues 1st C&D on 3/3/26.<br><br>District issues 2nd C&D on 3/21/26 |
| | | | | Parent A.B. requests that President Morell, Vice President Richter, and Superintendent Collazo identify a policy or practice that can be consistently applied to [E.B.-1] and [E.B.-2]. | | |
| 40. | 2/25/26 | [IB Coordinator] | Science | [IB Coordinator] responds to Parent A.B. that the District will "make sure to take your concerns into consideration at the scheduling meeting" with [E.B.-1]. | District rejects student and parent input during 15-minute meeting with [E.B.-1] and constructs predetermined course schedule on 3/3/26. | District issues 1st C&D on 3/3/26.<br><br>District issues 2nd C&D on 3/21/26 |
| 41. | 2/26/26 | DSS Heinze | Scheduling of Annual Review Meetings | DSS Heinze rejects the proposal of Parents to defuse tensions and remove the specter of coercion by meeting after [Religious observance], Passover, and the family vacation over Spring Break. | Parent A.B. informs FLBOE of rejection on 2/26/26. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections. |
| | | | | DSS Heinze increases the level of coercion by writing to Parents that the NJDOE wants the meetings to be held on the legally compliant dates Parents had proposed prior to the coercive misrepresentations of law by the District. | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | DSS Heinze cites an incorrect section of the New Jersey code for reasons unclear to Parents, citing subsection (j) instead of (i). | | District issues 1st C&D on 3/3/26. |
| 42. | 2/26/26 | Parent A.B. | Scheduling of Annual Review Meetings | Parent A.B. informs President Morell, Vice President Richter, and Superintendent Collazo that DSS Heinze is continuing to "harass" Parents. | District issues 1st C&D on 3/3/26. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections. |
| 43. | 2/26/26 | Parent A.B. | Scheduling: April 14-24 | Parent A.B. informs President Morell, Vice President Richter, and Superintendent Collazo that DSS Heinze rejected a second two-week window to meet with Parents. | District issues 1st C&D on 3/3/26. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections. |
| | | | | Parent A.B. requests that President Morell, Vice President Richter, and Superintendent Collazo review whether lawyers are directing DSS Heinze to misrepresent the law on the front end only to turn around and feign ignorance by reaching out to the NJDOE on the back end. | | |
| | | | | Parent A.B. informs President Morell, Vice President Richter, and Superintendent Collazo that the actions of DSS Heinze "reek of bad faith and gamesmanship." | | |
| 44. | 2/26/26 | Parent B.B. | Scheduling: April 14-24 | Parent B.B. informs President Morell and Vice President Richter that Parents are being "punished" and asks how, in the mind of the District, dates that were illegal on February 18 can be legally mandatory today. | District issues 1st C&D on 3/3/26. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections. |
| | | | | Parent B.B. requests that the District schedule the annual review meeting dates unilaterally if the District genuinely believes that the District is on "solid legal ground" when refusing to accommodate Parents by delaying the annual reviews for "a couple of school days." | | |
| | | | | Parent B.B. requests that the District make a choice and issue Written Notices of meeting dates as soon as possible. | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 45. | 2/27/26 | Parent A.B. | Scheduling: April 14-24 | Parent A.B. reminds President Morell, Vice President Richter, and Superintendent Collazo that Parents revoked the legally compliant dates Parents had originally proposed after [Case Manager 1] confirmed that the IEPs are going to expire. | District issues 1st C&D on 3/3/26. | District believes IEPs expire on annual review due dates and annual review meetings have to be held at least 15 days prior to such expiration despite parental objections. |
| | | | | Parent A.B. writes that if the case managers are going to propose significant changes to the IEPs, such that the IEPs are about to "expire" in their minds, Parents will need time to retain counsel, which Parents do not want to do while abroad. | | |
| 46. | 2/27/26 | Superintendent Collazo | Scheduling: April 14-24 | Superintendent Collazo acknowledges receipt of communications. | Parents receive Written Notices on 3/2/26. | District issues 1st C&D on 3/3/26. |
| 47. | 2/27/26 | Parent A.B. | Scheduling: April 14-24 | Parent A.B. requests that the FLBOE review the internal communications of the District to ensure that the FLBOE is meeting its fiduciary duties. | District issues 1st C&D on 3/3/26. | District issues 2nd C&D on 3/21/26. |
| 48. | 3/2/26 | Superintendent Collazo | Scheduling: April 14-24 | Superintendent Collazo authorizes Written Notices consistent with the second two-week window proposed by Parents, which had been previously rejected by DSS Heinze. | Parents receive Written Notices on 3/2/26. | District issues 1st C&D on 3/3/26. |
| 49. | 3/2/26 | [Case Manager 1] | Meeting Scheduled - 04/23/2026 | [Case Manager 1] distributes an attendee list for the annual review meeting of [E.B.-1]. | Parents receive attendee list on 3/2/26. | District issues 1st C&D on 3/3/26. |
| 50. | 3/2/26 | [Case Manager 2] | Meeting Scheduled - 04/20/2026 | [Case Manager 2] distributes an attendee list for the annual review meeting of [E.B.-2]. The attendee list does not include LFCMS Principal Diaz among the 14 attendees invited from the District. | Parents receive attendee list on 3/2/26. | District issues 1st C&D on 3/3/26. |
| 51. | 3/2/26 | [Case Manager 1] | Frontline Education | [Case Manager 1] distributes Written Notice for the annual review meeting of [E.B.-1]. | Parents receive Written Notices on 3/2/26. | District issues 1st C&D on 3/3/26. |
| 52. | 3/2/26 | [Case Manager 2] | Frontline Education | [Case Manager 1] distributes Written Notice for the annual review meeting of [E.B.-2]. | Parents receive Written Notices on 3/2/26. | District issues 1st C&D on 3/3/26. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 53. | 3/3/26 | Taylor Law | Scheduling of Annual Review Meetings | The FLBOE sends a comprehensive response to all of the above parental concerns by issuing the March 3 Cease & Desist Email from Taylor Law.<br><br>Taylor Law addresses the March 3 Cease & Desist Email to "Mr. and/or Mrs. [B.]."<br><br>The March 3 Cease & Desist Email is designed to chill speech, proscribe petitions, and intimidate Parents.<br><br>1. Unlawful Intent<br><br>The first paragraph of the March 3 Cease & Desist Email raises questions about the professional competence of the law firm representing the Board.<br><br>The law firm uses the word "proscribe" incorrectly when delivering a legal opinion, stating that the District effectuated "timelines and procedures proscribed by the IDEA, Title 18A and/or regulations proscribed by the NJ Commissioner of Education." The law firm uses the word "proscribe" incorrectly three times.<br><br>Further, the law firm capitalizes every letter in the word "not" when directing Parents to cease communications with the Board. Knowing that such block capitals are commonly interpreted as yelling over email, the law firm writes the word "not" in block capitals twice for maximum impact.<br><br>By using the word "proscribe" three times and capitalizing the word "not" twice, the law firm is clearly raging in anger and trying to proscribe something of significance. What is the law firm trying to proscribe? What were Parents doing prior to the March 3 Cease & Desist Email that led the Board to intimidate Parents and chill their speech under the color of law? | Parent A.B. informs FLBOE on 3/5/26 that 1st C&D is unlawful.<br><br>**See Notes.** | Communication of Parent B.B. is unlawfully proscribed because Parent B.B. is intimidated.<br><br>Parent B.B. had contacted the FLBOE and the District only 3 times so far. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | **2.** <u>Refusal of Notice</u><br><br>Parents were notifying the highest authority in their Local Educational Agency of violations of law. The March 3 Cease & Desist Email requires Parents to cease direct communications with All Board Members even though Parents had only contacted President Morell and Vice President Richter during the relevant time period. The March 3 Cease & Desist Email deliberately refuses to provide Parents any alternative means to provide notice of violations of law to the highest authority in their Local Educational Agency.<br><br>Within a local educational agency, the board of education is the ultimate authority responsible for ensuring the District operates lawfully. The March 3 Cease & Desist Email is designed to delegate responsibility for adhering to the law to the administrators, creating a "ringfence" that protects illegal activities from board scrutiny. Simply put, the March 3 Cease & Desist Email proscribes petitions in violation of the First Amendment to allow the Board to abdicate oversight of the LEA. | | |
| | | | | **3.** <u>No Excessive or Repetitive Communications Excuse</u><br><br>The intent of the Board to intimidate Parents and chill their speech is much clearer in the March 3 Cease & Desist Email than the March 21 Cease & Desist Letter because, at this point in time on March 3, 2026, the Board is not able to claim that Parents are engaging in excessive or repetitive communications.<br><br>While the Board does not find the communications of Parents excessive or repetitive in the March 3 Cease & Desist Email, its law firm still builds the same moat around the Board in the March 3 Cease & Desist Email as the March 21 Cease & Desist Letter. The March 21 Cease & Desist Letter simply uses different shovels to dig the same moat. | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | 4. <u>The Written Record is an Afterthought</u><br><br>The reason Parents contacted the Board in the first place was because the Department of Special Services engaged in coercive misrepresentations of law to enforce unilateral meeting dates. Comically, the law firm does not even bother to clarify the written record regarding such misrepresentations of law in the March 3 Cease & Desist Email.<br><br>Instead of clarifying the written record, the law firm prescribes that the District "exhausted reasonable, best and good faith efforts to meet all deadlines." The law firm uses the term "best and good faith efforts" despite glaring misrepresentations of law because the written record belongs to the Department of Special Services and the Department of Special Services is outside the moat. | | |
| | | | | 5. <u>Board Engages in Gratuitous Escalation Under Color of Law</u><br><br>The goal of the Board in the March 3 Cease & Desist Email is preventing notice because the subject of the March 3 Cease & Desist Email was already settled between the District and the Parents on March 2, 2026, the day before the March 3 Cease & Desist Email.<br><br>On March 2, 2026, Superintendent Collazo responded to Parents that the District will accept their request to hold the annual review meetings after their family vacation. The case managers followed up on the same day by issuing Written Notices as requested by Parent B.B.<br><br>The next day, the law firm gratuitously escalated tensions on behalf of the Board. The first paragraph of the March 3 Cease & Desist Email rehashes a matter that was already settled between the District and Parents because the law firm needed an excuse to build the moat that is the second paragraph: "*Kindly also accept this request to NOT send emails, correspondence, etc. directly to Board members regarding this* | | |

21

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | *matter."* <br><br> Parents interpreted such language as a directive to cease communicating with the Board on all topics involving the disabled children because the law firm did not specify the "matter" or limit the "matter," leaving its references to IDEA, Title 18A, and NJDOE regulations as the laws and regulations governing all matters covered by its directive. Parents were proven correct on March 21, 2026. | | |
| 54. | 3/3/26 | Parent A.B. | Scheduling: April 14-24 | Parent A.B. reminds President Morell, Vice President Richter, and Superintendent Collazo that DSS Heinze said "I love litigation" to Parents at the end of the annual review meeting last year after the parties stopped recording. | District issues 2nd C&D on 3/21/26. | District issues 2nd C&D on 3/21/26. |
| | | | | Parent notes that the March 3 Cease & Desist Email was a gratuitous escalation by the FLBOE considering the delivery of Written Notices by the case managers on March 2, 2026, the day before the March 3 Cease & Desist Email. | | |
| 55. | 3/3/26 | Parent A.B. | Science | Parent A.B. informs [Guidance Counselor] and [IB Coordinator] that [E.B.-1] brought home a predetermined course schedule. <br> (a) The predetermined course schedule contains the following courses: <br>   (i)    *[Advanced Course]* <br>   (ii)   *[Advanced Course]* <br>   (iii)  *[Advanced Course]* <br>   (iv)   *[Advanced Course]* <br>   (v)    *[Advanced Course]* <br>   (vi)   *[Advanced Course]* | District continues to reject student and parent input in favor of a predetermined course schedule on 3/3/26. | District issues 2nd C&D on 3/21/26. |
| | | | | Parent A.B. informs [Guidance Counselor] and [IB Coordinator] that the predetermined course schedule disregards written instructions from [E.B.-1] to the school to: <br> (a) implement the Waterfall of course selection principles for | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | advanced courses to avoid being manipulated;<br>(b) decline [Advanced Course] because [Advanced Course] is irrelevant to his STEM studies; and<br>(c) enroll in HL or AP-level STEM classes such as [Advanced Course] and [Advanced Course], as stated in his proposed schedule that was emailed to the school. | | |
| | | | | Parent A.B. informs the District that [E.B.-1] was upset and his "face soured." | | |
| 56. | 3/4/26 | Parent A.B. | Science | Parent A.B. forwards the entirety of his Science email chain to Superintendent Collazo. | District continues to reject student and parent input in favor of a predetermined course schedule on 3/3/26. | District issues 2nd C&D on 3/21/26. |
| 57. | 3/4/26 | Parent A.B. | Meeting regarding [E.B.-1]'s Junior Year Schedule | Parent A.B. forwards his February 9, 2026 email that defines the Waterfall and requests implementation of the Waterfall to Superintendent Collazo. | District continues to reject student and parent input in favor of a predetermined course schedule on 3/3/26. | District issues 2nd C&D on 3/21/26. |
| 58. | 3/4/26 | Parent A.B. | Make up Sessions [E.B.-1] and [E.B.-2] | Parent A.B. informs [Case Manager 1] and [Case Manager 2] that their supervisors are refusing to identify a policy or practice for making up missing services that can be consistently applied to both disabled children. | District remains silent and does not provide information. | District does not identify a global policy or practice.<br><br>District issues 2nd C&D on 3/21/26 |
| | | | | Parent A.B. proposes a reasonable, global policy for making up missing services that can be applied to both disabled children. | | |
| 59. | 3/4/26 | Parent A.B. | Meeting regarding [E.B.-1]'s Junior Year Schedule | Parent A.B. informs DSC Drumgoole that Parent A.B. is requesting the following information:<br>1.  A formal reconciliation of the information Parent A.B. provided to the District against the predetermined course schedule. Why [Advanced Course] instead of [Advanced Course]?<br>2.  A formal explanation of whether the IB Diploma, which requires | District continues to reject student and parent input in favor of a predetermined course schedule on 3/3/26. | District issues 2nd C&D on 3/21/26. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | two years of [Advanced Course], makes any sense for a STEM student.<br>3. The appeal form that DSS Heinze mentioned in an 10/20/25 email in regards to the [Advanced Course] debacle, which would allow Parents to request [Advanced Course] and [Advanced Course]. | | |
| 60. | 3/4/26 | [Guidance Counselor] | Science | [Guidance Counselor] informs Parent A.B. that (a) [E.B.-1] requested each course in his course schedule, (b) [E.B.-1] requested [Advanced Course] instead of [Advanced Course] even though [E.B.-1] was recommended for [Advanced Course], and (c) [Advanced Course] is required junior year as part of the IB Diploma. | District continues to reject student and parent input in favor of a predetermined course schedule on 3/3/26. | District issues 2nd C&D on 3/21/26. |
| 61. | 3/4/26 | Parent A.B. | Meeting regarding [E.B.-1]'s Junior Year Schedule | Parent A.B. memorializes the response from [Guidance Counselor] in the email chain that contains both the Waterfall and the requests for reconciliation of the predetermined schedule with the prior written information from Parents. | District continues to reject student and parent input in favor of a predetermined course schedule on 3/3/26. | District issues 2nd C&D on 3/21/26. |
| 62. | 3/4/26 | Parent A.B. | Science | Parent A.B. requests a committee to assist [Guidance Counselor] because [Guidance Counselor] is a new employee in the District. | District continues to reject student and parent input in favor of a predetermined course schedule on 3/3/26. | District issues 2nd C&D on 3/21/26. |
| 63. | 3/5/26 | Parent A.B. | Scheduling of Annual Review Meetings | Parent A.B. informs President Morell and Vice President Richter that the March 3 Cease & Desist Email is "an attempt to chill speech, proscribe petitions, and intimidate parents."<br><br>Parent A.B. informs President Morell and Vice President Richter that Parent B.B. was visibly nervous and visibly upset when she arrived at home from work.<br><br>Parent A.B. informs President Morell and Vice President Richter that Parent B.B. said "that law firm is going to sue us if we email" President Morell or Vice President Richter "again." | District issues 2nd C&D on 3/21/26. | District issues 2nd C&D on 3/21/26. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 64. | 3/5/26 | Parent A.B. | Science | Parent A.B. informs Superintendent Collazo that the District does not have the informed consent of [E.B.-1] with respect to course scheduling. | District continues to reject student and parent input in favor of a predetermined course schedule on 3/3/26. | District issues 2nd C&D on 3/21/26. |
| | | | | Parent A.B. requests responses to the following 12 questions by April 2, 2026, which Parent A.B. believes is eminently reasonable because the District will have had two full months to analyze the issues: | District continues to reject student and parent input in favor of a predetermined course schedule on 3/3/26. | District issues 2nd C&D on 3/21/26. |
| | | | | 1.  Are the only advanced science courses that will be offered next year [Advanced Course], [Advanced Course], [Advanced Course], [Advanced Course], and [Advanced Course]? [IB Coordinator] stated that the District was working on opening more advanced science courses. | District remains silent and does not provide information. | District issues 2nd C&D on 3/21/26. |
| | | | | 2.  Is [Advanced Course] during the junior year the sole advanced science course IB Diploma students can take across their junior and senior years combined by virtue of the IB Diploma course requirements? | District remains silent and does not provide information. | District issues 2nd C&D on 3/21/26. |
| | | | | 3.  Does the IB Diploma program structurally preclude students from taking advanced science courses their senior year? | District remains silent and does not provide information. | District issues 2nd C&D on 3/21/26. |
| | | | | 4.  Is the IB Diploma program as implemented in this school inappropriate for STEM students? | District remains silent and does not provide information. | District issues 2nd C&D on 3/21/26. |
| | | | | 5.  How do STEM students who are interested in IB courses go about structuring their schedules? | District remains silent and does not provide information. | District issues 2nd C&D on 3/21/26. |
| | | | | 6.  Please review your records for sophomores who were similarly situated to [E.B.-1] in terms of academic qualifications with respect to rigor of courses and grades. Over the past few | District remains silent and does not provide information. | District issues 2nd C&D on 3/21/26. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | years, what classes did these sophomores end up taking as juniors? | | |
| | | | | 7. Assuming sophomores who were similarly situated to [E.B.-1] and interested in the humanities took the same courses proposed by [Guidance Counselor], what did sophomores who were similarly situated to [E.B.-1] and interested in STEM take their junior year? | District remains silent and does not provide information. | District issues 2nd C&D on 3/21/26. |
| | | | | 8. Why was the case manager at this 15-minute course scheduling meeting with [E.B.-1]? ([Case Manager 1] is more than welcome, but [Special Education Teacher] knows more about academics and is certified in multiple fields of knowledge if you need SPED representation.) | District remains silent and does not provide information. | District issues 2nd C&D on 3/21/26. |
| | | | | 9. Parent A.B. sent an email on Day 1 stating that [E.B.-1] does not understand the difference between IB SL and IB HL courses and that [E.B.-1] wants AP-level IB science courses. Parent A.B. sent an email on Day 20 stating that [E.B.-1] put together a quantitative schedule that includes an AP science class. At the 15-minute course scheduling meeting, did anyone remind [E.B.-1] of the email Parent A.B. sent on Day 1 warning that [E.B.-1] is unaware that [Advanced Course] is an honors-level course and that [E.B.-1] was upset when he found out? Please be careful next time and do not ask "Do you want [Advanced Course] or [Advanced Course]?" in a vacuum because [E.B.-1] is going to forget. | District remains silent and does not provide information. | District issues 2nd C&D on 3/21/26. |
| | | | | 10. We do not understand how anyone can read our emails and conclude that [Advanced Course] should go into his schedule? Did the schedule come from [Guidance Counselor] during the 15-minute course scheduling meeting or from another source? Who put together this schedule? | District remains silent and does not provide information. | District issues 2nd C&D on 3/21/26. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | 11. Who can [E.B.-1] talk to in order to substantively compare [Advanced Course] and [Advanced Course]? What about [Advanced Course]? Who is teaching these courses? | District remains silent and does not provide information. | District issues 2nd C&D on 3/21/26. |
| | | | | 12. Can [E.B.-1] get credit for his Spanish course this upcoming summer at [Spanish Language School]? | District remains silent and does not provide information. | District issues 2nd C&D on 3/21/26. |
| 65. | 3/5/26 | DSC Drumgoole | Science | DSC Drumgoole responds to an outdated email from Parent A.B. stating that [E.B.-1] opted for [Advanced Course] instead of [Advanced Course] and that the request can be changed, harkening back to her oxymoronic theory earlier in the year of academically qualified students in protected categories voluntarily opting out of advanced classes unbeknownst to such students and their parents. | District continues to reject student and parent input in favor of a predetermined course schedule on 3/3/26. | District issues 2nd C&D on 3/21/26. |
| 66. | 3/5/26 | Parent A.B. | Science | Parent A.B. responds to DSC Drumgoole that the District should not respond to outdated emails and should focus on responding to the 12 questions Parent A.B. requested responses to by April 2, 2026. | District continues to reject student and parent input in favor of a predetermined course schedule on 3/3/26. | District issues 2nd C&D on 3/21/26. |
| 67. | 3/5/26 | Parent A.B. | Please Ensure Independence Regarding Course Selection | Parent A.B. reminds President Morell, Vice President Richter, and Superintendent Collazo that Parent A.B. is very familiar with the allegations Parents made in their letter to USDOE OCR on March 18, 2024 precisely because Parent A.B. wrote the allegations. | Superintendent Collazo acknowledges receipt on 3/5/26.<br><br>District issues 2nd C&D on 3/21/26. | District issues 2nd C&D on 3/21/26. |
| | | | | Parent A.B. requests that the FLBOE review whether a brain-damaged special education student, who has speech and memory issues, was manipulated into a program that does not make sense to him in light of his stated interests and his memorialized conversations with Parents. | | |
| | | | | Parent A.B. requests that the FLBOE ensure that the District is responsive to the 12 questions of Parent A.B. by April 2, 2026. | | |
| 68. | 3/5/26 | Superintendent Collazo | Please Ensure Independence Regarding Course | Superintendent Collazo acknowledges receipt of 12 questions from Parent A.B. | District issues 2nd C&D on 3/21/26. | District issues 2nd C&D on 3/21/26. |

27

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | Selection | | | |
| 69. | 3/6/26 | Parent A.B. | Please Ensure Independence Regarding Course Selection | Parent A.B. requests that the FLBOE review the internal communications of the District to ensure that the FLBOE is meeting its fiduciary duties. | District issues 2nd C&D on 3/21/26. | District issues 2nd C&D on 3/21/26. |
| | | | | Parent A.B. requests that Superintendent Collazo hold off on any further meetings with [E.B.-1] regarding course scheduling until Parent A.B. is able to walk the student through answers to the 12 questions posed by Parent A.B. to the District. | | |
| 70. | 3/7/26 | Parent A.B. | Electronic Devices Policy-[E.B.-2] | Parent A.B. informs [Case Manager 2] that [E.B.-2] is manifesting school refusal because of the denial of smartwatch accommodations. | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |
| | | | | The District denied smartwatch accommodations to [E.B.-2] and [E.B.-1] at the beginning of the school year because Parents refused to provide a written agreement forfeiting their right to oppose unjust discipline. | | |
| 71. | 3/7/26 | Parent A.B. | Electronic Devices Policy-[E.B.-2] | Parent A.B. informs Superintendent Collazo that the email from [Case Manager 2] containing the denial of accommodations and the imposition of disciplinary conditions appears to have been written by someone other than [Case Manager 2]. | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |
| 72. | 3/7/26 | Parent B.B. | Electronic Devices Policy-[E.B.-2] | Parent B.B. retracts the alternative request of carrying the smartwatch in a tote - as opposed to wearing the smartwatch - to avoid discipline because [E.B.-2] has been in distress all day at the prospect of losing his smartwatch. | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |
| | | | | Parent B.B. writes, "I feel we have to drop the issue" and concludes the matter. | | |
| 73. | 3/8/26 | Superintendent Collazo | Electronic Devices Policy-[E.B.-2] | On a Sunday morning, Superintendent Collazo responds that LFCMS will impose discipline for smartwatch accommodations unless Parents request an IEP meeting from [Case Manager 2]. | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 74. | 3/8/26 | Parent A.B. | Electronic Devices Policy-[E.B.-2] | Parent A.B. informs President Morell and Vice President Richter that the District is pretending not to understand federal and state law and drawing a full circle while being advised by multiple law firms and lawyers. | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |
| | | | | Parent A.B. informs President Morell and Vice President Richter that Parent A.B. should not have to send email after email to the District for the District to carry out its legal responsibilities. | | |
| 75. | 3/9/26 | Parent A.B. | Electronic Devices Policy-[E.B.-2] | Parent A.B. requests the following PWN information from [Case Manager 1] and [Case Manager 2] to hold IEP meetings. | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |
| | | | | 1. On September 3, 2025, Parent A.B. made a request to insert the following language into the IEPs of [E.B.-2] and [E.B.-1] as an amendment: "**Apple Watches can be continuously worn on the wrist, but not used without permission from a teacher, therapist, or aide, during school hours in order to assist in reducing anxiety as an exception to the Electronic Devices policy.**" *Was the insertion of this language into the IEPs of [E.B.-2] and [E.B.-1] discussed by their respective CSTs at any meeting at the time?* | | |
| | | | | 2. On September 8, 2025, the case managers jointly rejected the request to amend the IEPs and stated that the District will approve the language for a trial period on the explicit "**condition**" that Parents provide their written "**agreement**" to subject the disabled students to "**disciplinary actions**." *Why was the rejection of the IEP amendment and the subsequent proposal to condition accommodations on discipline not reflected in any PWN?* | | |
| | | | | 3. The CSTs had IEP meetings on September 17, 2025 with respect to [E.B.-2] and October 9, 2025 with respect to [E.B.-1]. The case managers did not raise, discuss, or consider the | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | accommodations at either meeting. Further, the Written Notice sections of the IEPs distributed by the District did not discuss the accommodations. *Why did the Written Notice sections of the September 17, 2025 IEP and the October 9, 2025 IEP fail to explain (a) why the request to amend the IEPs on September 3, 2025 was rejected and (b) why the proposal to condition accommodations on discipline on September 8, 2025 was appropriate?* | | |
| | | | | 4. The neuropsychological reports of [E.B.-1] and [E.B.-2] document a wide variety of disability-related deficiencies that hinder the ability of [E.B.-1] and [E.B.-2] to consistently request prior permission before accessing the accommodations, making them very easy targets for discipline. *What kind of experts or data does the District recommend Parents bring to the upcoming IEP meetings?* | | |
| 76. | 3/10/26 | Parent A.B. | Electronic Devices Policy-[E.B.-2] | Parent A.B. informs the case managers that the accommodations were purchased in response to 18 very specific disability issues that Parent A.B. identified after the distribution of predetermined and invalid IEPs for [E.B.-1] and [E.B.-2], at which time the case managers were incommunicado with Parents. | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |
| 77. | 3/10/26 | DSS Heinze | Electronic Devices Policy-[E.B.-2] | DSS Heinze ignores the directive by Superintendent Collazo to hold IEP meetings and informs Parent A.B. that accommodations will be addressed through IEP amendments. | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |
| 78. | 3/11/26 | Parent A.B. | Electronic Devices Policy-[E.B.-2] | Parent A.B. reminds DSS Heinze that accommodations were purchased one day after the case managers were incommunicado with Parents regarding 18 very specific issues that Parent A.B. identified after the distribution of predetermined and invalid IEPs for [E.B.-1] and [E.B.-2]. | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |
| 79. | 3/11/26 | Parent A.B. | Electronic Devices | Parent A.B. informs President Morell, Vice President Richter, and | District holds hostile, scripted | District issues 2nd C&D on |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | Policy-[E.B.-2] | Superintendent Collazo that the District has drawn a perfect circle from Superintendent Collazo and DSS Heinze down to [Case Manager 1] and [Case Manager 2] and back up to DSS Heinze and Superintendent Collazo. | IEP meetings on 3/13/26 to discuss. | 3/21/26. |
| | | | | Parent A.B. requests that President Morell, Vice President Richter, and Superintendent Collazo make sure the daily educational needs of [E.B.-1] and [E.B.-2] are not being impeded by the needs of administrators and their lawyers. | | |
| 80. | 3/11/26 | Parent A.B. | Smart Watches - [E.B.-2] and [E.B.-1] (Retaliation Concerns) | Parents inform teachers that Parents are nervous about retaliation because Parents are sensing administrative muscles being flexed toward [E.B.-1] and [E.B.-2] between February 18, 2026 and today. | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |
| | | | | Parents request that teachers tell [E.B.-1] and [E.B.-2] to put their smartwatches away immediately until the administration formally clarifies whether to impose discipline for accommodations. | | |
| 81. | 3/11/26 | Parent A.B. | Smart Watches - [E.B.-2] and [E.B.-1] (Retaliation Concerns) | Parent A.B. forwards the teacher email to President Morell, Vice President Richter, and Superintendent Collazo. | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |
| 82. | 3/11/26 | DSS Heinze | Electronic Devices Policy-[E.B.-2] | DSS Heinze responds to the questions regarding PWNs by (a) ignoring the disciplinary conditions, (b) abdicating the Child Find duties of the District, (c) identifying Parents as case managers, (d) blaming Parents, and (e) offering amendments instead of IEP meetings for the accommodations. | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |
| 83. | 3/11/26 | Parent A.B. | Electronic Devices Policy-[E.B.-2] | Parent A.B. responds three minutes later by asking, "Am I the case manager of [E.B.-1] and [E.B.-2]?" | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |
| 84. | 3/11/26 | Parent A.B. | Electronic Devices Policy-[E.B.-2] | At 11:59 p.m. near midnight, Parent A.B. informs President Morell, Vice President Richter, and Superintendent Collazo that Parents do | District holds hostile, scripted IEP meetings on 3/13/26 to | District issues 2nd C&D on 3/21/26. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | not have the time to be the case manager of the two disabled children, and that such a duty belongs to the District. | discuss. | |
| | | | | Parent A.B. further adds that if the burden of being a case manager belongs to Parents in this District, then the parties need to discuss more comprehensive alternative solutions for disabled students. | | |
| 85. | 3/12/26 | Parent A.B. | Notice: Request for Meeting of the Child Study Team - [E.B.-1] / [E.B.-2] | At 3:40 a.m., Parent A.B. distributes formal notice to the case managers and reiterates his request for IEP meetings to discuss accommodations because prior requests for IEP meetings were being ignored by the District in favor of IEP amendments. | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |
| 86. | 3/12/26 | Parent A.B. | Electronic Devices Policy-[E.B.-2] | At 3:42 a.m., Parent A.B. informs President Morell, Vice President Richter, and Superintendent Collazo that formal notices requesting IEP meetings were distributed under a different cover email. | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |
| 87. | 3/12/26 | Parent A.B. | Electronic Devices Policy-[E.B.-2] | At 9:12 a.m., Parent A.B. requests that President Morell, Vice President Richter, and Superintendent Collazo ensure the IEP meeting dates and times are set up as soon as possible considering the urgency of the matter. | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |
| 88. | 3/12/26 | Parent A.B. | Notice: Request for Meeting of the Child Study Team - [E.B.-1] / [E.B.-2] | At 12:03 p.m., Parent A.B. informs case managers that he has not slept because the accommodations being conditioned on discipline are the only thing on his mind. | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |
| | | | | Parent A.B. requests that the case managers set up the meetings as soon as possible and informs the case managers that Parent A.B. will skip fasting in order to attend by one day's notice if necessary. | | |
| 89. | 3/12/26 | [Case Manager 1] | Meeting Scheduled - 03/13/2026 | [Case Manager 1] distributes an attendee list for the IEP meeting of [E.B.-1]. | Parents receive the attendee list on 3/12/26. | District issues 2nd C&D on 3/21/26. |
| 90. | 3/12/26 | [Case Manager 2] | Meeting Scheduled - 03/13/2026 | [Case Manager 2] distributes an attendee list for the IEP meeting of [E.B.-2]. | Parents receive the attendee list on 3/12/26. | District issues 2nd C&D on 3/21/26. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|----------------------------------|----------|-------------------|
| | | | | [Case Manager 2] invites LFCMS Principal Diaz and gym teacher [Gym Teacher], two District personnel that Parents reported to USDOE OCR for retaliation, to a very intimate IEP meeting where only 6 individuals are invited as attendees from the District. | | |
| 91. | 3/12/26 | [Case Manager 1] | Frontline Education | [Case Manager 1] distributes Notice for the IEP meeting of [E.B.-1]. | Parents receive Notice on 3/12/26. | District issues 2nd C&D on 3/21/26. |
| 92. | 3/12/26 | [Case Manager 2] | Frontline Education | [Case Manager 2] distributes Notice for the IEP meeting of [E.B.-2]. | Parents receive Notice on 3/12/26. | District issues 2nd C&D on 3/21/26. |
| 93. | 3/12/26 | Parent A.B. | Electronic Devices Policy-[E.B.-2] | Parent A.B. is disoriented because of fast and responds to the wrong email chain, but accurately states that he would like to have the IEP meeting of [E.B.-2] on the same day as [E.B.-1] in order to avoid skipping the fast twice during [Religious observance]. | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |
| 94. | 3/12/26 | Parent A.B. | Smart Watches - [E.B.-2] and [E.B.-1] (Retaliation Concerns) | Parent A.B. informs President Morell, Vice President Richter, Superintendent Collazo, and DSS Heinze of the following facts:<br>(a) The two personnel involved in the retaliation complaint Parents filed with USDOE OCR, namely LFCMS Principal Diaz and gym teacher [Gym Teacher], have never attended any IEP meeting for either disabled student since the USDOE OCR complaint two years ago;<br>(b) The two personnel are now invited to a very intimate IEP meeting with only six attendees from the District;<br>(c) These IEP meetings are the first ad hoc IEP meetings that are going to be recorded in the 15-year history of the family with the District; and<br>(d) These IEP meetings will be recorded after an intense period of distress for Parents because of the constant barrage of administrative flexes from February 18 to today.<br><br>Parent A.B. openly asks President Morell, Vice President Richter, and Superintendent Collazo the following question: "**Is this a** | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | **provocation?**" | | |
| 95. | 3/12/26 | Parent B.B. | Smart Watches - [E.B.-2] and [E.B.-1] (Retaliation Concerns) | Parent B.B. informs President Morell, Vice President Richter, and Superintendent Collazo that she will be "skipping these meetings." | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |
| 96. | 3/12/26 | Parent A.B. | Smart Watches - [E.B.-2] and [E.B.-1] (Retaliation Concerns) | Parent A.B. informs DSS Heinze that the District will need to hold these IEP meetings in the absence of Parents because the September 3, 2025 IEP amendment language proposed by Parent A.B. is legally sound and the District needs to make a final decision regarding discipline by the end of the day tomorrow. | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |
| 97. | 3/12/26 | Parent A.B. | Smart Watches - [E.B.-2] and [E.B.-1] (Retaliation Concerns) | Parent A.B. informs teachers that [E.B.-2] accidentally wore his watch today because he misunderstood the updates regarding parental discussions with the administration. | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |
| | | | | Parent A.B. profusely apologizes to the teachers if either [E.B.-1] or [E.B.-2] put their teachers in an awkward position today. | | |
| 98. | 3/12/26 | DSS Heinze | Smart Watches - [E.B.-2] and [E.B.-1] (Retaliation Concerns) | DSS Heinze responds to Parents that she will hold the IEP meetings in the absence of Parents and forward the PWNs as soon as possible. | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |
| 99. | 3/12/26 | Parent A.B. | Smart Watches - [E.B.-2] and [E.B.-1] (Retaliation Concerns) | Parent A.B. informs President Morell, Vice President Richter, Superintendent Collazo, and DSS Heinze that the meetings are "hostile" and requests that a 3/23/24 Letter to the FLBOE regarding attempts to discipline the disability out of [E.B.-1] two years ago be entered as the specific reason Parents object to an accommodation conditioned on discipline. | District holds hostile, scripted IEP meetings on 3/13/26 to discuss. | District issues 2nd C&D on 3/21/26. |
| 100. | 3/13/26 | DSS Heinze | Smart Watches - [E.B.-2] and [E.B.-1] | DSS Heinze responds with one word: "Received." | District holds hostile, scripted IEP meetings on 3/13/26 to | District issues 2nd C&D on 3/21/26. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | (Retaliation Concerns) | | discuss. | |
| 101. | 3/13/26 | [Case Manager 1] | Frontline Education | [Case Manager 1] distributes an IEP after the IEP meeting of [E.B.-2]. | Parents receive IEP on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| 102. | 3/13/26 | [Case Manager 2] | Frontline Education | [Case Manager 2] distributes an IEP after the IEP meeting of [E.B.-2]. | Parents receive IEP on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| 103. | 3/13/26 | Parent A.B. | IDEA and IEPs | Parent A.B. informs Superintendent Collazo, DSS Heinze, and the case managers that Parents received nearly 100 pages of IEPs on Frontline as an update on the IEP meetings without any further information. | District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| | | | | Parent A.B. requests either written descriptions of changes made to the IEPs or redlines of the IEPs against prior versions. | | |
| | | | | Parent A.B. asks why audio-recordings have not been provided. | | |
| 104. | 3/13/26 | Parent A.B. | IDEA and IEPs | Parent A.B. asks Superintendent Collazo and DSS Heinze why the District is not providing a PWN to explain the shift in position between September 3, 2025 and today considering that the accommodations language in the IEPs are identical to the language Parent A.B. proposed on September 3, 2025. | District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| 105. | 3/13/26 | DSS Heinze | IDEA and IEPs | DSS Heinze writes that the District is not required to provide PWNs. | District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| | | | | DSS Heinze ignores the disciplinary conditions from September 8, 2025 and claims that ongoing discussions with Parent A.B. in early September precluded the District from making a final decision regarding the IEP amendment language proposed by Parent A.B. on September 3, 2025. | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | DSS Heinze explains that audio-recording can be provided if Parent A.B. would like a copy. | | |
| 106. | 3/13/26 | Parent A.B. | IDEA and IEPs | Parent A.B. asks DSS Heinze to provide the recordings. | District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| 107. | 3/13/26 | Parent A.B. | PWN Request | Parent A.B. asks President Morell, Vice President Richter, Superintendent Collazo, and DSS Heinze to provide PWNs because the accommodation language the IEP team inserted into the IEPs are identical to the IEP amendment language Parent A.B. requested on September 3, 2025. | District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| 108. | 3/13/26 | Parent A.B. | PWN Request | Parent A.B. requests clarity on whether the District is claiming that the September 3, 2025 IEP amendment request by Parent A.B. was improper under IDEA or whether the District is claiming that the September 3, 2025 IEP amendment request by Parent A.B. was proper under IDEA but was revoked by a September 9, 2025 email from Parent A.B. | District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| 109. | 3/13/26 | Parent A.B. | PWN Request | Parent A.B. requests clarity on how the District plans to spin the denial of accommodations for six months as a failure of Parents after accepting the September 3, 2025 IEP amendment language of Parent A.B. word for word and without a trial period and without disciplinary conditions. | District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| 110. | 3/13/26 | Parent A.B. | Collaboration under IDEA: Please Clarify Posture | Parent A.B. informs President Morell, Vice President Richter, Superintendent Collazo, and DSS Heinze that they cannot claim they are collaborating on March 11, 2026 while simultaneously violating the law and denying PWNs on March 13, 2026. | District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| 111. | 3/13/26 | Superintendent Collazo | Collaboration under IDEA: Please Clarify Posture | Superintendent Collazo acknowledges receipt of emails from Parent A.B. | District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 112. | 3/13/26 | Parent A.B. | Collaboration under IDEA: Please Clarify Posture | Parent A.B. informs Superintendent Collazo that the argument the District made earlier in the week when claiming that Parents failed the children does not work when the District accepts the same exact language requested by Parent A.B. six months later without any conditions. | District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| 113. | 3/13/26 | Parent A.B. | Collaboration under IDEA: Please Clarify Posture | Parent A.B. asks Superintendent Collazo: "What was the data that led Drs. [Case Manager 1] and [Case Manager 2] to propose a trial period involving discipline on September 8, 2025 in response to my language? What was the data that led Drs. [Case Manager 1] and [Case Manager 2] to accept my language as is on March 13, 2026? The inconsistency needs to be explained in a PWN." | District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| 114. | 3/13/26 | Parent B.B. | Collaboration under IDEA: Please Clarify Posture | Parent B.B. accidentally replies all to correct a technical point in the prior email from Parent A.B.: "Even the shift from offering a trial period versus no trial period needs to be justified with data, no?" | District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| 115. | 3/14/26 | Parent A.B. | Notice: Active Violation of Federal and State Law on PWNs as of March 13, 2026 | Parent A.B. notifies President Morell, Vice President Richter, and Superintendent Collazo that the District is in violation of federal and state law as of March 13, 2026 at 4:47 p.m. because the District wrote that the District is not legally required to provide PWNs. | District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| 116. | 3/15/26 | Parent A.B. | Notice: Active Violation of Federal and State Law on PWNs as of March 13, 2026 | Parent A.B. notifies President Morell and Vice President Richter that the FLBOE can likely prove that its interests have diverged from the interests of the District by reviewing whether a specific email about [E.B.-1] regarding a potential bullying incident and his fear of detention for using his smartwatch was forwarded or reviewed by the District between March 9, 2026 at 12:22 p.m. and March 11, 2026 at 8:42 p.m. | District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | Parent A.B. requests that the FLBOE fulfill its fiduciary duties and review why there has been no discussion of a potential six-month denial of FAPE during the March 13, 2026 IEP meetings. | | |
| 117. | 3/16/26 | DSS Heinze | IDEA and IEPs | DSS Heinze responds that she will get the recordings to Parent A.B. | District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| 118. | 3/16/26 | DSS Heinze | PWN Request | DSS Heinze responds that she will follow up shortly. | District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| 119. | 3/16/26 | Parent A.B. | Records Request: [E.B.-1] / [E.B.-2] | Parent A.B. informs Superintendent Collazo that the District is aware that Parents have not missed a single IEP meeting, whether ad hoc or for the purposes of an annual review, during the entirety of the lives of [E.B.-1] and [E.B.-2] from their early intervention years as toddlers to the morning of March 13, 2026. | The District decides to intentionally breach the mandatory 3/26/26 statutory deadline. | District issues 2nd C&D on 3/21/26. |
| | | | | Parent A.B. asks Superintendent Collazo why the audio records from the March 13, 2026 IEP meetings are not being provided to Parents promptly as a courtesy and why Parents have to claw for every piece of information. | | |
| | | | | Parent A.B. requests all school records to prepare for the upcoming annual review meetings, and he requests such records within the 10-day statutory deadline. | | |
| 120. | 3/17/26 | Parent A.B. | Records Request: [E.B.-1] / [E.B.-2] | Parent A.B. makes a more formal records request to the District with the appropriate legal citations to prevent the District from arguing that the District is not making a final decision regarding the provision of records because of ongoing discussions with Parents. | The District decides to intentionally breach the mandatory 3/26/26 statutory deadline. | District issues 2nd C&D on 3/21/26. |
| | | | | Parent A.B. writes the following:<br>● Under the authority of the New Jersey Pupil Records Act (N.J.S.A. 18A:36-19), the Family Educational Rights and | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | Privacy Act (FERPA), and specifically N.J.A.C. 6A:32-7.5, Parent A.B. requests a complete copy of the entire student record of [E.B.-1] and [E.B.-2].<br>● Pursuant to N.J.A.C. 6A:32-7.5, the district is required to provide access to these records within ten (10) days.<br>● This request includes, but is not limited to:<br>  ○ Mandated Records: All records required by N.J.A.C. 6A:32-7.3.<br>  ○ Disciplinary Records: All records of disciplinary actions, including those mandated by N.J.S.A. 18A:36-25.1.<br>  ○ Special Education/CST Records: All IEPs, progress reports, and evaluations.<br>  ○ Electronic Correspondence: All emails, internal memos, and digital communications that relate to [E.B.-1] or [E.B.-2].<br>● *Legal Basis for Inclusion of Emails*:<br>  ○ Per N.J.A.C. 6A:32-2.1, a "student record" is any information maintained for "second-party review." As internal staff emails regarding my children were intended for review by parties other than the author, they are student records and are not exempt as private "memory aids."<br>  ○ Furthermore, as established in L.R. v. Camden City Pub. Sch. Dist., 238 N.J. 547 (2019), the New Jersey Pupil Records Act provides broader protections than FERPA for information "related to" a student. | | |
| 121. | 3/17/26 | Superintendent Collazo | Records Request: [E.B.-1] / [E.B.-2] | Superintendent Collazo acknowledges formal records request from Parent A.B. | The District decides to intentionally breach the mandatory 3/26/26 statutory deadline. | District issues 2nd C&D on 3/21/26. |
| 122. | 3/17/26 | Parent A.B. | Records Request: [E.B.-1] / [E.B.-2] | Parent A.B. requests confirmation that Superintendent Collazo will abide by the mandatory statutory deadline of March 26, 2026. | The District decides to intentionally breach the | District issues 2nd C&D on 3/21/26. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | | mandatory 3/26/26 statutory deadline. | |
| 123. | 3/17/26 | Parent A.B. | Please Ensure Independence Regarding Course Selection | Parent A.B. asks Superintendent Collazo whether the April 2, 2026 deadline for answers to the 12 course scheduling questions can be moved ahead by a week to coincide with the student records request due on March 26, 2026. | The District continues to reject student and parent input in favor of a predetermined course schedule on 3/3/26. | District issues 2nd C&D on 3/21/26. |
| 124. | 3/18/26 | Parent A.B. | IEP Written Notes Clarification: Parents Boycotted Hostile Meeting | Parent A.B. corrects the written record by notifying President Morell, Vice President Richter, and Superintendent Collazo that Parents reject the labeling of Parents as obstructionists in the Written Notice sections of the March 13, 2026 IEPs for [E.B.-1] and [E.B.-2]. | The District continues to reject student and parent input in favor of a predetermined course schedule on 3/3/26. | District issues 2nd C&D on 3/21/26. |
| | | | | Parent A.B. states that Parents missed the IEP meetings of [E.B.-1] and [E.B.-2] for the first time in their lives because Parent B.B. was being intimidated and Parent A.B. was being provoked into a reaction on audiotape. | | |
| 125. | 3/18/26 | Parent A.B. | IEP Written Notes Clarification: [Advanced Course] and Out-of-District Placement | Parent A.B. corrects the written record by notifying President Morell, Vice President Richter, and Superintendent Collazo that Parents reject the labeling of Parents as unconcerned with respect to the future [Advanced Course] exam score of [E.B.-1] in [Advanced Course] in the Written Notice section of his March 13, 2026 IEP. | The District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| | | | | Parent A.B. reminds the District that the District denied [E.B.-1] an entire marking period of instruction in the [Advanced Course] course. Parent A.B. reminds the District that Parents said they were unconcerned with the future [Advanced Course] exam score of [E.B.-1] in order to manage the anxiety of [E.B.-1]. Parent A.B. explains that he is surprised that the District seized such a comment as an opportunity to paper the file regarding a purported lack of parental concern about his situation. | | |

40

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | Parent A.B. corrects the written record by notifying President Morell, Vice President Richter, and Superintendent Collazo that Parents reject the labeling of the neuropsychological reports of [Private Neuropsychologist], Ph.D., as recommending out-of-district placements for [E.B.-1] and [E.B.-2] in the Written Notice sections of their March 13, 2026 IEPs. | | |
| | | | | Parent A.B. explains that [Private Neuropsychologist], Ph.D., explicitly recommended a placement with neurotypical peers and special education supports and services, and she specifically referenced in-district placements. | | |
| | | | | Parent A.B. explains that if the District seriously believed out-of-district placements were appropriate for [E.B.-1] and [E.B.-2], the District would have discussed such placements in a more professional setting, such as, with respect to [E.B.-1], during the annual review meeting of [E.B.-1], or, with respect to [E.B.-2], in front of the teachers of [E.B.-2] during the annual review meeting of [E.B.-2]. | | |
| 126. | 3/18/26 | Parent A.B. | IEP Format: Please Do Not Be Petty | Parent A.B. notifies President Morell, Vice President Richter, and Superintendent Collazo that Parent A.B. is unable to search terms and copy and paste sentences from the March 13, 2026 IEPs for the first time in the long history of the relationship between Parents and the District.<br><br>Parent A.B. requests that the District refrain from being petty. | The District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| 127. | 3/18/26 | Parent A.B. | IEP Implementation During Interregnum | Parent A.B. alerts [Case Manager 1] and [Case Manager 2] that, while Parent A.B. is unable to sign the March 13, 2026 IEPs, Parent A.B. approves the accommodation language in the IEPs since Parent A.B. personally drafted such language back on September 3, 2026. | The District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| | | | | Parent A.B. states that he expects common sense to prevail and for the accommodations in the March 13, 2026 IEPs to be honored | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | without disciplinary conditions, particularly during the interregnum of 15 days between the March 13, 2026 meeting dates and implementation without signatures. | | |
| | | | | Parent A.B. requests that the case managers alert Parent A.B. if there are any issues with such an approach because Parent A.B. has not gained access to the audiotapes and does not know the content of the discussions (i.e., whether any attendee insisted on imposing discipline for accommodations). | | |
| 128. | 3/18/26 | M&W, PC | [EXTERNAL] 97566 Student records requested by your clients | M&W, PC provides deficient student records directly to Rue Law and excludes Parents from the disclosure, despite Parents providing 5 separate notices to the LEA between February 18, 2026, and March 14, 2026 that Parents are proceeding *pro se* on all administrative IDEA matters, including student records requests, ad hoc IEP meetings, and annual review meetings, and that Rue Law was retained strictly for the federal civil action filed on February 2, 2026. | The District issues 2nd C&D on 3/21/26. | The District issues 2nd C&D on 3/21/26. |
| | | | | The deficient student records disclosure is mostly limited to (i) IEPs and related documents that Parents and the District exchanged over the years, (ii) private evaluations that Parents provided to the District, and (iii) documents Parents already had access to through the Parent Portal. | | |
| | | | | The deficient student records disclosure was missing the following crucial documents, among other things:<br>1. Behavior chart and notes of [E.B.-2] containing self-harm;<br>2. Behavior chart and notes of [E.B.-1] after December 5, 2025;<br>3. Incident reports of disciplinary matters relating to [E.B.-2] and [E.B.-1];<br>4. Written statements relating to [E.B.-2] and [E.B.-1] (e.g. handwritten statements that LFCMS administrators made [E.B.-1] write some years ago);<br>5. Raw data, teacher data sheets, work samples, behavior | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | tracking logs, prompting logs, and accommodation logs relating to [E.B.-2] and [E.B.-1]; and<br>6. Internal emails relating to [E.B.-2] and [E.B.-1]. | | |
| | | | | M&W, PC wrote the following to Rue Law when providing the deficient student records:<br><br>"*Good morning John. Your client has requested all student records relating to his son. Since you'll **presumably want them in connection with this case**, I'm providing you with all non-email records via this link, through which you may download the records, residing in separate zip files for each student and audio recordings of the recent IEP meetings, any time before 3/30/26: …*<br><br>*As to the emails, there are several thousand, and because we cast a wide net to ensure that we capture all emails relating to both students, as you know, **FERPA, the NJPRA and privacy rights of others require that we review and redact as necessary** to prevent the disclosure of information relating to other students. That will take about **two weeks**, and once our review is complete, we will produce responsive emails.*" | | |
| 129. | 3/18/26 | Parent A.B. | Please Control Your District | Parent A.B. notifies President Morell and Vice President Richter that Parent A.B. does not understand why a lawyer for the District in an unrelated federal lawsuit is sending Parent A.B. routine school records with respect to routine annual review meetings. | The District issues 2nd C&D on 3/21/26. | District issues 2nd C&D on 3/21/26. |
| | | | | Parent A.B. notifies President Morell and Vice President Richter that Parent A.B. does not understand why a lawyer for the District in an unrelated federal lawsuit is writing that the District will be unable to provide such records by the mandatory March 26, 2026 statutory deadline. | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | Parent A.B. notifies President Morell and Vice President Richter that providing the records in early April would fall on the first day of the family vacation of Parents. | | |
| | | | | Parent A.B. requests enforcement of the mandatory March 26, 2026 statutory deadline from President Morell and Vice President Richter. | | |
| 130. | 3/18/26 | Parent A.B. | Student Records: The "Notes" and Disciplinary Record | Parent A.B. notifies [Case Manager 1] that the behavior chart and notes of [E.B.-1] are cut off after December 5, 2025 and notifies [Case Manager 2] that the behavior chart and notes of [E.B.-2] have not been provided at all in the partial records release. | The District decides to intentionally breach the mandatory 3/26/26 statutory deadline. | District issues 2nd C&D on 3/21/26. |
| 131. | 3/19/26 | Parent A.B. | Please Control Your District | Parent A.B. notifies President Morell and Vice President Richter that Parent A.B. has listened to the audiotapes of the March 13, 2026 IEP meetings and that such meetings were entirely scripted to present Parents as obstructionists, and that one of the case managers was reading from the script line by line. | District issues 2nd C&D on 3/21/26. | District issues 2nd C&D on 3/21/26. |
| | | | | Parent A.B. requests that the FLBOE appropriately supervise the District and ensure collaboration under IDEA. | | |
| 132. | 3/19/26 | Parent A.B. | Scripted IEP Audiotapes: Please Identify Case Managers | Parent A.B. notifies Superintendent Collazo that the March 13, 2026 IEP meetings were heavily scripted and focused on painting Parents as obstructionists, similar to the Written Notices sections of the March 13, 2026 IEPs of [E.B.-1] and [E.B.-2]. | District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| | | | | Parent A.B. notes that [Case Manager 2] read line by line from a script for the entirety of the meeting. Parent A.B. notes that [Case Manager 2] would often accidentally skip a word and then go back and re-read the same section all over again. Parent A.B. notes that [Case Manager 1] was able to read from the same script much more naturally. | | |
| | | | | Parent A.B. notes that the joint September 8, 2025 emails from [Case Manager 2] and [Case Manager 1] regarding the joint denial of the accommodations also contain the same anomaly. [Case Manager 1] | | |

44

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | appears to be far more skilled at reading and writing from a joint script than [Case Manager 2]. | | |
| | | | | Parent A.B. openly asks: "Who is the case manager of my children?" | | |
| | | | | Parent A.B. notes that the District should not be holding the annual review meetings of [E.B.-1] and [E.B.-2] in April with joint scripts in hand, hoping to discredit Parents as obstructionists after a sustained campaign of adversarial, performative collaboration from February 18 to today. | | |
| 133. | 3/19/26 | [Case Manager 1] | Frontline Education | [Case Manager 1] distributes an IEP for [E.B.-1]. | Parents receive IEP on 3/19/26. | District issues 2nd C&D on 3/21/26. |
| 134. | 3/19/26 | [Case Manager 2] | Frontline Education | [Case Manager 2] distributes an IEP for [E.B.-2]. | Parents receive IEP on 3/19/26. | District issues 2nd C&D on 3/21/26. |
| 135. | 3/19/26 | Parent A.B. | Please Control Your District | Parent A.B. notifies President Morell and Vice President Richter that Parent A.B. is receiving a new round of close to 100 pages of IEPs from Case Managers [Case Manager 1] and [Case Manager 2] without any explanation because Case Managers [Case Manager 2] and [Case Manager 1] are incommunicado. | District issues 2nd C&D on 3/21/26. | District issues 2nd C&D on 3/21/26. |
| | | | | Parent A.B. requests that President Morell and Vice President Richter identify the actual case manager of [E.B.-1] and [E.B.-2] who wrote the joint scripts so that such a person can explain why the accommodations were delayed by six months, resulting in a potential denial of FAPE for six months that was not discussed at the March 13, 2026 IEP meetings. | | |
| | | | | Parent A.B. declares the March 13, 2026 IEP meetings void *ab initio* because of the (a) hostile environment created by the District, (b) the constructive absences of the case managers of record from the meetings because of their scripts, and (c) the lack of any substantive | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | discussions during the meetings relating to the accommodations. | | |
| 136. | 3/19/26 | Parent A.B. | Please Control Your District | Parent A.B. notifies President Morell and Vice President Richter that the tactics of the District today are similar to the tactics Parent identified to USDOE OCR in a letter dated March 18, 2024. | District issues 2nd C&D on 3/21/26. | District issues 2nd C&D on 3/21/26. |
| 137. | 3/19/26 | Parent A.B. | Please Control Your District | Parent A.B. notifies President Morell and Vice President Richter that Parent A.B. is willing to sign a one-page IEP amendment containing the accommodations language instead of the nearly 100-page new March 19, 2026 IEPs in order to ensure that the two disabled boys will not be subject to discipline for using their accommodations during the interregnum period. | District issues 2nd C&D on 3/21/26. | District issues 2nd C&D on 3/21/26. |
| 138. | 3/19/26 | Parent A.B. | IEP Implementation During Interregnum | Parent A.B. realizes the entire District is incommunicado and reaches back to Case Managers [Case Manager 1] and [Case Manager 2] again to ask if a one-page IEP amendment would be acceptable instead of signing IEPs that Parent A.B. considers the fruit of void *ab initio* IEP meetings. | District issues 2nd C&D on 3/21/26. | District issues 2nd C&D on 3/21/26. |
| 139. | 3/19/26 | Superintendent Collazo | Scripted IEP Audiotapes: Please Identify Case Managers | Superintendent Collazo notifies Parent A.B. that his questions regarding the identity of the case managers of [E.B.-1] and [E.B.-2] need to be directed to DSS Heinze.<br><br>Superintendent Collazo draws a full circle because DSS Heinze was copied on the entire email chain. | District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| 140. | 3/19/26 | DSS Heinze | IEP Implementation During Interregnum | DSS Heinze responds to Parent A.B. that [E.B.-1] and [E.B.-2] may wear their smartwatches without disciplinary conditions starting on Monday. | District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| 141. | 3/19/26 | DSS Heinze | IEP Implementation During Interregnum | DSS Heinze confirms that an IEP amendment does not need to be signed for such action to take effect. | District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 142. | 3/19/26 | Parent A.B. | Electronic Devices Policy | Parent A.B. alerts President Morell and Vice President Richter to an email from September 8, 2025 that demonstrates [Case Manager 1] and [Special Education Teacher] knew that [E.B.-1] was distracted by his smartwatch solely during the first two days of school because Parents had forgotten to turn the "Schooltime" restriction back on after summer break. | District issues 2nd C&D on 3/21/26. | District issues 2nd C&D on 3/21/26. |
| | | | | Parent A.B. requests that President Morell and Vice President Richter ensure that district administrators are not lying in legal documents to fabricate the legally mandatory data out of thin air to avoid a discussion of disciplinary conditions. | | |
| | | | | Parent A.B. notes that the discussion revolved around disciplinary conditions well into December 11, 2025, when Parent A.B. wrote "[E.B.-1] should be able to text me during school hours without disciplinary measures" to District administrators in response to potential bullying at school. | | |
| | | | | Accordingly, the statement in the Written Notice section of the revised March 19, 2026 IEP of [E.B.-1] stating "No additional follow-up was received regarding that request until March 7, 2026" is a fabrication. | | |
| 143. | 3/19/26 | Parent A.B. | IEP Written Notice Timeline Clarification: Disciplinary Conditions | Parent A.B. offers a comprehensive rebuttal to the false narratives in the Written Notice sections of the revised March 19, 2026 IEPs of [E.B.-1] and [E.B.-2] by notifying Superintendent Collazo and copying President Morell and Vice President Richter. | District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| | | | | Parent A.B. notes that the entirety of the discussions between Parents and the District in early September revolved around disciplinary conditions, which the District willfully ignored in the Written Notice sections of the revised March 19, 2026 IEPs of [E.B.-1] and [E.B.-2]. | | |
| | | | | Parent A.B. notes that the Written Notice sections of the revised March 19, 2026 IEPs of [E.B.-1] and [E.B.-2] do not make any sense | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | without a discussion of the disciplinary conditions. | | |
| 144. | 3/19/26 | Parent A.B. | Two Questions for Next Week | Parent A.B. repeats two crucial requests for Superintendent Collazo and DSS Heinze for next week:<br>1. Parent A.B. requests that the District abide by the mandatory March 26, 2026 statutory deadline.<br>2. Parent A.B. requests that the District identify the case managers of [E.B.-1] and [E.B.-2] considering that the case managers of record are incommunicado and appear to have been reading and writing from joint scripts all year. Parent A.B. also identifies a prior instance of an attorney likely ghost-writing an email for a former case manager. | District relies on hostile, scripted IEP meetings on 3/13/26. | District issues 2nd C&D on 3/21/26. |
| 145. | 3/20/26 | Parent A.B. | Student Records: The "Notes" & Disciplinary Record | Parent A.B. sends a clarification note to the District to explain that the behavior charts and notes of [E.B.-1] and [E.B.-2] are not part of the emails lawyers for the District are redacting and should be provided to Parents in the ordinary course of school business to allow Parents to prepare for the annual review meetings. | The District decides to intentionally breach the mandatory 3/26/26 statutory deadline. | District issues 2nd C&D on 3/21/26. |
| 146. | 3/20/26 | Board Secretary Rinderknecht | Student Records Request | Board Secretary Rinderknecht writes that the FLBOE will intentionally breach the mandatory March 26, 2026 statutory deadline because their lawyers in the "federal lawsuit" will need more time for the student records to be "reviewed" and "redacted" to ensure "accuracy and the protection of the confidentiality rights" of students other than [E.B.-1] and [E.B.-2].<br><br>Board Secretary Rinderknecht also writes that Parents may access some of the records by clicking the link below even though there is no link of any kind below. | The District decides to intentionally breach the mandatory 3/26/26 statutory deadline.<br><br>The District does not review or redact any student records. Instead, the District engages in mass data breaches, FERPA violations, and state law violations on 4/14/26 by sending 6,130 pages of PII, including lists of all disabled students within | District issues 2nd C&D on 3/21/26. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | | the District, directly to Parents. | |
| 147. | 3/20/26 | Parent A.B. | Student Records Request | Parent A.B. informs Board Secretary Rinderknecht, President Morell, and Vice President Richter of the following:<br>1. The "federal lawsuit" that Parents filed does not have anything to do with the records request for the annual review meetings of [E.B.-1] and [E.B.-2].<br>2. Such records should not be sent to the attorney of Parents in that "federal lawsuit" because the issues are unrelated.<br>3. The FLBOE appears intent on driving up the legal bills of Parents.<br>4. Parent A.B. is not able to find the behavior chart and notes of [E.B.-2] at all in the partial records production, even though these are records that can and should be easily provided to Parents within the legally mandatory timeline.<br>5. The FLBOE has a legal obligation to provide the records by the mandatory March 26, 2026 statutory deadline.<br>6. The FLBOE has a law firm with almost 60 attorneys helping the FLBOE, which is separate from the law firm with 14 attorneys who directly advise the FLBOE.<br>7. Parent A.B. is only one person and does not want to receive the records while abroad on vacation.<br>8. The FLBOE cannot delegate guilt to District personnel or their lawyers. | The District decides to intentionally breach the mandatory 3/26/26 statutory deadline.<br><br>District issues 2nd C&D on 3/21/26. | District issues 2nd C&D on 3/21/26. |
| 148. | 3/21/26 | Parent A.B. | Student Records Request | Parent A.B. informs Board Secretary Rinderknecht, President Morell, and Vice President Richter that Parent A.B. had an argument during breakfast with Parent B.B. when Parent B.B. learned of the latest developments.<br><br>Parent A.B. informs the FLBOE that Parent B.B. said "either drop the lawsuit or look for public schools nearby, this is far too ugly" because Parent B.B. is concerned that the District is no longer *in loco parentis* | District issues 2nd C&D on 3/21/26. | District issues 2nd C&D on 3/21/26. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | for [E.B.-1] and [E.B.-2]. | | |
| | | | | Parent B.B. is concerned because, after the March 3 Cease & Desist Email, the schools abandoned their daily, routine educational and special educational duties toward the children by having case managers and guidance counselors be incommunicado with Parents. | | |
| | | | | Parent A.B. requests that the District work through ordinary issues next week, such as the provision of medical documents, the provision of basic accommodations, and course scheduling to refocus the discussion on the annual review meetings. | | |
| 149. | 3/21/26 | Parent A.B. | Student Records Request | Parent A.B. informs Board Secretary Rinderknecht, President Morell, and Vice President Richter that written statements regarding bullying and various incident reports of [E.B.-1] are missing from the partial records production, even though these are records that can and should be easily provided to Parents within the legally mandatory timeline. | District issues 2nd C&D on 3/21/26. | District issues 2nd C&D on 3/21/26. |
| 150. | 3/21/26 | Taylor Law | Communication with Board and Administration | The FLBOE sends a comprehensive response to all of the above parental concerns by issuing the March 21 Cease & Desist Letter from Taylor Law.<br><br>Taylor Law addresses the March 21 Cease & Desist Letter to "Mr. and Mrs. [B.]."<br><br>The letter prohibits parental participation in the IEP process in violation of IDEA, prohibits petitions in violation of the First Amendment by imposing a blanket ban on contacting elected officials, and engages in retaliation by intimidating Parents into silence under the color of law, as discussed below. | District suspends IDEA.<br><br>**See Notes.** | Communication of both Parents is unlawfully prohibited. |
| | | | | 1. Abdication of Board Oversight | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | The letter states that "*Board members are not responsible for the day-to-day administration*" of the District and that *"their role is to provide oversight.*"<br><br>The letter is deliberately designed to prevent Parents from notifying the highest authority in their Local Educational Agency of violations of law. The letter is a written admission from the Board that the Board is refusing notice of the violations of law in this chart and abdicating oversight of the Local Educational Agency.<br><br>The letter directs Parents to "*...immediately cease direct communications with Board members...and limit repetitive correspondence…*"<br><br>The directive requires Parents to immediately cease direct communications with All Board Members even though Parents had only contacted President Morell and Vice President Richter during the relevant time period. The letter deliberately refuses to provide Parents any alternative means to provide notice of violations of law to the highest authority in the Local Educational Agency.<br><br>The letter prohibits petitions in violation of the First Amendment while simultaneously abdicating oversight of the Local Educational Agency. | | |
| | | | | 2. Delegating and Ringfencing Illegal Conduct<br><br>"*All communications regarding this matter should be directed to the Director of Special Services.*"<br><br>The directive is evidence of predetermination and a violation of IDEA. The directive explicitly strips the case managers of their daily role as compliance coordinators, IEP managers, and service coordinators. If the case managers are not allowed to receive or respond to parental | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | concerns directly, then the child study team is not functioning.<br><br>The directive authorizes DSS Heinze to act as a gatekeeper of annual review meetings that are mere formalities rather than collaborative sessions. Parents are directed to exclusively communicate with DSS Heinze despite DSS Heinze conducting hostile and scripted IEP meetings designed to paint Parents as obstructionists shortly before the date of the letter. | | |
| | | | | 3. <u>Suspension of IDEA in the District</u><br><br>The letter states that "*your excessive and repetitive communications to the Board, Administration, and CST have made it unreasonable to provide timely responses.*"<br><br>As is plainly obvious from the contents of this chart, the overwhelming majority of the emails communicated by Parents to the Local Educational Agency were:<br>  a. corrections of fact,<br>  b. corrections of law,<br>  c. requests for fair and equitable course schedules,<br>  d. technical rebuttals of predetermined course schedules,<br>  e. requests for policies regarding the provision of services,<br>  f. requests for accommodations,<br>  g. requests for written explanations of changes to multiple IEPs,<br>  h. technical rebuttals of the contents of such IEPs,<br>  i. requests for data under state law,<br>  j. requests for Prior Written Notices under federal and state law,<br>  k. requests for student records,<br>  l. notices to teachers of laws prohibiting retaliation,<br>  m. notices to the administration and the Board of laws prohibiting retaliation,<br>  n. parental communications protected under IDEA,<br>  o. notices of various violations of law, and | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | p.  specific requests for the Board to uphold its fiduciary duties toward [E.B.-1] and [E.B.-2].<br><br>Merely listing the categories of communications that the Parents engaged in requires the compilation of a list of 16 distinct categories.<br><br>The communications were not excessive, but were substantive participation under IDEA. The letter requiring Parents to cease and desist characterizes quantity as a nuisance solely to avoid addressing the quality of the complaints. Indeed, the quality of the complaints is such that the Board felt compelled to immediately abdicate any oversight or responsibility over the LEA. Accordingly, the Board has effectively suspended IDEA within the District. | | |
| | | | | 4. <u>Intimidating Parents into Silence</u><br><br>The specific intent of the Board to violate the law when sending this letter is most obvious with respect to the scared mother of the two disabled children, Parent B.B.<br><br>On March 5, 2026, Parent A.B. notified the Local Educational Agency that his wife, Parent B.B., was concerned about being sued after the unlawful March 3 Cease & Desist Email.<br><br>On March 13, 2026, Parent A.B. notified the Local Educational Agency that he wanted to shield his wife, Parent B.B., from further distress: "*I have been reviewing emails and responding to the district with some very limited assistance from my wife on very complicated IDEA matters. Please respond to this email with the same good faith collaboration that we are demonstrating as parents because my understanding is that failing to provide a legally appropriate PWN is a serious procedural violation under IDEA.*"<br><br>On the morning of March 21, 2026, Parent A.B. notified the Local | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | Educational Agency that his wife, Parent B.B., was distressed to the point where Parent B.B. told Parent A.B. to "*either drop the lawsuit or look for public schools nearby*" in reference to the unrelated federal lawsuit that Board Secretary Rinderknecht had referenced when confirming a breach of state law with board approval.<br><br>In the same email on March 21, 2026, Parent A.B. further notified the Local Educational Agency that the March 3 Cease & Desist Email had "*upset my wife to the point where her work colleagues asked her if she was alright*" and "*she was visibly upset until I took her out to dinner later that evening and told her that the letter from your lawyer does not have any legal basis whatsoever*."<br><br>Inexplicably, almost 5 hours later, having identified the vulnerable member of the family, the law firm for the Local Educational Agency seized the opportunity to inflict further pain on Parent B.B. under the color of law by addressing a new cease-and-desist letter to Parent B.B.<br><br>Shockingly, Parent B.B. had communicated with the Local Educational Agency only 3 times after the March 3 Cease & Desist Email, and 2 of those communications were one-liners:<br>a. March 7: Parent B.B. gives notice that [E.B.-2] is very agitated about a specific manner in which the accommodation request could be implemented and retracts such request.<br>b. March 12: Parent B.B. writes a single line stating "*I will be skipping these meetings. Thank you, [Parent B.B.]*" in reference to hostile IEP meetings.<br>c. March 13: Parent B.B. writes a single line stating "*Even the shift from offering a trial period versus no trial period needs to be justified with data, no? [Parent B.B.]*" in reference to state law requirements for data.<br><br>The March 21 Cease & Desist Letter was purposefully addressed | | |

54

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | directly from a law firm to an already scared mother in order to threaten her career and silence her and her husband. | | |
| | | | | 5. <u>Contradictory Instructions</u><br><br>The final sentence of the March 21 Cease & Desist Letter states "*Please feel free to contact our office if you have any questions.*"<br><br>While the letter is written on a law firm letterhead and signed by a law firm to intimidate Parents under the color of law, the unprofessionalism of the authors is apparent in this final sentence of the letter.<br><br>Under the legal construct established by the letter, if Parents have questions about IEPs totaling almost 100 pages, which Parents received without any explanations from the silent case managers, are Parents supposed to email DSS Heinze as instructed or Taylor Law as invited?<br><br>The confusion created by the Board allows the District to claim Parents are uncooperative and obstructionist regardless of which action Parents take in response to the letter. | | |
| 151. | 3/21/26 | Parent A.B. | Student Records Request | Parent A.B. acknowledges receiving the March 21 Cease & Desist Letter and informs President Morell, Vice President Richter, Board Secretary Rinderknecht, and Superintendent Collazo that Parent A.B. will adhere to the March 21 Cease & Desist Letter to avoid further upsetting Parent B.B. | None | Communication of both Parents is unlawfully prohibited. |
| | | | | Parent A.B. notes that Vice President Richter, who was the former president of the FLBOE, has been copied on far more voluminous email chains over the past two years. | | |
| | | | | Parent A.B. notes that the March 21 Cease & Desist Letter is deliberately designed to prevent the FLBOE from receiving notice of | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | violations of law within the District. | | |
| 152. | 3/23/26 | Superintendent Collazo | Student Records Request | Superintendent Collazo reiterates the talking points of Board Secretary Rinderknecht by writing that the FLBOE will intentionally breach the mandatory March 26, 2026 statutory deadline because "the review process" is not yet "complete." | The District decides to intentionally breach the mandatory 3/26/26 statutory deadline.<br><br>The District does not review or redact any student records. Instead, the District engages in mass data breaches, FERPA violations, and state law violations on 4/14/26 by sending 6,130 pages of PII, including lists of all disabled students within the District, directly to Parents. | Communication of both Parents is unlawfully prohibited. |
| 153. | 3/29/26 | Parent A.B. | Parental Statement for Annual Review Meetings | Parent A.B. limits his communication to DSS Heinze, consistent with the March 21 Cease & Desist Letter.<br><br>Parent A.B. requests that this *Violations of Laws Ledger* be attached to the IEPs of [E.B.-2] and [E.B.-1] as the Parental Statement of Parents at the annual review meetings of [E.B.-2] and [E.B.-1]. | DSS Heinze responds on 4/2/26 that she will insert this document as requested. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| 154. | 4/2/26 | DSS Heinze | Response to Correspondence | DSS Heinze provides responses regarding the 12 questions Parent A.B. asked with respect to the IB Diploma program, placement in advanced classes, and course scheduling matters. | Parent A.B. responds on 4/13/26. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | | | accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| 155. | 4/12/26 | Parent A.B. | Postponement of Annual Review Meetings | Parent A.B. limits his communication to DSS Heinze, consistent with the March 21 Cease & Desist Letter. | The District does not review or redact any student records. Instead, the District engages in mass data breaches, FERPA violations, and state law violations on 4/14/26 by sending 6,130 pages of PII, including lists of all disabled students within the District, directly to Parents. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| | | | | Parent A.B. requests postponement of the April 20, 2026 and April 23, 2026 annual review meetings to dates that are at least 14 calendar days after the production of student records with respect to [E.B.-2] and [E.B.-1], respectively. | | |
| | | | | Parent A.B. states that the LEA is required to comply with a request to inspect records "without unnecessary delay and before any meeting regarding an IEP" under 34 CFR § 300.613(a), and Parent A.B. further states that by withholding these student records, the LEA is impeding the right of Parents to meaningfully participate in the IEP process as guaranteed by 34 CFR § 300.322. | | |
| | | | | Parent A.B. states that the LEA has been and continues to be in violation of the 10-day record production deadline under N.J.A.C. 6A:32-7.5 because Parent A.B. requested such records 28 days ago on March 16, 2026. | | |
| | | | | Parent A.B. notes that N.J.A.C. 6A:14-2.9 also states that Parents must be permitted to review these records "without unnecessary delay and before any meeting regarding the IEP." | | |
| 156. | 4/13/26 | Parent A.B. | Response to Correspondence | Parent A.B. limits his communication to DSS Heinze, consistent with the March 21 Cease & Desist Letter. | None | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally |
| | | | | Parent A.B. notifies DSS Heinze that the 12 answers provided by the LEA contain material misrepresentations of fact disputed by the | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | International Baccalaureate Organization (IBO) and the disabled student. | | accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| | | | | Parent A.B. specifies that the 15-minute course request meeting of the disabled student with administrators is null and void because the claim from the LEA that the disabled student suddenly and voluntarily changed his mind regarding his course preferences is materially inconsistent with the written record. | | |
| | | | | Parent A.B. states that the LEA is placing burdens on the disabled student, and Parent A.B. requests that the LEA construct a course schedule that does not contain a STEM tax, an additional burden, or a forced waiver for participation in advanced courses or programs. | | |
| | | | | Parent A.B. requests that the LEA ensure that future responses from the LEA do not contain material misrepresentations of fact because the highest authority in the LEA issued two unlawful cease-and-desists against Parents and each correction Parents send to the LEA carries a legal risk of parents being formally accused of harassment or obstructionism. | | |
| 157. | 4/14/26 | M&W, PC | A.B. AND B.B. O/B/O E.B.-1 AND E.B.-2 VS. FORT LEE BOARD OF EDUCATION;97566 ELH | M&W, PC is the outside law firm of the LEA on an unrelated federal case involving Parent A.B. and Parent B.B. | The District ignores the mass data breaches, FERPA violations, and state law violations and does not notify affected individuals as required by N.J.S.A. 56:8-163. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| | | | | M&W, PC unlawfully transmits 11,738 pages of student records directly to Parent A.B. and Parent B.B. because 6,130 pages of such transmission is composed of the private and confidential information of all students in the LEA, including their disability status under federal law. | | |
| | | | | M&W, PC copies the federal litigation counsel of Parents in the unrelated federal case in this communication. | | |
| 158. | 4/14/26 | Parent A.B. | A.B. AND B.B. O/B/O E.B.-1 AND | Parent A.B. limits his communication to DSS Heinze, consistent with the March 21 Cease & Desist Letter. | The District ignores the mass data breaches, FERPA | Parent A.B. is forced to communicate with the LEA |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | E.B.-2 VS. FORT LEE BOARD OF EDUCATION;97566 ELH | Parent A.B. notifies the LEA that the disclosure of the 6,130 pages is a grossly negligent, reckless, and unconscionable violation of FERPA, N.J.A.C. 6A:32-7, N.J.A.C. 6A:14, and N.J.S.A. 18A:36-19 because even a cursory scroll through the 11,738-page file for a few minutes reveals that 6,130 pages (52%) of such file consists entirely of the private and confidential information of third party students, including their disability status under federal law. | violations, and state law violations and does not notify affected individuals as required by N.J.S.A. 56:8-163. | under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| | | | | Under N.J.S.A. 56:8-163, the LEA is legally required to notify every affected individual of the breach "in the most expedient time possible." | | |
| | | | | Parent A.B. notes that the LEA must be investigated by the USDOE and NJDOE. | | |
| | | | | Parent A.B. requests that the LEA cease repeatedly copying his wife on emails because the LEA knows that **Parent B.B. is not the Parent emailing the LEA** and the LEA is copying her in order to subject her to cease-and-desists. | | |
| 159. | 4/14/26 | M&W, PC | A.B. AND B.B. O/B/O E.B.-1 AND E.B.-2 VS. FORT LEE BOARD OF EDUCATION;97566 ELH | M&W, PC thanks "Ms. [B.]" (Parent B.B.) for bringing the mass data breach in violation of federal and state laws to the attention of the LEA even though Parent B.B. has not emailed the District since March 13, 2026. | A day later, on 4/15/26, M&W, PC engages in a frivolous student records production by producing emails to Parents that Parents already have in their possession. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| | | | | M&W, PC claims that the mass data breach was made in error and requests that Parent B.B. ignore the mass data breach even though Parent B.B. has not emailed the District since March 13, 2026. | | |
| | | | | M&W, PC copies the federal litigation counsel of Parents in the unrelated federal case in this communication. | | |
| 160. | 4/14/26 | Parent A.B. | A.B. AND B.B. O/B/O E.B.-1 AND | Parent A.B. limits his communication to DSS Heinze, consistent with the March 21 Cease & Desist Letter. | A day later, on 4/15/26, M&W, PC engages in a | Parent A.B. is forced to communicate with the LEA |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | E.B.-2 VS. FORT LEE BOARD OF EDUCATION;9756 6 ELH | Parent A.B. notifies the LEA that the claim of an erroneous production by M&W, PC is not plausible because:<br><br>(a) even a cursory review of the 11,738-page file for a few minutes reveals that more than half of the file (meaning 6,130 pages) contains the private and confidential information of third party students, including their disability status, and<br><br>(b) M&W, PC has been claiming that they have been withholding student records from Parents for 29 days because they are reviewing and redacting such student records, which is now **verifiably false**. | frivolous student records production by producing emails to Parents that Parents already have in their possession. | under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| 161. | 4/15/26 | Parent A.B. | A.B. AND B.B. O/B/O E.B.-1 AND E.B.-2 VS. FORT LEE BOARD OF EDUCATION;9756 6 ELH<br><br>NOTICE OF PRO SE STATUS FOR IDEA ADMINISTRATIVE MATTERS AND DIRECTIVE REGARDING STUDENT RECORDS | Parent A.B. writes an email entitled "**NOTICE OF PRO SE STATUS FOR IDEA ADMINISTRATIVE MATTERS AND DIRECTIVE REGARDING STUDENT RECORDS**" directly to President Morell, Vice President Richter, and Superintendent Collazo, and copies their attorneys directly at M&W, PC and indirectly at Taylor Law, to remind them that:<br><br>(a) the LEA was notified on February 18, 2026, February 27, 2026, and March 20, 2026, that Rue Law was not retained by Parents to represent Parents in any capacity regarding any Individuals with Disabilities Education Act (IDEA) administrative process, upcoming IEP Annual Review Meetings, or routine requests for educational records; and<br><br>(b) directing routine record productions through the office of M&W, PC and copying Rue Law, the federal litigators of Parents, is financially prejudicial because it artificially inflates the legal costs of Parents by involving their federal litigation counsel in matters outside the scope of such counsel.<br><br>Parent A.B. had openly asked Board Secretary Rinderknecht on March 20, 2026 whether the FLBOE was purposefully increasing the | Approximately 4 hours later, on 4/15/26, M&W, PC engages in a frivolous student records production by producing emails to Parents that Parents already have in their possession. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | legal costs of Parents by involving their federal litigation counsel in matters outside the scope of such counsel. | | |
| | | | | Parent A.B. again demands that all student records be sent directly to Parent A.B. without including the federal litigation counsel of Parents on the correspondence. | | |
| | | | | Parent A.B. reminds the LEA that the LEA conspired to entrap Parents into a narrative of harassment earlier in the school year after a long period of bad faith obstructions and vexatious defenses by the LEA. | | |
| | | | | Parent A.B. notes that the LEA appears to be intentionally forcing Parents to communicate with the LEA in breach of the two unlawful cease-and desists in order to formally accuse them of harassment. | | |
| 162. | 4/15/26 | M&W, PC | Corrected initial email production A.B. AND B.B. O/B/O E.B.-1 AND E.B.-2 VS. FORT LEE BOARD OF EDUCATION;97566 ELH | M&W, PC writes "*Good morning Mr. [B.] – Through this link you will be able to download the emails that we **intended** to share yesterday.*" | On 4/15/26, Parent A.B. objects to the frivolous student records production of M&W, PC.<br><br>On 4/16/26, DSS Heinze ignores the objection from Parent A.B. and attempts to schedule annual review meetings by falsely claiming that student records have already been produced. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| | | | | M&W, PC produces "corrected" student records in a manner that is frivolous because the 21,237-page production is limited to emails that Parents sent to and received from the District, meaning emails that Parents already have in their possession that do not require any review or redaction by the District. | | |
| | | | | The LEA and M&W, PC re-aggregate this 21,237-page decoy file between April 14 at 9:52 a.m. and April 15 at 11:26 a.m. to circumvent notification to affected individuals and frustrate corrective action. | | |
| | | | | M&W, PC copies the federal litigation counsel of Parents in the unrelated federal case and continues to increase the legal costs of Parents despite being asked by Parent A.B. to cease such gamesmanship. | | |
| 163. | 4/15/26 | Parent A.B. | A.B. AND B.B. O/B/O E.B.-1 AND | Parent A.B. notifies President Morell, Vice President Richter, and Superintendent Collazo that M&W, PC completely ignored the email | None | Parent A.B. is forced to communicate with the LEA |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | E.B.-2 VS. FORT LEE BOARD OF EDUCATION;9756 6 ELH | from Parent A.B. demanding that all student records be sent directly to Parent A.B. without including Rue Law, the federal litigation counsel of Parents. | | under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| | | | | Parent A.B. advises President Morell, Vice President Richter, and Superintendent Collazo to start a dialogue with M&W, PC on why 6,130 pages out of 11,738 pages disclosed to Parent A.B. listed the private and confidential data of students, including their disability status. | | |
| | | | | Parent A.B. advises President Morell, Vice President Richter, and Superintendent Collazo to alert the families of such student victims of the mass data breach as required by state law immediately. | | |
| | | | | Parent A.B. requests that the LEA cease placing Parent A.B. in a position where Parent A.B. is forced to send the LEA communications that the LEA can use to formally accuse both Parents of harassment or obstructionism because of the two unlawful cease-and-desists that the Board issued against the Parents. | | |
| 164. | 4/15/26 | Parent A.B. | Postponement of Annual Review Meetings | Parent A.B. limits his communication to DSS Heinze, consistent with the March 21 Cease & Desist Letter. | On 4/16/26, DSS Heinze ignores the objection of Parent A.B. to the frivolous student records production of M&W, PC.<br><br>On 4/16/26, DSS Heinze attempts to schedule annual review meetings by falsely claiming that student records have already been produced. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| | | | | Parent A.B. informs the LEA that M&W, PC produced "corrected" student records in a manner that is frivolous because the 21,237-page production is limited to emails that Parents sent to and received from the District, meaning emails that Parents already have in their possession that do not require any review or redaction by the District. | | |
| | | | | Parent A.B. asks the LEA what M&W, PC has been doing for the past 30 days because the assertion of the LEA that M&W, PC has been reviewing and redacting student records is now verifiably false. | | |
| | | | | Parent A.B. notes that Parents will need to have access to all of the student records of [E.B.-1] and [E.B.-2] in order to start the minimum | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | review period of 14 calendar days referenced in the April 12, 2026 postponement email from Parent A.B. to the LEA. | | |
| | | | | Parent A.B. notes that the LEA is aware that the missing student records include all internal emails, audio files, behavior charts and notes, written statements and reports, and raw data relating to [E.B.-1] and [E.B.-2], including teacher data sheets, work samples, behavior tracking logs, prompting logs, and accommodation logs. | | |
| | | | | Parent A.B. notifies the LEA that he is compelled to send this email to the LEA because the most recent production of student records by M&W, PC on April 15, 2026 is not a good faith production of student records. | | |
| | | | | Parent A.B. reminds the LEA that the highest authority in the LEA issued two unlawful cease-and-desists against Parents and that each communication sent to the LEA carries a legal risk of the Parents being formally accused of harassment or obstructionism. | | |
| 165. | 4/16/26 | DSS Heinze | Rescheduling Annual Review IEP meetings | DSS Heinze informs Parent A.B. that the annual review meetings scheduled for April 20, 2026 and April 23, 2026 will be canceled and that the case managers will reach out to propose alternate dates. | None from Parent A.B. until all student records are produced in their entirety after being appropriately reviewed and redacted to cross out the PII of any third party students. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| 166. | 4/16/26 | DSS Heinze | Rescheduling Annual Review IEP meetings | DSS Heinze informs Parent A.B. that the 14 calendar days requested by Parent A.B. to review student records started on April 15, 2026. | Parent A.B. responded within 15 minutes, as described in the below entry. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally |
| | | | | DSS Heinze requests that Parent A.B. send another communication to the LEA to explain whether Parent A.B. agrees that the "corrected" | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | student records produced by M&W, PC on April 15, 2026 starts the clock on the review period of 14 calendar days. | | accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| | | | | Parent A.B. is confused by the request from DSS Heinze because Parent A.B. already sent an email to the LEA that (a) identified the "corrected" 21,237-page student records produced by M&W, PC on April 15, 2026 as frivolous and (b) listed the student records that are missing from the frivolous production of M&W, PC. | | |
| 167. | 4/16/26 | Parent A.B. | Rescheduling Annual Review IEP meetings | Parent A.B. limits his communication to DSS Heinze, consistent with the March 21 Cease & Desist Letter. | The LEA: (i) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; and (ii) delays annual review meetings in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| | | | | Parent A.B. notifies the LEA that Parent A.B. is being forced to send another communication to the LEA because the LEA is pretending to have reading comprehension issues. | | |
| | | | | Parent A.B. requests that the LEA review the two prior emails entitled "Postponement of Annual Review Meetings" that Parent A.B. sent to the LEA and come to a formal conclusion on whether the latest communication by DSS Heinze was made in good faith. | | |
| | | | | Parent A.B. writes that further emails from the LEA that appear to be designed to elicit gratuitous responses from Parents for the purposes of entrapping them into a narrative of harassment or obstructionism will not be responded to moving forward. | | |
| 168. | 4/16/26 | Parent A.B. | Parental Statement for Annual Review Meetings | Parent A.B. limits his communication to DSS Heinze, consistent with the March 21 Cease & Desist Letter. | The LEA: (i) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; and (ii) delays annual review meetings in violation of state | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and- |
| | | | | Parent A.B. requests that an updated version of this ***Violations of Laws Ledger*** be attached to the IEPs of [E.B.-2] and [E.B.-1] as the Parental Statement of Parents because the annual review meetings have been postponed. | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | | and federal laws. | desists against Parents. |
| 169. | 4/24/26 | Superintendent Collazo | Important Notice About Student Directory Data | In a letter addressed to all Fort Lee parents (the "Notification Letter") to address the mass data breach, Superintendent Collazo intentionally misrepresents facts and misleads the public by claiming:<br><br>1. The incident occurred on April 13, 2026;<br>2. Superintendent Collazo worked closely with board counsel and the technology department to review the materials and confirm the scope of the disclosure;<br>3. The scope of the disclosure was limited to "directory information only" and does not require notification to parents;<br>4. The disclosure was unintentional and part of a litigation matter between attorneys;<br>5. The disclosure was corrected by contacting the receiving attorney; and<br>6. The disclosure cannot be used to access any confidential student records. | On 4/24/26, Superintendent Collazo publicly and falsely claims that the mass data breach revealed "directory information only." | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| 170. | 4/24/26 | Parent A.B. | Important Notice About Student Directory Data | Parent A.B. limits his communication to DSS Heinze, consistent with the March 21 Cease & Desist Letter.<br><br>Parent A.B. alerts the LEA that the Notification Letter of Superintendent Collazo contains material misrepresentations of fact. | The LEA does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| 171. | 4/24/26 | Parent A.B. | Important Notice About Student Directory Data | Parent A.B. alerts President Morell, Vice President Richter and Superintendent Collazo that the **Notification Letter of Superintendent Collazo to the public contains material misrepresentations of fact** as follows: | The LEA does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | **Date of Mass Data Breach**<br>*False Claim in Notification Letter:*<br>● Mass data breach occurred on April 13, 2026.<br>*Fact:*<br>● Mass data breach occurred on April 14, 2026.<br><br>**Lists of Disabled Students**<br>*False Claims in Notification Letter*:<br>● Mass data breach was limited to "directory information only."<br>● Mass data breach was limited to the name, school, student identification number, and parent email address of students.<br>*Facts*:<br>● Mass data breach included lists of all students who have active IEPs in the District, such as a list labeled "**Accessing IEP Progress Reports Through the Genesis**."<br>● Mass data breach included parent cell phone numbers.<br><br>**State Law Requires Notification**<br>*False Claim in Notification Letter*:<br>● Mass data breach does not require notification to parents.<br>*Fact*:<br>● Mass data breach requires notification to parents because students who have active IEPs are by definition disabled under federal law and such **disability status is protected information under FERPA**.<br><br>**Request for Student Records**<br>*False Claims in Notification Letter*:<br>● Mass data breach was unintentional and part of a | violations. | accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | litigation matter between attorneys.<br>*Facts*:<br>● Mass data breach was in response to a routine student records request from Parents under federal and state laws.<br>● Mass data breach could not have been unintentional because **anyone who scrolled through the file for a few minutes would have noticed the 6,130 pages of PII, including the disability status, of all students in the LEA**.<br>● The obstructionism that led the LEA to intentionally breach the mandatory statutory deadline of March 26, 2026 culminated in the mass data breach of April 14, 2026. | | |
| | | | | Timeline of Student Records Production Delays<br>*March 18, 2026, M&W, PC wrote the following*:<br>● "As to the emails, there are several thousand, and because we cast a wide net to ensure that we capture all emails relating to both students, as you know, **FERPA, the NJPRA and privacy rights of others require that we review and redact** as necessary to prevent the disclosure of information relating to other students."<br>*March 20, 2026, Board Secretary Rinderknecht wrote the following to Parent A.B.*:<br>● "**The emails will be reviewed, sorted, redacted** if necessary, and provided to you within two weeks to ensure accuracy and the protection of the confidentiality rights of any other students."<br>*March 23, 2026, Superintendent Collazo wrote the following to Parent A.B.*:<br>● "In response to your recent requests, we are in the process of gathering and reviewing the information. | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | Given the volume of materials, additional time is needed to gather all of the emails and documents. As such, it will not be possible to provide all requested information by March 26. We will provide a response **as soon as the review process is complete**." | | |
| | | | | LEA is Intentionally Concealing Information<br>*False Claims in Notification Letter*:<br>● Confidential student records were not unlawfully transmitted and the mass data breach was corrected by contacting opposing counsel.<br>*Facts*:<br>● Mass data was provided by M&W, PC directly to Parent A.B., who noticed the unlawful transmission and alerted the LEA in a manner that was unrelated to any counsel.<br>● M&W, PC interfered in a routine student records request with the full consent and authorization of the LEA even though Parent A.B. repeatedly warned the LEA that their lawyers should not be interfering in routine student records requests.<br>● The LEA is purposefully misleading the public regarding the scope of the disclosure because the unlawful transmission of lists of disabled students is a catastrophic failure of data safety protocols.<br>● As described to the USDOE SPPO and the NJDOE OFAC Investigations Unit, metadata will likely reveal that the LEA re-aggregated a "Corrected" file between April 14 at 9:52 a.m. and April 15 at 11:26 a.m. to circumvent notification to affected individuals and frustrate corrective action. | | |
| 172. | 4/24/26 | Parent A.B. | Parental Statement for Annual Review | Parent A.B. limits his communication to DSS Heinze, consistent with the March 21 Cease & Desist Letter. | The LEA: (i) does not correct the fraudulent public | Parent A.B. is forced to communicate with the LEA |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | Meetings | Parent A.B. requests that the LEA provide student records as soon as possible and set annual review meeting dates 14 calendar days after such production. | Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; and (iii) delays annual review meetings in violation of state and federal laws. | under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| 173. | 4/25/26 | Parent A.B. | For Your Information | Parent A.B. limits his communication to DSS Heinze, consistent with the March 21 Cease & Desist Letter.<br><br>Parent A.B. updates the LEA on discussions between Parent A.B. and [Private Speech and Social Skills Provider] regarding the social executive planning deficiencies of [E.B.-1], and Parent A.B. requests an additional 30 minutes of individual social skills sessions per week from the LEA to address such deficiencies. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; and (iii) delays annual review meetings in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| 174. | 4/25/26 | Parent A.B. | Response to Correspondence | Parent A.B. limits his communication to DSS Heinze, consistent with the March 21 Cease & Desist Letter.<br><br>Parent A.B. informs the LEA that [E.B.-1] asked about his course schedule again, and Parent A.B. reiterates that the LEA is required to construct a course schedule for the disabled student. | The LEA delays an appropriate course schedule for [E.B.-1]. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and- |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | | | desists against Parents. |
| 175. | 4/25/26 | Parent A.B. | Parental Statement for Annual Review Meetings | Parent A.B. limits his communication to DSS Heinze, consistent with the March 21 Cease & Desist Letter.<br><br>Parent A.B. requests that an updated version of this ***Violations of Laws Ledger*** be attached to the IEPs of [E.B.-2] and [E.B.-1] as the Parental Statement of Parents because the LEA is indefinitely delaying annual review meetings by denying Parents student records that Parents are entitled to review under state and federal laws prior to the annual review meetings. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; and (iii) delays annual review meetings in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| 176. | 4/26/26 | Parent A.B. | Parental Statement for Annual Review Meetings | Parent A.B. distributes the updated version of this ***Violations of Laws Ledger*** to President Morell, Vice President Richter, and Superintendent Collazo because the LEA is continuing to engage in violations of laws. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; and (iii) delays annual review meetings in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| 177. | 4/27/26 | [Case Manager 2] | Scheduling Upcoming IEP Meeting: [E.B.-2] | [Case Manager 2] notifies Parent A.B. and Parent B.B. that the annual review meeting of [E.B.-2] will be held on May 18, 2026 or May 21, 2026 unless Parents provide an alternate date and time. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to | Parent A.B. is forced to communicate with the LEA under the legal risk of both |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | | mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; and (iii) delays annual review meetings in violation of state and federal laws. | Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| 178. | 4/27/26 | Parent A.B. | Parental Statement for Annual Review Meetings | Parent A.B. alerts President Morell, Vice President Richter and Superintendent Collazo that DSS Heinze is continuing to pursue the longstanding strategy of President Morell, Vice President Richter and Superintendent Collazo to build a false narrative of harassment and obstructionism against Parents by instructing her direct reports to violate the law and elicit strong reactions from Parents.<br><br>Parent A.B. requests an explanation regarding why [Case Manager 2] is scheduling an annual review meeting for [E.B.-2] on May 18, 2026 or May 21, 2026 without providing student records to Parents as required under federal and state laws, including the internal emails, behavior charts and notes, and raw data relating to [E.B.-2]. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; and (iii) delays annual review meetings in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| 179. | 4/27/26 | Parent A.B. | A.B. AND B.B. O/B/O E.B.-1 AND E.B.-2 VS. FORT LEE BOARD OF EDUCATION;97566 ELH | Parent A.B. notifies President Morell, Vice President Richter, and Superintendent Collazo of the following, and copies the NJDOE OFAC Investigations Unit:<br>1. The NJDOE OFAC Investigations Unit requested from Parent A.B. the file containing lists of disabled students that the LEA unlawfully transmitted to Parent A.B., and<br>2. The LEA needs to send such lists directly to the NJDOE OFAC Investigations Unit instead of requiring Parent A.B. to send such lists to the NJDOE OFAC Investigations Unit. | The LEA does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |

71

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | Parent A.B. writes the following to President Morell, Vice President Richter, and Superintendent Collazo, and copies the NJDOE OFAC Investigations Unit::<br><br>"*Today, I refused a request to electronically transmit such files and directed the government investigator back to you. While I am happy to continue sequestering the unlawfully transmitted files to protect the privacy of the disabled students, please note that I will not participate in any cover ups of mass data breaches and FERPA violations. The public letter issued by the Superintendent on April 24, 2026 contains material misrepresentations of fact and falsely states that only directory information was disclosed by the LEA.*" | | |
| 180. | 4/27/26 | Parent A.B. | A.B. AND B.B. O/B/O E.B.-1 AND E.B.-2 VS. FORT LEE BOARD OF EDUCATION;9756 6 ELH | Parent A.B. proves to President Morell, Vice President Richter, and Superintendent Collazo that the LEA transmitted the 11,738-page file in violation of state and federal laws, and copies the NJDOE OFAC Investigations Unit.<br><br>Parent A.B. establishes the following as fact:<br>1. Pages 9,035 to 9,074 of the unlawfully transmitted file contain a list of disabled students;<br>2. The list is entitled "**Accessing IEP Progress Reports Through the Genesis**" and is dated January 14, 2026;<br>3. The list includes the name, student identification number, school, parent names, and parent email addresses of [E.B.-2] and [E.B.-1]; and<br>4. Parents of [E.B.-2] and [E.B.-1] received the following email from the LEA on January 14, 2026 with the subject line "Accessing IEP Progress Reports Through the Genesis Parent Portal":<br><br>"*Dear Parents and Guardians,* | The LEA does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | *When report cards are released, you may also view your child's Individualized Education Plan (IEP) progress marks at the same time through the Genesis Parent Portal. IEP progress reports are available electronically and can be accessed by logging into your Genesis Parent account and selecting the current IEP documents. These reports provide information on your child's progress toward their IEP goals and objectives. Please review the attached infographic for step-by-step instructions on how to access your child's IEP and IEP progress reports within Genesis. If you have any questions or need assistance accessing the Parent Portal, please contact your child's case manager or the school office.*<br><br>*Thank you for your continued partnership.*" | | |
| | | | | Parent A.B. notes that [E.B.-2] and [E.B.-1] are on that specific list between pages 9,035 and 9,074 because both students have active IEPs on the official school portal that their Parents should access. | | |
| | | | | Parent A.B. notes that the 704 recipients on that list are the parents or guardians of students who have active IEPs in the LEA as of January 14, 2026. | | |
| | | | | Parent A.B. notes that a student who has an IEP is considered disabled under federal law, and that the information regarding who has an IEP is protected by FERPA. | | |
| 181. | 4/27/26 | DSS Heinze | IEP Meetings | DSS Heinze informs Parent A.B. that the LEA is attempting to schedule annual review meetings without the provision of student records to Parents because meeting dates can be difficult to confirm and the LEA is working to tentatively secure dates in the event the meetings are able to proceed in May. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | | (3/26/26) and federal law (4/30/26) to provide student records to Parents; and (iii) delays annual review meetings in violation of state and federal laws. | issued two cease-and-desists against Parents. |
| 182. | 4/27/26 | Parent A.B. | IEP Meetings | Parent A.B. limits his communication to DSS Heinze, consistent with the March 21 Cease & Desist Letter. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; and (iii) delays annual review meetings in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| | | | | Parent A.B. informs the LEA that a very simple way for the LEA to confirm meeting dates in May is to (a) provide the student records to Parents today, and then (b) propose a few dates that are 14 calendar days after the provision of such student records. | | |
| | | | | Parent A.B. informs the LEA that the LEA is only a few days away from violating the April 30, 2026 mandatory deadline of 45 calendar days to provide student records to Parents under FERPA, in addition to having already violated the March 26, 2026 deadline of 10 calendar days to provide student records to Parents under state law. | | |
| 183. | 4/27/26 | DSS Heinze | For Your Information | DSS Heinze informs Parent A.B. that the LEA is "committed to ensuring that [E.B.-1]'s program is appropriately designed to support his educational and social-emotional needs." | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; and (iii) delays annual review meetings in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| | | | | DSS Heinze notifies Parent A.B. that his parental request for an additional 30 minutes of individual social skills sessions will be reviewed and formally discussed by the LEA at the annual review meeting. | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 184. | 4/27/26 | Parent A.B. | For Your Information | Parent A.B. limits his communication to DSS Heinze, consistent with the March 21 Cease & Desist Letter.<br><br>Parent A.B. requests that the LEA "provide the student records as required by federal and state laws and then propose dates for the annual review meeting," and notes that the mandatory deadline under state law to provide such student records was "an entire month" ago.<br><br>Parent A.B. writes that "indefinitely delaying the annual review meeting and ignoring issues is not a viable path forward." | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; and (iii) delays annual review meetings in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| 185. | 5/1/26 | Parent A.B. | Lists of IEP Students | Parent A.B. requests an update to his prior communications by asking President Morell, Vice President Richter, and Superintendent Collazo whether the LEA shared the lists of disabled students containing mass FERPA and IDEA violations with the NJDOE OFAC Investigations Unit, and Parent A.B. copies the NJDOE OFAC Investigations Unit.<br><br>Parent A.B. specifically notes that the LEA needs to send the following lists of disabled students to the NJDOE OFAC Investigations Unit:<br>1. Accessing IEP Progress Reports Through the Genesis;<br>2. Shared Resource: Elks Camp Moore;<br>3. Quiet House Available Tree Lighting; and<br>4. Transition Planning & Family Resources Presentation.<br><br>Parent A.B. reminds the LEA that the LEA is in violation of mandatory state and federal deadlines for sharing student records.<br><br>Parent A.B. reminds the LEA that the LEA is in violation of mandatory state and federal deadlines for holding annual review meetings. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; and (iii) delays annual review meetings in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| 186. | 5/10/26 | Parent A.B. | Parental Statement | Parent A.B. distributes an updated version of this **Violations of Laws** | The LEA: (i) does not correct | Parent A.B. is forced to |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | for Annual Review Meetings | *Ledger* to President Morell, Vice President Richter, Superintendent Collazo, DSS Heinze, [Case Manager 1], and [Case Manager 2], and requests that all recipients "review the attached document containing a description of ongoing violations of law." | the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; and (iii) delays annual review meetings in violation of state and federal laws. | communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| 187. | 5/11/26 | DSS Heinze | Parental Statement for Annual Review Meetings | DSS Heinze responds to Parent A.B. by writing:<br><br>"*Received, thank you.*" | The LEA delivers a more comprehensive response two days later by having administrators with conflicts of interest interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| 188. | 5/13/26 | LFCMS Principal Diaz | EB | The LEA issues a comprehensive response to the above parental concerns by giving [E.B.-2] two hours of Saturday morning detention for a Level 3 infraction.<br><br>The LEA has never imposed any detention of any kind on [E.B.-2] during his nearly two years at LFCMS up to this point in time.<br><br>LFCMS Principal Diaz and [Case Manager 2] interview [E.B.-2] with respect to an incident in which [E.B.-2] attempted to capture audio recordings of an offending classmate bullying his deskmate. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | [E.B.-2] said that he attempted to record the offending classmate on his school-issued Chromebook because he wanted to make sure that adults at the school believed bullying was taking place and intervened to stop such bullying. | records to Parents; (iii) delays annual review meetings in violation of state and federal laws; and (iv) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | |
| | | | | The behavior chart of [E.B.-2], which the LEA is refusing to provide to Parents in violation of state and federal laws, should contain multiple entries of [E.B.-2] having meetings with administrators last year to discuss multiple negative interactions with the same offending classmate, during which the administrators blamed [E.B.-2] for such interactions. | | |
| | | | | [E.B.-2] said that he did not feel comfortable turning a blind eye to his deskmate being bullied this year in the same manner that [E.B.-2] was being bullied last year by the same offending classmate. | | |
| | | | | [E.B.-2] said that LFCMS Principal Diaz and [Case Manager 2] asked [E.B.-2] questions about and discussed the home life of [E.B.-2]. | | |
| | | | | LFCMS Principal Diaz emails Parent B.B. and Parent A.B. to inform them that [E.B.-2] has been assigned a Saturday detention for:<br><br>"*Inappropriate/misuse of technology on or off school grounds, including but not limited to unauthorized audio, video, or photo recording.*" | | |
| 189. | 5/13/26 | Parent A.B. | Lists of IEP Students | Parent A.B. notifies President Morell and Vice President Richter of the following, and copies the Investigations Unit of the NJDOE OFAC:<br>• [E.B.-2] was given Saturday detention for trying to prevent his deskmate from being bullied by his classmate.<br>• [E.B.-2] said that because administrators were dismissive of his bullying claims last year, he needed something other than his own word to establish that bullying was taking place this year. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and- |

77

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | • Two administrators who are interested parties in a federal retaliation lawsuit with similar facts in relation to the same family interviewed and disciplined [E.B.-2].<br><br>Parent A.B. requested the following 5 actions from President Morell and Vice President Richter:<br>1. Produce the **student records** as required under state and federal laws instead of continuing to violate such laws;<br>2. Hold **annual review meetings** as required under state and federal laws instead of continuing to violate such laws;<br>3. Hire an independent law firm to review the **two unlawful cease-and-desists** against Parents and then pass a board action unequivocally retracting such unlawful cease-and-desists;<br>4. Issue a public statement correcting the **misrepresentations of fact in the April 24, 2026 notification letter** from Superintendent Collazo to the public, which will encourage LEA personnel to cease any organized campaign of harassment or intimidation; and<br>5. Prevent the two administrators referenced above from interviewing and disciplining the disabled student without **disinterested administrators** present.<br><br>Parent A.B. reminds the LEA that a parent cannot legally "drop" an investigation request in response to unlawful pressure from the LEA because once evidence of wrongdoing is shared with an investigating agency, notification of wrongdoing is established as a matter of law. | (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; and (iv) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | desists against Parents. |
| 190. | 5/13/26 | M&W, PC | LIsts of IEP Students | On behalf of the LEA, M&W, PC replies to the above email of Parent A.B. by writing:<br><br>    "***This guy is fun***." | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
|  |  |  |  |  | deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; and (iv) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | highest authority in the LEA issued two cease-and-desists against Parents. |
| 191. | 5/13/26 | Parent A.B. | EB | Parent A.B. responds directly to LFCMS Principal Diaz and copies President Morell, Vice President Richter, Superintendent Collazo, DSS Heinze, [Case Manager 2], M&W, PC, and Taylor Law, reminding them of his many requests for the LEA to cease emailing Parent B.B. for the purposes of intimidating Parent B.B.<br><br>Parent A.B. notes that the email from LFCMS Principal Diaz involves yet another instance of potentially unjust discipline immediately following formal complaints of violations of law from such Parents to government agencies.<br><br>Parent A.B. notes that the email from LFCMS Principal Diaz appears to be consistent with the longstanding strategy of the LEA to provoke Parents into an emotional reaction for the purposes of falsely accusing them of harassment and obstructionism.<br><br>Parent A.B. reminds the LEA that both LFCMS Principal Diaz and [Case Manager 2] are aware that they are interested parties in a federal retaliation lawsuit, and that the LEA should have had | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; and (iv) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | disinterested parties interview and discipline [E.B.-2]. | including justice sensitivity related to bullying. | |
| | | | | Parent A.B. informs the LEA that [E.B.-2] will not be attending Saturday detention until an authorized representative of the highest authority in the LEA confirms whether or not the LEA finds their processes and lack of safeguards to be appropriate. | | |
| 192. | 5/13/26 | Parent A.B. | Lists of IEP Students | Parent A.B. notifies President Morell and Vice President Richter of the following, and copies the Investigations Unit of the NJDOE OFAC:<br>• M&W, PC responded to the email from Parent A.B. by writing the following about Parent A.B.: "**This guy is fun**",<br>• M&W, PC is behaving in a manner that is unprofessional,<br>• Engaging in mass FERPA and IDEA violations and then making false statements to the public about such violations is neither funny nor amusing, and<br>• The conduct of M&W, PC could be the subject of malpractice suits and bar investigations. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; and (iv) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| | | | | Parent A.B. requests that the LEA hire an independent law firm to explain to the LEA why unlawfully disclosing the following 8 lists is likely a catastrophic violation of state and federal laws instead of a source fun and humor:<br>1. Accessing IEP Progress Reports Through the Genesis (pages 9,035 to 9,074)<br>2. Shared Resource: Elks Camp Moore (pages 8,628 to 8,667)<br>3. Quiet House Available: Tree Lighting (pages 5,824 to 5,871)<br>4. Transition Planning & Family Resources Presentation (pages 9,083 to 9,130)<br>5. SEPAG Presentation: Understanding the IEP Process (pages 11,237 to 11,284)<br>6. SEPAG Follow-Up: Cape Center (pages 9,554 to 9,601)<br>7. Reminder: SEPAG Transition Planning Presentation (pages 9,499 to 9,546) | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | 8. SEPAG Parent Survey (pages 7,194 to 7,241) | | |
| | | | | Parent A.B. reminds the LEA that the problem is not the parent identifying violations of law but the lack of any processes, safeguards, or procedures in the LEA despite repeated warnings. | | |
| 193. | 5/14/26 | Parent A.B. | EB | Parent A.B. requests that LFCMS Principal Diaz preserve any communication logs and related metadata between himself and his attorneys between the time of the alleged recording incidents and the time of the interview with [E.B.-2] in order to preserve evidence of whether the interview with [E.B.-2], particularly with respect to his home life, were conducted after communications with attorneys who were involved in the cover up of mass FERPA violations. | The LEA allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| | | | | Parent A.B. copies President Morell, Vice President Richter, Superintendent Collazo, DSS Heinze, [Case Manager 2], M&W, PC, and Taylor Law | | |
| 194. | 5/14/26 | Parent A.B. | Lists of IEP Students | Parent A.B. notifies President Morell and Vice President Richter that both law firms representing the LEA assisted with administrative fraud, and copies the Investigations Unit of the NJDOE OFAC, M&W, PC, and Taylor Law by writing:<br>• M&W, PC (federal litigation counsel) and Taylor Law (board counsel) both appear to be involved in assisting the LEA with administrative fraud.<br>• On April 14, 2026 at 9:52am, M&W, PC sent Parent A.B. the 11,738-page file on behalf of the LEA without reviewing or redacting such file at all after claiming to be reviewing and redacting such file for weeks.<br>• Any administrator or attorney who scrolled through the 11,738-page file for a few minutes would have noticed that more than half of the file (6,130 pages) contains the PII of students in the LEA.<br>• A few hours after the unlawful transmission, on **April 14, 2026** | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; and (iv) allows administrators with conflicts of interest to interview and discipline | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | **at 11:48am**, Parent A.B. specifically alerted the LEA to the mass FERPA violations by writing, "**the LEA sent parents multiple email lists containing the entire population of special education students in the Borough of Fort Lee**."<br>● Over the course of the day, between April 14, 2026 at 11:48am and April 15, 2026 at 11:26am, the LEA and M&W, PC re-aggregated a new 21,237-page file.<br>● On **April 15, 2026 at 11:26am**, M&W, PC wrote that this new 21,237-page file was the file M&W, PC allegedly "**intended to share yesterday**."<br>● The new 21,237-page file is unrelated to the unlawfully transmitted 11,738-page original file in terms of content.<br>● The new 21,237-page file is limited to emails that Parents and the LEA exchanged with each other over the years, meaning it does not require any review or redaction prior to disclosure.<br>● The LEA and their lawyers at M&W, PC spent the time period between April 14 at 9:52am and April 15 at 11:26am scrambling to re-aggregate such a new file in order to create the illusion that there was an alternative file that M&W, PC had been reviewing and redacting since March 16, 2026.<br>● Over the course of almost 10 calendar days, the LEA and their board counsel Taylor Law allegedly reviewed the 11,738-page file to confirm the scope of the disclosure.<br>● In her Notification Letter of April 24, 2026, Superintendent Collazo wrote, "**I have worked closely with board counsel and our technology department to review the materials and confirm the scope of the disclosure. I can confirm that the information shared was limited to directory information only**."<br>● The LEA and Taylor Law ignored 8 lists identifying all of the disabled students in the LEA in violation of FERPA and IDEA after the parent already alerted the LEA to such lists on April 14, 2026 at 11:48am.<br>● Presently, the LEA is refusing to issue a public correction to | [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | |

82

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | the material misrepresentations of fact in the Notification Letter, refusing to produce student records as required under state and federal laws, refusing to hold annual review meetings as required under state and federal laws, and refusing to establish a firewall between the two administrators and the disabled student.<br>● How could the LEA use the federal lawsuit as an excuse to improperly insert M&W, PC into a routine student records request, but ignore the federal lawsuit for the purposes of interviewing the disabled student and imposing discipline? | | |
| 195. | 5/15/26 | Parent A.B. | Parental Statement for Annual Review Meetings | Parent A.B. distributes an updated version of this ***Violations of Laws Ledger*** to President Morell, Vice President Richter, Superintendent Collazo, DSS Hienze, [Case Manager 1], and [Case Manager 2].<br><br>Parent A.B. requests that President Morell, Vice President Richter, and Superintendent Collazo:<br>● Review the document because the document contains a description of ongoing violations of laws;<br>● Confirm or deny whether two individuals with a conflict of interest conducting the interview of and imposing discipline on the disabled student was appropriate; and<br>● Refrain from discussing the home life of [E.B.-2] or otherwise deposing [E.B.-2] without his attorney present during any future alleged incidents (disciplinary or otherwise).<br><br>Parent A.B. informs President Morell, Vice President Richter, and Superintendent Collazo that [E.B.-2] said he receives counseling 1x per month from [Case Manager 2] even though this item is not in the list of services provided under his IEP, and Parent A.B. states that he is hereby denying consent to [Case Manager 2] providing such counseling to [E.B.-2].<br><br>Parent A.B. informs President Morell, Vice President Richter, and | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; and (iv) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | Superintendent Collazo that [E.B.-2] continues to be distressed by the conduct of his classmate, and that yesterday the classmate threw a crumpled post-it at the deskmate of [E.B.-2] after saying "This post-it was down my pants." Parent A.B. requests that the administrators refrain from continuing to turn a blind eye to the underlying cause behind [E.B.-2] feeling the need to audio record this particular classmate. | | |
| 196. | 5/15/26 | Parent A.B. | Parental Statement for Annual Review Meetings | On Friday afternoon, with the deadline for effectuating discipline on Saturday fast approaching, Parent A.B. requests a clarification of communication protocols from President Morell, Vice President Richter, Superintendent Collazo, DSS Heinze, LFCMS Principal Diaz, FLHS Principal Glynn, [Case Manager 2], [Case Manager 1], Taylor Law and M&W, PC because DSS Heinze is not substantively communicating with Parent A.B. regarding any parental concerns or violations of laws despite being the sole contact of Parent A.B. within the LEA under the cease-and-desists. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; and (iv) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| | | | | Parent A.B. notes that the only substantive communication Parent A.B. received from the LEA in response to parental concerns or violations of laws has been the email delivered by LFCMS Principal Diaz to Parent B.B. and Parent A.B. imposing discipline on [E.B.-2] with respect to ongoing issues that are likely noted in his behavior chart and notes, which Parent A.B. has been requesting since March 16, 2026. | | |
| | | | | Parent A.B. requests clarification on whether LFCMS Principal Diaz is replacing DSS Heinze as the substantive point of contact for [E.B.-2], and whether that means emails should be duplicated for FLHS Principal Glynn for matters involving [E.B.-1]. | | |
| | | | | Parent A.B. recalls that when he made student records requests with respect to [E.B.-2] and [E.B.-1] a few years ago, such records were provided by the principals of the schools, which included LFCMS | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | Principal Diaz. | | |
| 197. | 5/15/26 | DSS Heinze | Parental Statement for Annual Review Meetings | On behalf of the LEA, DSS Heinze provides a response to the above parental concerns regarding communication protocols, violations of laws, and the upcoming effectuation of discipline by writing the following:<br><br>"*Mr. [B.],*<br><br>*We are in receipt of your email.*<br><br>*Monica*" | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; and (iv) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| 198. | 5/15/26 | Parent A.B. | Parental Statement for Annual Review Meetings | Parent A.B. responds to DSS Heinze, and copies President Morell, Vice President Richter, Board Secretary Rinderknecht, Superintendent Collazo, LFCMS Principal Diaz, FLHS Principal Glynn, [Case Manager 2], [Case Manager 1], Taylor Law and M&W, PC by writing the following:<br>● The LEA issued two cease-and-desists against Parents and therefore has a higher duty to ensure that communications are being conducted faithfully and efficiently.<br>● The LEA has been consistently breaching the communication protocols under the two cease-and-desists for improper | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | purposes, such as inserting a law firm into routine student records requests and inserting a principal with a conflict of interest into a special education matter.<br>● In contrast, Parent A.B. breached the communication protocols only after the mass FERPA and IDEA violations of the LEA and only to protect the privacy rights of the student body from administrators and their lawyers who were engaging in administrative fraud as demonstrated by the Notification Letter of April 24, 2026.<br>● Parent A.B. requests clarification on who is in charge of moving this process forward on behalf of the LEA? | delays annual review meetings in violation of state and federal laws; and (iv) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | |
| 199. | 5/15/26 | Superintendent Collazo | EB | Superintendent Collazo rejects a board review of the disciplinary matter and notifies Parent A.B. that [E.B.-2] will be subject to further discipline if he does not attend detention either on Saturday, May 16, 2026, or Saturday, May 23, 2026.<br><br>Superintendent Collazo emphasizes that discipline must be effectuated on the above dates even if the Board decides to review the matter and intervene at a future date in order to render any such review and intervention moot.<br><br>Superintendent Collazo strips the Child Study Team of statutory authority by writing:<br><br>*"Any necessary disciplinary accommodations or modifications are determined by the student's IEP team in accordance with N.J.A.C. 6A:14-2.8. At this time, administration has reviewed this matter and determined that the assigned disciplinary consequence is appropriate and consistent with district policy and procedure."* | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; and (iv) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 200. | 5/15/26 | Parent A.B. | EB | Parent A.B. responds to Superintendent Collazo by asking the following questions, and copies President Morell, Vice President Richter, DSS Heinze, LFCMS Principal Diaz, [Case Manager 2], M&W, PC, and Taylor Law:<br>1. What is the process to obtain Board confirmation of the administrative decision?<br>2. Are any steps being taken to address the parental concerns identified in prior emails?<br>3. Why not allow detention to take place on Thursday or Friday considering that the disabled student has out-of-district therapies on Mondays, Tuesdays, Wednesdays, and Saturdays? | The LEA issues the 3rd C&D on 5/15/26. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued two cease-and-desists against Parents. |
| 201. | 5/15/26 | Parent A.B. | Parental Statement for Annual Review Meetings | Parent A.B. notifies President Morell and Vice President Richter that Superintendent Collazo ratified the process and decision regarding the disciplinary matter. | The LEA issues the 3rd C&D on 5/15/26. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. insists that the Board please review the process and decision surrounding the disciplinary matter by reading this *Violations of Laws Ledger* and confirming or denying the decision of Superintendent Collazo. | | |
| | | | | Parent A.B. notes that any necessary paperwork or formality can likely be managed by the many law firms and lawyers the LEA has inserted into routine school matters over the objections of Parent A.B. | | |
| 202. | 5/15/26 | Taylor Law | Parental Statement for Annual Review Meetings | The FLBOE sends a comprehensive response to all of the above parental concerns by issuing the May 15 Cease & Desist Email from Taylor Law. | Parent A.B. informs the Board on 3/15/26 that the 3rd C&D is unlawful and the attorney issuing the 3rd C&D has a conflict of interest.<br><br>**See <u>Notes</u>.** | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and- |
| | | | | The May 15 Cease & Desist Email states that the Board will not review the disciplinary matter or any of the violations of laws. | | |
| | | | | The May 15 Cease & Desist Email states that the communications of | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | Parent A.B. are "repetitive, voluminous, excessive," "veering toward harassment," and "procedurally improper" per the previous cease-and-desists. | | desists against Parents. |
| 203. | 5/15/26 | Parent A.B. | Parental Statement for Annual Review Meetings | Parent A.B. responds to Taylor Law, All Board Members, Superintendent Collazo, DSS Heinze, LFCMS Principal Diaz, FLHS Principal Glynn, [Case Manager 2], [Case Manager 1], and M&W, PC, as follows, and copies the Investigations Unit of NJDOE OFAC:<br><br>1. Taylor Law has a conflict of interest.<br><br>Parent A.B. notes that Taylor Law reviewed the 11,738-page file for 10 days and concluded that such lists constituted directory information only, despite Parent A.B. alerting the LEA to mass FERPA and IDEA violations in such a file.<br><br>Parent A.B. notes that at the present time Taylor Law is not defending the LEA but is defending itself.<br><br>2. Taylor Law is increasing the liability of the district.<br><br>Parent A.B. notes that he has a duty to notify the LEA that bringing in the disabled child for detention on Saturday may be procedurally or substantively erroneous, and that the Board has a duty to ensure that decisions made by administrators are in compliance with laws and appropriate.<br><br>Parent A.B. notes that bringing the disabled child in for detention immediately prior to his Saturday out-of-district therapy session at [Private Speech and Social Skills Provider] may lead to resentment or refusal toward school or out-of-district services. Parent A.B. notes that the highest authority in the LEA must accept responsibility for any such administrative action instead of delegating the consequences of retaliatory conduct to Parents. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; and (iv) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | Parent A.B. notes that in the event the Board finds the detention appropriate, his secondary request is for the Board to allow detention to take place on Thursday or Friday. | | |
| | | | | 3. <u>Consider this communication to be my final request for a board review</u>.<br><br>Parent A.B. notes that he is copying the entirety of the Board, and that such board members are free to review or ignore the relevant information.<br><br>**Parent A.B. notes that Parent A.B. will bring the disabled child in for detention on Saturday, May 23, 2026, as instructed by Superintendent Collazo, if Parent A.B. does not hear back from the Board.** | | |
| | | | | 4. <u>Taylor Law is failing to approach the issues in a professional manner</u>.<br><br>Parent A.B. notes that the voluminous nature of the emails are driven by the extent of the violations of laws and are not personal. Parent A.B. notes that the Investigations Unit of the NJDOE OFAC received even longer emails from Parent A.B.<br><br>Parent A.B. notes that if the LEA wants less voluminous emails from Parent A.B., the LEA should engage in fewer and less egregious violations of laws. Parent A.B. notes that the primary issue is the lack of appropriate data safety protocols within the LEA and that the LEA is targeting the family to avoid accountability with respect to mass FERPA and IDEA violations. | | |
| | | | | 5. <u>Taylor Law has effectively suspended New Jersey law.</u> | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | Parent A.B. notes that the May 15 Cease & Desist Email does not make any sense because Taylor Law fails to establish or clarify any communication protocol of any kind. Parent A.B. notes that the only concern of Taylor Law appears to be preventing A.B. from notifying the Board of violations of laws to enable the Board to continue ignoring such violations of laws.<br><br>Parent A.B. states that he will abide by the 3rd C&D to avoid the appearance of harassment or obstructionism, but he notes that the 3rd C&D is a violation of law. | | |
| 204. | 5/16/26 | Parent A.B. | Notice: Violations of Laws Chart Updated for Board Review | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to All Board Members and Board Secretary Rinderknecht, and copies Taylor Law and M&W, PC.<br><br>Parent A.B. distributes an updated version of this *Violations of Laws Ledger* to All Board Members for their review. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; and (iv) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 205. | 5/16/26 | Parent A.B. | Parental Statement for Annual Review | Parent A.B. limits this communication to DSS Heinze, consistent with the March 21 Cease & Desist Letter. | The LEA: (i) does not correct the fraudulent public | Parent A.B. is forced to communicate with the LEA |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | Meetings | Parent A.B. requests that DSS Heinze **insert** this ***Violations of Laws Ledger*** into the IEPs of the disabled students **as a parental statement and amend the Concerns of the Parents sections** of such IEPs. | Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; (iv) denies PWNs; and (v) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 206. | 5/16/26 | Parent A.B. | Update Regarding [E.B.-2] | Parent A.B. emails [Private Speech and Social Skills Provider] and confirms in writing a conversation that [Private Speech and Social Skills Provider] had with Parent B.B. earlier in the day. Parent A.B. copies DSS Heinze in the communication. [Private Speech and Social Skills Provider] informed Parent B.B. of the following on the morning of Saturday, May 16, 2026: <ul><li>On the morning of Saturday, May 9, 2026, [E.B.-2] told his therapist at [Private Speech and Social Skills Provider] that he made a recording in class in order to catch Student T. in the act of bullying Student A.</li><li>On the evening of Wednesday, May 13, 2026, [E.B.-2] told his</li></ul> | Not applicable. | Not applicable. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | therapist at [Private Speech and Social Skills Provider] that he received Saturday detention for such recording and was in an extremely anxious state.<br>• On the morning of Saturday, May 16, 2026, [E.B.-2] asked his therapist at [Private Speech and Social Skills Provider] if his therapist told his school that [E.B.-2] was gathering "evidence" of bullying and got him into trouble.<br>• [Private Speech and Social Skills Provider] told Parent B.B. that [E.B.-2] did not understand that he was doing something wrong, and that therapists have been working with [E.B.-2] on his detective fixation. | | |
| | | | | Parent A.B. requests that [Private Speech and Social Skills Provider] notify Parent A.B. if [Private Speech and Social Skills Provider] is legally permitted to share confidential therapeutic discussions between [E.B.-2] and his therapist with administrators who have a legal conflict of interest against [E.B.-2]. | | |
| | | | | Parent A.B. requests assistance from [Private Speech and Social Skills Provider] to address such issues at school because of the silence, noncooperation, and punitive acts of the school. | | |
| | | | | Parent A.B. notifies [Private Speech and Social Skills Provider] that the Saturday morning session next week will likely be cancelled because [E.B.-2] is scheduled for 2 hours of detention between 8:15am and 10:15am.<br><br>(The drive to [Private Speech and Social Skills Provider] takes approximately 30 minutes and would be dangerous to complete in 15 minutes. Further, adding another 2 hours of school-related activities will overwhelm [E.B.-2] by turning his Saturday from 8:00am to 1:00pm into a school day.)<br><br>Parent A.B. notifies [Private Speech and Social Skills Provider] that | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | [E.B.-2] is already under the impression that [Private Speech and Social Skills Provider] got him into trouble and Parent A.B. is worried [E.B.-2] could develop school refusal. | | |
| 207. | 5/18/26 | District Technology Coordinator Jason Ruggiero | Public Business Meeting of 05-18-26 | The LEA sends Parent A.B. and Parent B.B. notice that the Public Business Meeting of the FLBOE will be held Monday, May 18, 2026 at 6:30 p.m. and immediately go into Executive Session. | Not applicable. | Not applicable. |
| | | | | The documents linked to the notice include a Board Agenda, Policy 9130 (Public Complaints), and Bills List. | | |
| 208. | 5/18/26 | Parent A.B. | Notice: Violations of Laws Chart Updated for Board Review | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to All Board Members and Board Secretary Rinderknecht, and copies Taylor Law and M&W, PC. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; (iv) denies PWNs; and (v) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. notifies the Board that Policy 9130 can be incorrectly read to deny board review of unlawful acts. | | |
| | | | | Parent A.B. notifies All Board Members that:<br>• Parent A.B. has documented 89 pages of violations of laws, including the catastrophic data breach and administrative fraud reported to NJDOE OFAC Investigations Unit;<br>• Superintendent Collazo ratified disciplinary action against the child of this whistleblower parent;<br>• Superintendent Collazo rendered any board intervention moot by ordering the disciplinary action to take effect despite any board review; and<br>• The Board imposed a 3rd cease-and-desist against the whistleblower parent to silence the parent when the parent requested board review. | | |
| 209. | 5/18/26 | Parent A.B. | Notice: Violations of | Parent A.B. bifurcates communications between elected officials and | The LEA: (i) does not correct | Parent A.B. is forced to |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | Laws Chart Updated for Board Review | the administration, limiting this communication to All Board Members and Board Secretary Rinderknecht, and copies Taylor Law and M&W, PC. | the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; (iv) denies PWNs; and (v) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. notifies the Board that their Bills List includes multiple payments to [Developmental Pediatrician] at his standard evaluation rate and multiple payments to [Private Speech and Social Skills Provider] at their standard therapy rate. | | |
| | | | | Parent A.B. notifies the Board that the LEA has been aware of the following facts from the student records of the disabled student:<br>• [Developmental Pediatrician] is a developmental pediatrician who identifies disabled children on behalf of the LEA;<br>• [Developmental Pediatrician] wrote a report stating that [E.B.-2] believes he is an actual detective and is solving cases at school;<br>• Therapists at [Private Speech and Social Skills Provider] have been actively working with [E.B.-2] regarding such issues this year;<br>• Superintendent Collazo reviewed and ratified disciplinary action against [E.B.-2] for a behavior that stems from his disability; and<br>• The LEA has unlawfully denied the student records of [E.B.-2] to his Parents and refused to hold an annual review meeting. | | |
| | | | | Parent A.B. reiterates that [E.B.-2] will attend detention on Saturday, May 23, 2026, as instructed by Superintendent Collazo unless the Board intervenes. | | |
| 210. | 5/18/26 | DSC Drumgoole | Response | Just hours before the board meeting, DSC Drumgoole sends an email to Parent A.B. that does not have any new information and simply repeats previous administrative requests asking Parents to assume the burden of constructing a course schedule for [E.B.-1]. | The LEA delays an appropriate course schedule for [E.B.-1]. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | DSC Drumgoole copies DSS Heinze in the email, meaning DSC Drumgoole is aware that course scheduling for disabled students requires compliance with a wide variety of laws. | | accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | The LEA likely wants Parent A.B. to reply directly to DSC Drumgoole in order to document a manufactured "violation" of the cease-and-desist just hours before the board meeting. | | |
| 211. | 5/18/26 | Parent A.B. | Response | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to All Board Members and Board Secretary Rinderknecht, and copies Taylor Law and M&W, PC.<br><br>Parent A.B. forwards the email from DSC Drumgoole to All Board Members, and Parent A.B. notifies them as follows:<br>● DSS Heinze is the formal contact of Parent A.B. under the cease-and-desists.<br>● Administrators are breaching the cease-and-desists of the Board and directly communicating with Parent A.B.<br>● The Board cannot legally or ethically restrict a parent to a single point of contact only to allow multiple other administrators to initiate contact with the same parent.<br>● What is the purpose allowing such communication other than to entrap a parent into breaching cease-and-desists? | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; (iv) denies PWNs; and (v) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 212. | 5/19/26 | Parent A.B. | Response | Parent A.B. responds to DSC Drumgoole and copies All Board Members, Board Secretary Rinderknecht, Taylor Law, and M&W, PC.<br><br>Parent A.B. requests that DSC Drumgoole abide by the cease-and- | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | desists imposed by the Board by writing:<br><br>*"Moving forward, unless an email lands in my inbox from my actual point of contact under the cease-and-desists, I am going to copy the board who issued the cease-and-desists along with their attorneys in my responses."*<br><br>Parent A.B. reminds DSC Drumgoole that her email does not contain any new information:<br><br>*"As you are aware, your email repeats the same answers various administrators have provided in the past. As I already noted multiple times, you have a duty to construct a course schedule that does not contain a STEM tax, an additional burden, or a forced waiver for participation in advanced courses or programs. The duty to construct a course schedule that meets various educational and special educational requirements belongs to the district. Please also have a discussion regarding predetermination with the many attorneys copied on this email."* | violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; (iv) denies PWNs; and (v) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 213. | 5/19/26 | Parent A.B. | IEP Amendment | Parent A.B. limits this communication to DSS Heinze, consistent with the March 21 Cease & Desist Letter.<br><br>Parent A.B. **reiterates** his IEP amendment request on May 16, 2026 by asking DSS Heinze to **insert** this *Violations of Laws Ledger* into the IEPs of the disabled students **as a parental statement and amend the Concerns of the Parents sections** of such IEPs. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; (iv) denies | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | | PWNs; and (v) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | |
| 214. | 5/19/26 | DSS Heinze | IEP Amendment | On behalf of the LEA, DSS Heinze responds by writing the following: "*Received, thank you.*" | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; (iv) denies PWNs; and (v) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 215. | 5/19/26 | Parent A.B. | IEP Amendment | Parent A.B. responds to DSS Heinze and copies All Board Members, Board Secretary Rinderknecht, Taylor Law, and M&W, PC. | The LEA: (i) does not correct the fraudulent public | Parent A.B. is forced to communicate with the LEA |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | Parent A.B. states that DSS Heinze should make an effort to send substantive responses considering the cease-and-desists issued by the Board designating her as the sole point of contact of Parents. | Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; (iv) denies PWNs; and (v) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. requests that DSS Heinze revert with amended IEPs as previously requested by Parents and without further delay by attaching this *Violations of Laws Ledger* to the IEPs of [E.B.-2] and [E.B.-1] as part of the Concerns of the Parent. | | |
| 216. | 5/20/26 | Parent A.B. | Corrected initial email production A.B. AND B.B. O/B/O E.B.-1 AND E.B.-2 VS. FORT LEE BOARD OF EDUCATION;97566 ELH | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to All Board Members, Board Secretary Rinderknecht, Taylor Law, and M&W, PC. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; (iv) denies PWNs; and (v) allows | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. reminds everyone that M&W, PC wrote on April 15, 2026 that M&W, PC was going to send "additional emails" containing student records to Parent A.B. "on a rolling basis," redacted as necessary to remove confidential information regarding other students. | | |
| | | | | Parent A.B. notes that he has not received any emails containing student records from either M&W, PC or the administration since April 15, 2026. | | |
| | | | | Parent A.B. asks M&W, PC if their offer to send additional student | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | records was conditioned on Parent A.B. participating in covering up the mass FERPA and IDEA violations as opposed to filing complaints with USDOE SPPO and NJDOE OFAC. | administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | |
| | | | | Parent A.B. notes that such a question is important because M&W, PC requested that Parent A.B. discard the April 14, 2026 distribution containing mass FERPA and IDEA violations only to have the LEA publicly misrepresent the contents of such distribution on April 24, 2026. | | |
| | | | | Parent A.B. notes that the sequence of events is important, and that discussions with [Private Speech and Social Skills Provider] are leading Parents to believe that such student records will likely contain information about behaviors relevant to the recent disciplinary incident. | | |
| 217. | 5/20/26 | M&W, PC | Corrected initial email production A.B. AND B.B. O/B/O E.B.-1 AND E.B.-2 VS. FORT LEE BOARD OF EDUCATION;97566 ELH | M&W, PC responds to Parent A.B. by writing the following, and copies All Board Members, Board Secretary Rinderknecht, and other attorneys: <br>• M&W, PC claims to have sent "voluminous student records" to Rue Law on March 18, 2026. <br>  ○ (Parent A.B. previously informed the LEA that those records were mostly evaluations and IEPs that Parents and the LEA exchanged over the years.) <br>• M&W, PC claims that Parent A.B. later requested that student records be sent directly to Parent A.B.. <br>  ○ (Parent A.B. requested student records directly from administrators at all times and consistently objected to M&W, PC interfering in routine student records requests to drive up the costs of Parents.) <br>• M&W, PC claims to have been "working diligently on redacting all remaining" student records. <br>• M&W, PC claims to need an additional two weeks to review and redact the remaining student records. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; (iv) denies PWNs; and (v) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | justice sensitivity related to bullying. | | |
| 218. | 5/20/26 | Parent A.B. | Corrected initial email production A.B. AND B.B. O/B/O E.B.-1 AND E.B.-2 VS. FORT LEE BOARD OF EDUCATION;9756 6 ELH | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to All Board Members, Board Secretary Rinderknecht, Taylor Law, and M&W, PC. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; (iv) denies PWNs; and (v) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. writes that the email from M&W, PC is designed to purposefully mislead the Board, and Parent A.B. requests independent conflict counsel to review the issues he has raised with the Board. | | |
| | | | | Parent A.B. informs the Board that federal discovery has not started on the federal case, and that Parents made the student record requests as members of the Child Study Teams without involving Rue Law. | | |
| | | | | Parent A.B. informs the Board that the initial distribution of student records by M&W, PC on March 18, 2026 was **missing** the following crucial documents as required by state and federal laws: 1. Behavior chart and notes of [E.B.-2]; 2. Behavior chart and notes of [E.B.-1] after December 10, 2025; 3. Incident reports of disciplinary matters relating to [E.B.-2] and [E.B.-1]; 4. Written statements relating to [E.B.-2] and [E.B.-1] (e.g. the handwritten statements that [E.B.-1] was forced to write at LFCMS some years ago); 5. Raw data, teacher data sheets, work samples, behavior tracking logs, prompting logs, and accommodation logs relating to [E.B.-2] and [E.B.-1]; and 6. All emails relating to [E.B.-2] or [E.B.-1]. | | |
| | | | | Parent A.B. notes that by denying such documents to Parents, M&W, PC effectively delivered "a car without an engine" to Parents on March 18, 2026. | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | Parent A.B. notes that M&W, PC and Taylor Law are likely lying regarding reviewing the files because:<br>• Any person who scrolls through the 11,738 pages for a few minutes would realize that they contain mass FERPA and IDEA violations;<br>• Parent A.B. realized that the 11,738 pages contained mass FERPA and IDEA violations and alerted the LEA **in less than two hours**; and<br>• M&W, PC and Taylor Law have approximately 70 lawyers at their disposal while Parent A.B. is one person. | | |
| | | | | Parent A.B. informs the Board that neither M&W, PC nor Taylor Law should represent the LEA because the Board may have to file malpractice suits to recoup losses relating to mass FERPA and IDEA violations as well as administrative fraud. | | |
| 219. | 5/20/26 | M&W, PC | Corrected initial email production A.B. AND B.B. O/B/O E.B.-1 AND E.B.-2 VS. FORT LEE BOARD OF EDUCATION;97566 ELH | M&W, PC responds to Parent A.B. by writing:<br><br>"*Mr. [B.] - henceforth I will no longer communicate directly with you. I will communicate exclusively with John Rue, your attorney of record.*" | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; (iv) denies PWNs; and (v) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | | and interactions, including justice sensitivity related to bullying. | |
| 220. | 5/20/26 | Parent A.B. | Request for Conflict Counsel | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to All Board Members and Board Secretary Rinderknecht, and copies Taylor Law and M&W, PC.<br><br>Parent A.B. reminds the Board of the following:<br>• M&W, PC is threatening to punish Parents financially by communicating solely with the federal counsel of Parents regarding routine student records.<br>• Under 20 U.S.C. § 1414 and 34 CFR § 99.10, Parents have a standalone right as parents to access the educational records of their children and to participate as an "equal member" of the IEP team.<br>• N.J.A.C. 6A:32-7.5 requires Parents to have access to student records within 10 days of their request.<br>• N.J.A.C. 6A:14-2.9 specifically applies to special education and reinforces that Parents must be permitted to inspect and review records "without unnecessary delay" and before any meeting regarding the IEP.<br>• The LEA intentionally breached this deadline on **March 26, 2026** and continues to breach such deadline.<br><br>Parent A.B. reminds the Board that the mass FERPA and IDEA violations of April 14, 2026 occurred as a result of the failed review and redaction process of M&W, PC with respect to routine student records.<br><br>Parent A.B. reminds the Board that M&W, PC and Taylor Law engaged in **intentional, affirmative acts to confuse state and federal investigators and lie to the public**. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; (iv) denies PWNs; and (v) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | Parent A.B. reminds the Board that the most egregious FERPA / IDEA violations are the 8 lists that identify all of the disabled students in the LEA:<br>1. Accessing IEP Progress Reports Through the Genesis (pages 9,035 to 9,074)<br>2. Shared Resource: Elks Camp Moore (pages 8,628 to 8,667)<br>3. Quiet House Available: Tree Lighting (pages 5,824 to 5,871)<br>4. Transition Planning & Family Resources Presentation (pages 9,083 to 9,130)<br>5. SEPAG Presentation: Understanding the IEP Process (pages 11,237 to 11,284)<br>6. SEPAG Follow-Up: Cape Center (pages 9,554 to 9,601)<br>7. Reminder: SEPAG Transition Planning Presentation (pages 9,499 to 9,546)<br>8. SEPAG Parent Survey (pages 7,194 to 7,241) | | |
| | | | | Parent A.B. reminds the Board that the following lists identify the cell phone numbers of all parents within the high school and middle school:<br>1. FLHS 2026 Midterm Message (pages 9,340 to 9,497)<br>2. Midterms to Resume on Wednesday 1/28/26 (pages 10,031 to 10,207)<br>3. LFCMS Announcements (Week 22) (pages 11,019 to 11,084)<br>4. Dismissal (pages 5,517 to 5,611) | | |
| | | | | Parent A.B. reminds the Board that the Notification Letter of April 24, 2026 intentionally misrepresents the nature of the data breach. | | |
| | | | | Parent A.B. notifies the Board that **the Board urgently needs conflict counsel** to review the issues before the Board and make a determination regarding the disciplinary matter. | | |
| 221. | 5/20/26 | Parent A.B. | Corrected initial email production | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to All Board Members, | The LEA: (i) does not correct the fraudulent public | Parent A.B. is forced to communicate with the LEA |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | A.B. AND B.B. O/B/O E.B.-1 AND E.B.-2 VS. FORT LEE BOARD OF EDUCATION;9756 6 ELH | Board Secretary Rinderknecht, Taylor Law, and M&W, PC. | Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; (iv) denies PWNs; and (v) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. notes that M&W, PC is threatening to punish Parents financially by communicating solely with the federal counsel of Parents regarding routine student records. | | |
| | | | | Parent A.B. reminds M&W, PC that on March 18, 2026 M&W, PC wrote "**FERPA, the NJPRA and privacy rights of others require that we review and redact**" the student records, which was approximately a month before M&W, PC distributed a file to Parents that engaged in the very same violations on a catastrophic scale on April 14, 2026. | | |
| | | | | Parent A.B. encourages M&W, PC to support the appointment of conflict counsel because Parent A.B. notes that M&W, PC likely took internal precautions against Eric Harrison, the partner-in-charge of the matter, by requiring him to insert a memo to file regarding the incident: <br><br> "*You appear to be defending your own work product and reputation. Frankly, I am not even sure if your conflict is waivable considering the seriousness of the exposure. My best guess is that the other partners at M&W, PC already required you to insert a memo to file regarding this incident.*" | | |
| 222. | 5/21/26 | Parent A.B. | Corrected initial email production A.B. AND B.B. O/B/O E.B.-1 AND E.B.-2 VS. FORT LEE BOARD OF EDUCATION;9756 6 ELH | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to All Board Members, Board Secretary Rinderknecht, Taylor Law, and M&W, PC. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. reminds the Board, Board Secretary Rinderknecht, and their attorneys that Parents notified the LEA on February 18, 2026, February 27, 2026, March 20, 2026, and April 15, 2026, among other dates, that Rue Law has **not** been retained by Parents to represent Parents in any capacity regarding any IDEA administrative process, upcoming IEP Annual Review Meetings, or routine requests for | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | educational records. | records to Parents; (iii) delays annual review meetings in violation of state and federal laws; (iv) denies PWNs; and (v) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | |
| | | | | Parent A.B. reminds the Board, Board Secretary Rinderknecht, and their attorneys that Parent A.B. sent a notice to the LEA entitled "NOTICE OF PRO SE STATUS FOR IDEA ADMINISTRATIVE MATTERS AND DIRECTIVE REGARDING STUDENT RECORDS." | | |
| | | | | Parent A.B. reminds the Board, Board Secretary Rinderknecht, and their attorneys that M&W, PC sent partial student records directly to Parents on April 14, 2026 and April 15, 2026, only to turn around and decide on May 20, 2026 that "henceforth" M&W, PC would only communicate with the federal counsel of Parents regarding routine student records. | | |
| | | | | Parent A.B. asks M&W, PC to explain the legal basis of the change in behavior because of the serious legal implications of such a change for the LEA. | | |
| 223. | 5/21/26 | Parent A.B. | Request for Conflict Counsel | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to All Board Members and Board Secretary Rinderknecht, and copies Taylor Law and M&W, PC. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; (iv) denies PWNs; and (v) allows administrators with conflicts of interest to interview and | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. distributes an updated version of this **Violations of Laws Ledger** to All Board Members and Board Secretary Rinderknecht to ensure that any conflict counsel appointed by the Board can understand the issues relatively quickly. | | |

105

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | | discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | |
| 224. | 5/21/26 | DSS Heinze | Response to Parent Concerns | DSS Heinze responds to Parent A.B. as follows:<br>● The LEA rejects parental requests for IEP amendments to the IEPs of [E.B.-2] and [E.B.-1].<br>● The LEA refuses to provide PWNs.<br>● The LEA is "hoping to schedule the annual reviews in June."<br>● The LEA does not find "district staff actions as targeting."<br>● The LEA does not believe the LEA is obligated to address any of the legal issues raised by Parents regarding the course schedule of [E.B.-1].<br>● The LEA instructs Parents to breach the March 21 Cease & Desist Letter by contacting DSC Drumgoole regarding course scheduling. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; (iv) denies PWNs; and (v) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 225. | 5/21/26 | Parent A.B. | Response to Parent Concerns | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to All Board Members and Board Secretary Rinderknecht, and copies Taylor Law and M&W, PC. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | Parent A.B. requests that the Board instruct their lawyers and law firms to review the communication from DSS Heinze and make a determination as to whether her response is legally appropriate in light of prior communications. | violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; (iv) denies PWNs; and (v) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 226. | 5/21/26 | Parent A.B. | Request for Conflict Counsel | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to All Board Members and Board Secretary Rinderknecht, and copies Taylor Law and M&W, PC. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; (iv) denies PWNs; and (v) allows administrators with conflicts of interest to interview and | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. informs the Board that this *Violations of Laws Ledger* has been updated to include the latest communication from Director Heinze, which violates state and federal laws for denial of PWN. | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | | discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | |
| 227. | 5/22/26 | Parent A.B. | Notice to Business Administrator | Parent A.B. notifies Business Administrator Rinderknecht that he has independent fiduciary duties toward the FLBOE, which are separate from his duties as a board secretary, and Parent A.B. copies All Board Members, Taylor Law, and M&W, PC in his communication.<br><br>Parent A.B. writes: "**Because the Board of Education declined to respond, the order of the Superintendent will be effectuated tomorrow morning under protest**."<br><br>Parent A.B. requests that Board Secretary Rinderknecht review the following timeline in his capacity as a Business Administrator as well:<br>● April 14: LEA commits the FERPA data breach.<br>● April 14: Parent A.B. identifies the FERPA data breach and informs LEA that he will report the breach to the USDOE OPPO and NJDOE OFAC.<br>● April 19: Parent A.B. files complaints with USDOE OPPO and NJDOE OFAC.<br>● April 24: Superintendent Collazo issues a false public statement with respect to the FERPA data breach.<br>● April 24: Parent A.B. describes the false information in the public letter to the NJDOE OFAC.<br>● April 27: NJDOE OFAC investigator requests the file that is the subject of the FERPA data breach from Parent A.B.<br>● April 27: Parent A.B. informs the LEA that the LEA needs to send the FERPA data breach file to the NJDOE OFAC.<br>● May 1: Parent A.B. informs the LEA that if the LEA does not provide the FERPA data breach file to NJDOE OFAC, Parent will securely transmit such file to NJDOE OFAC. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; (iv) denies PWNs; and (v) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | • <u>May 9</u>: Parent A.B. asks the NJDOE OFAC investigator if the LEA has complied with the request.<br>• <u>May 11</u>: The NJDOE OFAC investigator confirms that the file has been shared with his office and thanks Parent A.B.<br>• <u>May 13</u>: [E.B.-2] receives 2-hour detention on Saturday for a Level 3 infraction. [E.B.-2] has never been disciplined by the LEA previously.<br>• <u>May 13</u>: Parent A.B. requests board action and because "issuing a false public statement and then suspending the disabled child of a whistleblower parent is not an appropriate response." Parent also requests that the Board review prior unlawful cease-and-desists.<br>• <u>May 13</u>: M&W, PC responds on behalf of the Board as follows: "This guy is fun."<br>• <u>May 15</u>: Superintendent Collazo strips the CST of statutory authority, rejects a board review of the disciplinary matter, and notifies the parent that the disabled child will be subject to further discipline after Saturday, May 23, 2026.<br>• <u>May 15</u>: Parent A.B. responds by insisting on board action.<br>• <u>May 15</u>: Taylor Law issues a cease-and-desist.<br>• <u>May 20</u>: Parent A.B. requests that the Board appoint independent conflict counsel. | | |
| 228. | 5/22/26 | DSC Drumgoole | Response | DSC Drumgoole, the direct supervisor of guidance counselors who are tasked with monitoring Saturday morning detentions, responds on behalf of the Board by copying Board Secretary and Business Administrator Rinderknecht and writing the following to Parent A.B.:<br><br>**"I hope you enjoy the long weekend."** | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | | meetings in violation of state and federal laws; (iv) denies PWNs; and (v) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | |
| 229. | 5/22/26 | Parent A.B. | Response | Parent A.B. responds to All Board Members and Board Secretary Rinderknecht, and copies Taylor Law and M&W, PC. | The LEA: (i) does not correct the fraudulent public Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; (iv) denies PWNs; and (v) allows administrators with conflicts of interest to interview and discipline [E.B.-2] for disability-related behaviors and interactions, including justice sensitivity related to bullying. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. requests that the LEA please communicate with Parent A.B. through DSS Heinze instead of DSC Drumgoole per the cease-and-desist letter of March 21, 2026. | | |
| | | | | Parent A.B. requests that the LEA avoid gratuitous communications that do not serve any legitimate or legal purpose. | | |
| | | | | Parent A.B. requests that the LEA focus on providing legally valid responses to Parent A.B., such as issuing PWNs after rejecting IEP amendment requests from Parent A.B. as required by state and federal laws. | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 230. | 5/22/26 | Parent A.B. | Smart Watches - [E.B.-2] and [E.B.-1] (Retaliation Concerns) | Parent A.B. emails the teachers of [E.B.-2] and [E.B.-1] and apologizes for the lack of responses from Parent A.B. and Parent B.B. | Not applicable. | Not applicable. |
| | | | | **Parent A.B. explains to teachers that detention tomorrow morning will be the first exposure of [E.B.-2] to the high school and that [E.B.-2] will miss his Saturday morning session at [Private Speech and Social Skills Provider].** | | |
| | | | | Parent A.B. explains to teachers that annual review meetings for [E.B.-2] and [E.B.-1] have been postponed because the administration has not provided student records to Parents, other than prior defective distributions. | | |
| | | | | Parent A.B. informs teachers that Parent A.B. requested IEP amendments from DSS Heinze to insert this *Violations of Laws Ledger* into the IEPs of [E.B.-2] and [E.B.-1]. | | |
| | | | | Parent A.B. explains to teachers that Parent A.B. and Parent B.B. have been too busy communicating with administrators to respond to emails from teachers, as demonstrated by such document, which DSS Heinze wrote would be discussed at the annual review meetings. | | |
| 231. | 5/23/26 | Parent A.B. | Notice to Business Administrator | On Saturday, May 23, 2026 **at 8:25am**:<br><br>Parent A.B. provides notice to LFCMS Principal Diaz, All Board Members, Board Secretary and Business Administrator Rinderknecht, Taylor Law, and M&W, PC as follows:<br><br>    "*I have been supervising the 2-hour Saturday morning detention of [E.B.-2] myself because of the lack of any school personnel in the cafeteria or the front office. I checked multiple times.*<br><br>    *Is [E.B.-2] allowed to read a book? I told him it was okay but I* | The LEA retaliates against Parent A.B. by forcing him to personally serve detention for 2 hours on a Saturday morning at FLHS. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | *want to make sure we are abiding by any rules.*" | | |
| 232. | 5/23/26 | Parent A.B. | Notice to Business Administrator | On Saturday, May 23, 2026 **at 8:40am**:<br><br>Parent A.B. provides notice to LFCMS Principal Diaz, All Board Members, Board Secretary and Business Administrator Rinderknecht, Taylor Law, and M&W, PC that he is prepared to cooperate under duress and offer a solution as follows:<br><br>"*I have a solution. I saw a janitor walking around. I am sure he is a nice guy. Can that guy supervise?*<br><br>*I have some work and I did not bring my laptop. I would really like to leave. Please let me know.*" | The LEA retaliates against Parent A.B. by forcing him to personally serve detention for 2 hours on a Saturday morning at FLHS. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 233. | 5/23/26 | Parent A.B. | Notice to Business Administrator | On Saturday, May 23, 2026 **at 8:56am**:<br><br>Parent A.B. provides notice to DSS Heinze, LFCMS Principal Diaz, All Board Members, Board Secretary and Business Administrator Rinderknecht, Taylor Law, and M&W, PC that he is prepared to cooperate under duress and offer a solution as follows:<br><br>"*Can you please find out if [E.B.-2] is allowed to read a book and let me know? Also, can you please find a counselor to take over for me and sit in the cafeteria at some point this morning so that I do not have to unjustly serve the entire 2-hour Saturday detention with [E.B.-2]?*<br><br>*Since you are the designated contact person, please direct me to who I should contact for more information if you are unable to provide assistance.*" | The LEA retaliates against Parent A.B. by forcing him to personally serve detention for 2 hours on a Saturday morning at FLHS. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 234. | 5/23/26 | Parent A.B. | Notice to Business | On Saturday, May 23, 2026 **at 9:15am**: | The LEA retaliates against | Parent A.B. is forced to |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | Administrator | Parent A.B. provides notice to Superintendent Collazo, DSS Heinze, LFCMS Principal Diaz, All Board Members, Board Secretary and Business Administrator Rinderknecht, Taylor Law, and M&W, PC as follows:<br><br>*"The high school is empty other than a member of the custodial staff walking around. I am sitting here with [E.B.-2] in the cafeteria as instructed and am supervising his detention. I checked multiple times and there is nobody at the front office.*<br><br>*You ordered us to be here at 8:15am today or [E.B.-2] would face further discipline. I have been sitting quietly with him since 8:15am. I do not want to leave a high-anxiety kid alone in the cafeteria, especially when the rest of the school is entirely empty other than one member of the custodial staff walking around.*<br><br>*What is going on?"* | Parent A.B. by forcing him to personally serve detention for 2 hours on a Saturday morning at FLHS. | communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 235. | 5/23/26 | Parent A.B. | Notice to Business Administrator | On Saturday, May 23, 2026 **at 9:43am**:<br><br>Parent A.B. provides notice to Superintendent Collazo, DSC Drumgoole, DSS Heinze, LFCMS Principal Diaz, All Board Members, Board Secretary and Business Administrator Rinderknecht, Taylor Law, and M&W, PC as follows:<br><br>*"We cancelled [Private Speech and Social Skills Provider] yesterday because of this detention. I did not want to speed to Teaneck to get there by 10:30am, and I did not want [E.B.-2] to have the equivalent of a full school day on Saturday, risking school refusal toward [Private Speech and Social Skills Provider] or even the high school.* | The LEA retaliates against Parent A.B. by forcing him to personally serve detention for 2 hours on a Saturday morning at FLHS. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | *If you had informed me ahead of time, and perhaps you did with the 'I hope you enjoy the long weekend' note from Director Drumgoole, that I was going to have to sit here for 2 hours myself to supervise [E.B.-2] because there would not be a single guidance counselor in the building, I could have brought a book or brought my laptop to do some work. Alternatively, I could have asked to decrease the detention time to one hour to make a smoother transition to [Private Speech and Social Skills Provider]. I had already offered up Thursday or Friday as alternatives.*<br><br>*You have two law firms with approximately 70 lawyers at your disposal. Can you please deliver a formal explanation as to what is going on right now?"* | | |
| 236. | 5/23/26 | Superintendent Collazo | Notice to Business Administrator | On Saturday, May 23, 2026 **at 9:42am**:<br><br>Superintendent Collazo responds by offering to conditionally release Parent A.B. from detention:<br><br>"*Good morning Mr. [B.],*<br><br>***If a faculty member is not present***, *you and [E.B.-2] may leave and I will look into what occurred. It will be documented that [E.B.-2] served the detention.*<br><br>*Sincerely,*<br><br>*Diane Collazo*" | The LEA retaliates against Parent A.B. by forcing him to personally serve detention for 2 hours on a Saturday morning at FLHS. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 237. | 5/23/26 | Parent A.B. | Notice to Business Administrator | On Saturday, May 23, 2026 **at 9:51am**:<br><br>Parent A.B. provides notice to Superintendent Collazo, DSC Drumgoole, DSS Heinze, LFCMS Principal Diaz, All Board Members, | The LEA retaliates against Parent A.B. by forcing him to personally serve detention for 2 hours on a Saturday | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally |

114

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | Board Secretary and Business Administrator Rinderknecht, Taylor Law, and M&W, PC that he is prepared to cooperate under duress and offer a solution as follows:<br><br>"*I do not understand the email. **What does 'if a faculty member is not present' mean?** How am I supposed to confirm that a faculty member is not sitting in a random classroom on this floor or in a random classroom upstairs somewhere? This is a pretty big school. Am I supposed to check every room in the building to make sure that a faculty member is not present?*<br><br>*What is going on? [E.B.-2] and I are still here in the cafeteria. **Do you not have a mechanism to actually confirm if there are any faculty members in the building?***"* | morning at FLHS. | accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 238. | 5/23/26 | Parent A.B. | Notice to Business Administrator | On Saturday, May 23, 2026 **at 10:00am**:<br><br>Parent A.B. provides notice to Superintendent Collazo, DSC Drumgoole, DSS Heinze, LFCMS Principal Diaz, All Board Members, Board Secretary and Business Administrator Rinderknecht, Taylor Law, and M&W, PC as follows:<br><br>"*Dear Superintendent Collazo:*<br><br>*The duty and burden to confirm the presence or absence of faculty belongs to you. You cannot delegate that responsibility to me. My duty and burden is to bring [E.B.-2] here under protest and make sure he sits here from 8:15am until 10:15am to serve his unjust discipline to avoid giving you further excuses to impose discipline on him per your order.*<br><br>***Can you please pick up the phone and find out if there are any faculty unbeknownst to me somewhere in this large*** | The LEA retaliates against Parent A.B. by forcing him to personally serve detention for 2 hours on a Saturday morning at FLHS. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | *building?*" | | |
| 239. | 5/23/26 | Parent A.B. | Notice to Business Administrator | On Saturday, May 23, 2026 **at 10:09am**:<br><br>Parent A.B. provides notice to Superintendent Collazo, DSC Drumgoole, DSS Heinze, LFCMS Principal Diaz, All Board Members, Board Secretary and Business Administrator Rinderknecht, Taylor Law, and M&W, PC as follows:<br><br>*"A couple of student baseball players stopped by the cafeteria and we had a nice chat, I asked them to snap a photo. Please see attached.*<br><br>*Can you please confirm the conditionality in the email from the superintendent so that we can leave?"* | The LEA retaliates against Parent A.B. by forcing him to personally serve detention for 2 hours on a Saturday morning at FLHS. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 240. | 5/23/26 | Parent A.B. | Notice to Business Administrator | On Saturday, May 23, 2026 **at 10:16am**:<br><br>Parent A.B. provides notice to Superintendent Collazo, DSC Drumgoole, DSS Heinze, LFCMS Principal Diaz, All Board Members, Board Secretary and Business Administrator Rinderknecht, Taylor Law, and M&W, PC as follows:<br><br>*"As you can see in the attached photo, the time is 10:15am. We will be leaving now and I expect the discipline that was imposed to be considered served, regardless of whether the administrators fabricate a faculty member out of thin air."* | The LEA retaliates against Parent A.B. by forcing him to personally serve detention for 2 hours on a Saturday morning at FLHS. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 241. | 5/23/26 | Superintendent Collazo | Notice to Business Administrator | On Saturday, May 23, 2026 **at 10:29am**:<br><br>Superintendent Collazo responds by alleging that LEA was in a state of "*confusion*" and "*did not understand*" basic communications **despite being advised by M&W, PC and Taylor Law, with a grand total of** | The LEA retaliates against Parent A.B. by forcing him to personally serve detention for 2 hours on a Saturday morning at FLHS. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | **69 lawyers**:<br><br>"*Good morning Mr. [B.],*<br><br>*Please accept my apology for the confusion regarding the Saturday detention. There appeared to be uncertainty as to whether [E.B.-2] would be attending this morning. Your initial communication indicated that [E.B.-2] would not be attending. However, there were subsequently multiple emails sent by you to me, the Board, and Board Counsel, Lester Taylor. I acknowledge that in your email to Mr. Taylor, you stated in bullet point number three that if you did not receive a response from the Board, [E.B.-2] would attend Saturday detention on May 23.*<br><br>*Ultimately, we missed that statement, as it was included within communication directed to Board Counsel. As a result, we did not understand that [E.B.-2] would, in fact, be attending detention this morning. Given that misunderstanding, a staff member was not scheduled to supervise the detention session.*<br><br>*Sincerely,*<br><br>*Diane Collazo*" | | obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 242. | 5/23/26 | Parent A.B. | Notice to Business Administrator | On Saturday, May 23, 2026 **at 10:43am**:<br><br>Parent A.B. provides notice to Superintendent Collazo, DSC Drumgoole, DSS Heinze, LFCMS Principal Diaz, All Board Members, Board Secretary and Business Administrator Rinderknecht, Taylor Law, and M&W, PC as follows:<br><br>"*Dear Board Secretary and Business Administrator:* | The LEA retaliates against Parent A.B. by forcing him to personally serve detention for 2 hours on a Saturday morning at FLHS. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

117

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | *Please ensure that the entirety of the communication logs and metadata in your systems are preserved. I am reasonably certain that the email below from Superintendent Collazo will be proven to be demonstrably false.*<br><br>*Dear Superintendent Collazo:*<br><br>*A parent should not have to serve detention for 2 hours along with his child on a Saturday morning.*<br><br>*My email yesterday on **Friday, May 22, 2026** to the board secretary, the entire board, and all of their lawyers stated: **'Because the Board of Education declined to respond, the order of the Superintendent will be effectuated tomorrow morning under protest.'** …*<br><br>*Next time you are going to punish a parent for reaching out to the NJDOE OFAC Investigations Unit, please do so less obviously."* | | |
| 243. | 5/23/26 | Parent A.B. | Smart Watches - [E.B.-2] and [E.B.-1] (Retaliation Concerns) | Parent A.B. informs the teachers of [E.B.-2] and [E.B.-1] that Parent A.B. personally served detention together with [E.B.-2] this morning because the high school building did not have any other adults. | Not applicable. | Not applicable. |
| | | | | Parent A.B. informs the teachers that Parent A.B. wants to add the themes of student safety and adult supervision to the agenda of the annual review meetings, in addition to the other items previously communicated to teachers in the chart, and that Parent A.B. would greatly appreciate their perspectives on the topic. | | |
| 244. | 5/23/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. updates the NJDOE OFAC Investigations Unit of the latest developments with respect to his FERPA data breach complaint, and copies Board Secretary and Business Administrator Rinderknecht, All Board Members, Superintendent Collazo, DSS Heinze, DSC | The LEA retaliates against Parent A.B. by forcing him to personally serve detention for 2 hours on a Saturday | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | Drumgoole, LFCMS Principal Diaz, FLHS Principal Glynn, Taylor Law, and M&W, PC. | morning at FLHS. | accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. requests that the NJDOE OFAC Investigations Unit inform the LEA that LEAs in New Jersey are not procedurally authorized to impose detention on adult parents of students. | | |
| | | | | Parent A.B. requests that the NJDOE OFAC Investigations Unit confirm to the LEA that once a parent gives a government agency notice of a mass FERPA data breach along with related administrative fraud, such claims cannot be rescinded by parent despite any unlawful intimidation. | | |
| 245. | 5/23/26 | Parent A.B. | Notice to Business Administrator | Parent A.B. notifies Superintendent Collazo that she is intentionally and materially misrepresenting facts, and Parent A.B. copies Board Secretary and Business Administrator Rinderknecht, All Board Members, DSS Heinze, DSC Drumgoole, LFCMS Principal Diaz, FLHS Principal Glynn, Taylor Law, and M&W, PC. | The LEA retaliates against Parent A.B. by forcing him to personally serve detention for 2 hours on a Saturday morning at FLHS. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. reminds the LEA that the only time Parent A.B. wrote that he would not bring [E.B.-2] to detention on Saturday was the following note to LFCMS Principal Diaz on **May 13, 2026**:<br><br>"*The disabled student will not be attending Saturday detention until we hear back from an authorized representative of the highest authority in the LEA regarding whether they find the process by which these events unfolded to be appropriate.*" | | |
| | | | | Parent A.B. reminds the LEA that Superintendent Collazo responded to Parent A.B. with the following note on **May 15, 2026**:<br><br>"*I am responding to your email pursuant to your request that the 'authorized representative of the highest authority in the LEA' provide a response.* | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | ...<br><br>*Accordingly, the Saturday detention assigned to your child will remain scheduled as issued. Your child may attend the assigned detention either on Saturday, May 16, 2026, or Saturday, May 23, 2026. Please note that failure to attend an assigned administrative detention may constitute an additional disciplinary infraction and may result in progressive disciplinary consequences. While parents retain the right to formally appeal disciplinary decisions through district procedures, the filing of an appeal does not delay, suspend, or negate the requirement that the assigned consequence be completed pending administrative review.*" | | |
| | | | | Parent A.B. reminds the LEA that Parent A.B. sent at least **12 emails** to the LEA **between May 15, 2026 and May 22, 2026** confirming that he will bring [E.B.-2] to detention on Saturday, May 23, 2026, and that diagnostic logs of communications within the LEA immediately following such emails will likely reveal an abundance of contact between senior administrators, board members, and their attorneys. | | |
| 246. | 5/23/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. informs [Private Speech and Social Skills Provider] that [E.B.-2] was visibly upset during the long detention and needs support at his next session because the long detention was his first exposure to the high school. | The LEA retaliates against Parent A.B. by forcing him to personally serve detention for 2 hours on a Saturday morning at FLHS. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. copies DSS Heinze and the speech therapist in the LEA who is consulting with [Private Speech and Social Skills Provider]. | | |
| 247. | 5/24/26 | Parent A.B. | NJDOE OFAC: Imposing Detention | Parent A.B. notifies Superintendent Collazo of the following safety concerns that need to be discussed at annual review meetings, and | The LEA: (i) does not correct the fraudulent public | Parent A.B. is forced to communicate with the LEA |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | on Parent | copies all of the in-district service providers, case managers, teachers, and principals who interact with [E.B.-2] and [E.B.-1] (collectively, the "**LEA Safety Working Group**"), DSS Heinze, DSC Drumgoole, Board Secretary and Business Administrator Rinderknecht, All Board Members, Taylor Law, and M&W, PC:<br>● What would have happened if Parent A.B. left his disabled child alone and departed the building on Saturday morning, reasonably assuming that a teacher or counselor in charge of detention was running late and would arrive shortly?<br>● Who would have been responsible if the volunteer coach who stopped by the cafeteria or the two student baseball players who stopped by the cafeteria or the custodian who was walking around the hallways had severely and physically harmed [E.B.-2]?<br>● Superintendent Collazo needs to clarify her message because she is creating an extremely dangerous environment at these schools for disabled students.<br>● Who should have Parent A.B. notified regarding bringing his disabled child in for detention on Saturday morning considering that 36 representatives of the LEA had actual knowledge prior to Saturday morning that [E.B.-2] would be attending detention?<br>● The representatives of the LEA that had actual knowledge prior to Saturday morning that [E.B.-2] would be attending detention include 14 teachers, 2 case managers, 2 principals, DSC Drumgoole, DSS Heinze, Board Secretary and Business Administrator Rinderknecht, Superintendent Collazo, All Board Members, Taylor Law, and M&W, PC. | Notification Letter relating to mass FERPA and IDEA violations; (ii) intentionally breaches mandatory deadlines under state law (3/26/26) and federal law (4/30/26) to provide student records to Parents; (iii) delays annual review meetings in violation of state and federal laws; (iv) denies PWNs; and (v) retaliates against Parent A.B. by forcing him to personally serve detention for 2 hours on a Saturday morning at FLHS. | under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 248. | 5/25/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. distributes an updated version of this *Violations of Laws Ledger* to the LEA, emphasizing the denial of PWNs in response to IEP amendment requests, and copies the LEA Safety Working Group, DSS Heinze, DSC Drumgoole, Superintendent Collazo, Board Secretary and Business Administrator Rinderknecht, All Board | The LEA retaliates on 5/29/26 by dictating unilateral annual review dates and times to Parents while continuing to withhold | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | Members, Taylor Law, and M&W, PC. | student records in violation of state and federal laws. | obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 249. | 5/26/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | In response to a note from a special education teacher, Parent A.B. reminds the LEA that IEPs should be implemented at school instead of at home considering the cease-and-desists against Parents, and copies the LEA Safety Working Group, DSS Heinze, DSC Drumgoole, Superintendent Collazo, Board Secretary and Business Administrator Rinderknecht, All Board Members, Taylor Law, and M&W, PC. | The LEA retaliates on 5/29/26 by dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 250. | 5/27/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. distributes an updated version of this *Violations of Laws Ledger* to Superintendent Collazo, incorporating cleanup comments to make the definitions more consistent, and **requests an update on the status of violations of laws**. | The LEA retaliates on 5/29/26 by dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. copies the LEA Safety Working Group, DSS Heinze, DSC Drumgoole, Board Secretary and Business Administrator Rinderknecht, All Board Members, Taylor Law, and M&W, PC. | | |
| 251. | 5/27/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. distributes an updated version of this *Violations of Laws Ledger* to the LEA, incorporating the detention photo of father and son from Saturday, May 23, 2026 into the Notes section, and copies the LEA Safety Working Group, DSS Heinze, DSC Drumgoole, Superintendent Collazo, Board Secretary and Business Administrator Rinderknecht, All Board Members, Taylor Law, and M&W, PC. | The LEA retaliates on 5/29/26 by dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 252. | 5/29/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. inquires if the LEA Safety Working Group reviewed why the classmate of [E.B.-2] roughly grabbed the full face of the deskmate of [E.B.-2], and Parent A.B. expresses his surprise that seating arrangements between the three students have still not been altered by the LEA. | The LEA retaliates later in the day by dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. informs the LEA that [E.B.-2] said he feels really bad because he does not believe he can help his deskmate. | | |
| | | | | Parent A.B. copies the LEA Safety Working Group, DSS Heinze, DSC Drumgoole, Superintendent Collazo, Board Secretary and Business Administrator Rinderknecht, All Board Members, Taylor Law, and M&W, PC. | | |
| 253. | 5/29/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. informs the LEA Safety Working Group that the IEP of [E.B.-2] needs to be implemented with respect to hearing-movement breaks:<br><br>"*[E.B.-2] has been seated near a student he has been complaining about since last year. The student is bothering the deskmate of [E.B.-2], which is triggering [E.B.-2]. Please remind [E.B.-2] that he can and should take hearing breaks. I am worried that without an outlet, such as taking a break by walking around the hallways or gathering evidence as a detective, [E.B.-2] is going to start engaging in some of the more extreme maladaptive dysregulatory behaviors in his neuropsychological evaluation that we have not seen this academic year (knock on wood), but have seen in previous years. Thanks! [Parent A.B.]*" | The LEA retaliates later in the day by dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 254. | 5/29/26 | Superintendent Collazo | NJDOE OFAC: Imposing Detention on Parent | Superintendent Collazo informs Parent A.B. that she is confused, and copies both M&W, PC and Taylor Law:<br><br>"*Please specifically identify the open items for which you are* | The LEA retaliates later in the day by dictating unilateral annual review dates and times to Parents while | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | *requesting an update or response.*" | continuing to withhold student records in violation of state and federal laws. | accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 255. | 5/29/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. informs Board Secretary Rinderknecht and All Board Members that the confusion of Superintendent Collazo is implausible because she is being advised by a large number of attorneys, and Parent A.B. copies the LEA Safety Working Group, DSS Heinze, DSC Drumgoole, Superintendent Collazo, M&W, PC and Taylor Law.<br><br>Parent A.B. requests that Board Secretary Rinderknecht and All Board Members review this ***Violations of Laws Ledger*** as a tool to identify and correct violations of laws, as Parent A.B. previously requested under emails with the subject lines "Notice: Violations of Laws Chart Updated for Board Review," "Request for Conflict Counsel," and "Notice to Business Administrator." | The LEA retaliates later in the day by dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 256. | 5/29/26 | [Case Manager 2] | [E.B.-2] | The LEA retaliates by imposing a unilateral annual review meeting date and time on Parents without student records, in violation of state and federal laws:<br><br>"*Good afternoon Mr. and Mrs. [B.],*<br><br>*The annual review has been scheduled for June 16, 11:00 AM. You should be receiving the notice through Frontline shortly, if you have not already.*<br><br>*Reina Sandouk-Proto has been invited as the anticipated high school case manager.*" | The LEA retaliates by dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 257. | 5/29/26 | [Case Manager 2] | Frontline Education | The LEA retaliates by imposing a unilateral annual review meeting date and time on Parents without student records, in violation of state | The LEA retaliates by dictating unilateral annual | Parent A.B. is forced to communicate with the LEA |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | and federal laws. | review dates and times to Parents while continuing to withhold student records in violation of state and federal laws. | under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 258. | 5/29/26 | [Case Manager 1] | IEP Meeting | The LEA retaliates by imposing a unilateral annual review meeting date and time on Parents without student records, in violation of state and federal laws:<br><br>"*Good afternoon,*<br><br>*[E.B.-1]'s IEP meeting has been schedule. You will receive a copy of the invitation through the Frontline Education collaboration portal.*" | The LEA retaliates by dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 259. | 5/29/26 | [Case Manager 1] | Frontline Education | The LEA retaliates by imposing a unilateral annual review meeting date and time on Parents without student records, in violation of state and federal laws. | The LEA retaliates by dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 260. | 5/29/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. asks Board Secretary Rinderknecht and All Board Members the following questions, with the LEA Safety Working Group, DSS Heinze, DSC Drumgoole, Superintendent Collazo, M&W, PC and Taylor Law copied:<br>1. Since Parents were not asked for dates and times regarding their availability, does the LEA plan to have the annual review | The LEA retaliates by dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of obstructionism because the |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | meetings without Parents?<br>2. Where are the student records of [E.B.-1] and [E.B.-2]?<br>3. How does the LEA plan on having Parents participate while Parents are under three cease-and-desists? | laws. | highest authority in the LEA issued three cease-and-desists against Parents. |
| 261. | 5/29/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. informs Board Secretary Rinderknecht and All Board Members that the actions of the LEA "**appear retaliatory**."<br><br>Parent A.B. copies the NJDOE OFAC Investigations Unit, the LEA Safety Working Group, Superintendent Collazo, DSC Drumgoole, DSS Heinze, M&W, PC and Taylor Law. | The LEA retaliates by dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 262. | 5/29/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. informs Superintendent Collazo, Board Secretary Rinderknecht, and All Board Members of the following, with the NJDOE OFAC Investigations Unit, the LEA Safety Working Group, DSS Heinze, DSC Drumgoole, M&W, PC and Taylor Law copied:<br>1. Under 34 CFR § 300.613(a), the LEA is required to comply with a request to inspect records "without unnecessary delay and before any meeting regarding an IEP."<br>2. By withholding these student records, the LEA is impeding the right of Parents to meaningfully participate in the IEP process as guaranteed by 34 CFR § 300.322.<br>3. The LEA has been and continues to be in violation of the 10-day record production deadline under N.J.A.C. 6A:32-7.5.<br>4. Parents requested such records months ago on March 16, 2026. The LEA has been in noncompliance as of March 26, 2026, the deadline mandated by state law.<br>5. N.J.A.C. 6A:14-2.9 reiterates that Parents must be permitted to review these records "without unnecessary delay and before any meeting regarding the IEP."<br>6. **34 C.F.R. § 300.322 requires schools to schedule annual** | The LEA retaliates by dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | review meetings at a time and place that is <u>mutually agreeable</u> to Parents and the school.<br>7. **How did the LEA conclude that the appropriate response to this** *Violations of Laws Ledger* **was scheduling unilateral annual review meetings without Parents and without the provision of student records to Parents?** | | |
| 263. | 5/29/26 | Occupational Therapist [Occupational Therapist] | NJDOE OFAC: Imposing Detention on Parent | Occupational Therapist [Occupational Therapist] responds to Parent A.B. by stating that recommendations regarding hearing and movement breaks "**will be addressed and incorporated into the IEP.**" | The LEA retaliates by dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 264. | 5/29/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. responds to Occupational Therapist [Occupational Therapist] as follows:<br><br>"*The hearing and movement breaks were discussed at the last annual review meeting and **are in the IEP already** (see page 26 'Provide opportunity for movement breaks').*"<br><br>Parent A.B. responds to Superintendent Collazo, Board Secretary Rinderknecht, and All Board Members as follows, with the NJDOE OFAC Investigations Unit, the LEA Safety Working Group, DSS Heinze, DSC Drumgoole, M&W, PC and Taylor Law copied:<br><br>"*Can you please grab a lawyer from your vast collection of lawyers and ask for a legal justification for your actions today? You are violating multiple state and federal laws approximately a week after engaging in **witness intimidation** and **retaliatory child endangerment**. When do you plan on providing student* | The LEA retaliates by dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | *records? How large are the files going to be? Will two weeks be enough for parents to review them? Do you need dates and times of our availability for the month of June? What is going on?"* | | |
| 265. | 5/29/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. requests that Board Secretary Rinderknecht and All Board Members review this ***Violations of Laws Ledger*** and copies the NJDOE OFAC Investigations Unit, the LEA Safety Working Group, Superintendent Collazo, DSC Drumgoole, DSS Heinze, M&W, PC and Taylor Law. | The LEA retaliates by dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 266. | 5/31/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. informs the LEA Safety Working Group that [E.B.-2] is complaining of sexually coercive behavior in the classroom between his classmate and deskmate, and that [E.B.-2] may need the hearing and movement breaks referenced on page 26 of his IEP. | The LEA retaliates by dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. assures the LEA Safety Working Group that [E.B.-2] did not attempt to audio or video record "evidence," and that the LEA should not use his complaint as an excuse to give [E.B.-2] detention. | | |
| | | | | Parent A.B. requests evaluations for the classmate in question for [identified concerns] considering the specific behaviors [E.B.-2] has been describing in detail as "bullying" since last year that have been triggering [E.B.-2] in the classroom. | | |
| | | | | Parent A.B. copies the NJDOE OFAC Investigations Unit, All Board Members, Board Secretary Rinderknecht, Superintendent Collazo, DSC Drumgoole, DSS Heinze, M&W, PC and Taylor Law. | | |
| 267. | 6/1/26 | District | Public Business | The LEA sends Parent A.B. and Parent B.B. notice that the Public | Not applicable | Not applicable |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | Technology Coordinator Jason Ruggiero | Meeting of 06-01-26 | Business Meeting of the FLBOE will be held Monday, June 1, 2026 at 6:30 p.m. and immediately go into Executive Session. | | |
| | | | | The notice includes a resolution for the Board to enter a new contract with Taylor Law for the provision of legal services. | | |
| 268. | 6/1/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. informs Board Secretary Rinderknecht and All Board Members of the following, with the NJDOE OFAC Investigations Unit, the LEA Safety Working Group, Superintendent Collazo, DSC Drumgoole, DSS Heinze, M&W, PC and Taylor Law copied:<br>1. By hiring Taylor Law for another year, the Board will be constructively ratifying the prior work of Taylor Law as partial architects of this *Violations of Laws Ledger* and the April 24 false public statement regarding mass FERPA and IDEA violations.<br>2. Previous versions of the aforementioned ledger were distributed to Board Secretary Rinderknecht and All Board Members in email chains with the subject lines "Notice: Violations of Laws Chart Updated for Board Review," "Request for Conflict Counsel," "Notice to Business Administrator," and "NJDOE OFAC: Imposing Detention on Parent" between Friday, May 15, 2026 and June 1, 2026.<br>3. The LEA is continuing to violate 34 CFR § 300.613(a), N.J.A.C. 6A:32-7.5, N.J.A.C. 6A:14-2.9, and 34 C.F.R. § 300.322(a) because the LEA was required to provide the student records of [E.B.-2] and [E.B.-1] by March 26, 2026 under state law and April 30, 2026 under federal law.<br>4. The LEA should schedule annual review meetings at mutually agreed on dates and times by retracting the unlawful notices and by asking Parents for their availability this month, which Parents would be happy to provide. | The LEA retaliates by: (i) dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws; and (ii) bypassing Parents entirely, in violation of the Rules of Professional Conduct and the *pro se* status of Parents, to route the Fee-Padding and Ethical Breach Solicitation Letter directly to their federal counsel on 6/3/26. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 269. | 6/2/26 | Parent A.B. | NJDOE OFAC: Imposing Detention | Parent A.B. informs members of the LEA Safety Working Group that they will be removed from future email distributions, and copies the | The LEA retaliates by: (i) dictating unilateral annual | Parent A.B. is forced to communicate with the LEA |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | on Parent | NJDOE OFAC Investigations Unit, All Board Members, Board Secretary Rinderknecht, Superintendent Collazo, DSC Drumgoole, DSS Heinze, M&W, PC and Taylor Law. | review dates and times to Parents while continuing to withhold student records in violation of state and federal laws; and (ii) bypassing Parents entirely, in violation of the Rules of Professional Conduct and the *pro se* status of Parents, to route the Fee-Padding and Ethical Breach Solicitation Letter directly to their federal counsel on 6/3/26. | under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. notes that the LEA Safety Working Group was copied on all emails between May 24, 2026 and June 2, 2026 and should have a firm grasp of the safety concerns of Parent A.B. at this point in time, regardless of Superintendent Collazo invoking "confusion" to justify child endangerment on May 23, 2026. | | |
| 270. | 6/2/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to DSS Heinze under the March 21 Cease & Desist Letter, and copies Board Secretary Rinderknecht, All Board Members, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit. | The LEA retaliates by: (i) dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws; and (ii) bypassing Parents entirely, in violation of the Rules of Professional Conduct and the *pro se* status of Parents, to route the Fee-Padding and Ethical Breach Solicitation Letter directly to their federal counsel on 6/3/26. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. notes that the LEA is continuing to violate **34 CFR § 300.613(a)**, **N.J.A.C. 6A:32-7.5**, **N.J.A.C. 6A:14-2.9**, and **34 C.F.R. § 300.322(a)**. | | |
| | | | | Parent A.B. poses the following questions to the LEA:<br>1. Is the LEA available for annual review meetings on<br>    a. June 25, 2026 between 1:00pm and 3:00pm,<br>    b. June 26, 2026 between 1:00pm and 3:00pm, and/or<br>    c. June 30, 2026 between 1:00pm and 3:00pm?<br>2. Will the LEA provide the student records 14 calendar days before such dates?<br>3. Will the board members keep the cease-and-desists in place, which interfere with parental participation at such meetings? | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | Parent A.B. notes that refusing a request to reschedule annual review meetings is a separate act that violates the law, meaning even if the June 10 at 1:00pm notice for [E.B.-1] and the June 16 at 11:00am notice for [E.B.-2] had memorialized mutually agreeable dates and times instead of unlawfully ambushing Parents, the LEA would still have an obligation to reschedule such dates and times upon a subsequent request from Parents. | | |
| | | | | Parent A.B. notes that Parents are the only parties abiding by the retaliatory and unlawful cease-and-desists while Superintendent Collazo, Board Secretary Rinderknecht, Director Drumgoole, Principal Diaz, [Case Manager 2], [Case Manager 1], and their lawyers at M&W, PC regularly email Parents. | | |
| | | | | Parent A.B. notes that remaining unresponsive and uncooperative while being advised by two law firms with 69 lawyers means the LEA is proactively and purposefully manufacturing IDEA and IEP crises. | | |
| 271. | 6/3/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to DSS Heinze under the March 21 Cease & Desist Letter, and copies Board Secretary Rinderknecht, All Board Members, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit. | The LEA retaliates by: (i) dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws; and (ii) bypassing Parents entirely, in violation of the Rules of Professional Conduct and the *pro se* status of Parents, to route the Fee-Padding and Ethical Breach Solicitation Letter directly to their federal counsel later in the day. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. reminds DSS Heinze that she is legally required to respond to the communications from Parent A.B., and that she should comply with the law instead of withholding behavior charts and scheduling annual review meetings without Parents. | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 272. | 6/3/26 | M&W, PC | RE: Discovery planning: A.B. and B.B. o/b/o B.B.-1 and B. v. Fort Lee BOE 97566 | M&W, PC confirms that the LEA will punish Parents financially by communicating solely with the federal counsel of Parents regarding student records, which M&W, PC had explicitly threatened on 5/20/26 after Parent A.B. noted the hypocrisy of M&W, PC sending student records directly to Parent A.B. only on the condition that Parent A.B. turn a blind eye to mass FERPA and IDEA violations. | The LEA retaliates by: (i) dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws; and (ii) bypassing Parents entirely, in violation of the Rules of Professional Conduct and the *pro se* status of Parents, to route the Fee-Padding and Ethical Breach Solicitation Letter directly to their federal counsel later in the day. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desist against Parents. |
| 273. | 6/3/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to M&W, PC and Taylor Law, copying DSS Heinze under the March 21 Cease & Desist Letter, Board Secretary Rinderknecht, All Board Members,  and the NJDOE OFAC Investigations Unit.<br><br>Parent A.B. notes the email from M&W, PC, stating that student records will be produced solely as part of discovery in the federal case, which has not even started yet, and asks the following questions:<br>1. Why is the LEA inflating the legal fees of Parents and manufacturing IDEA crises?<br>2. Why is the LEA retroactively fabricating facts to create the illusion that the April 14 disclosure was part of discovery in the federal case?<br>3. How is the LEA planning on making the inconvenient timeline disappear considering that discovery in the federal case has not even started as of June 3, 2026? | The LEA retaliates by: (i) dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws; and (ii) bypassing Parents entirely, in violation of the Rules of Professional Conduct and the *pro se* status of Parents, to route the Fee-Padding and Ethical Breach Solicitation Letter directly to their federal counsel later in the day. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | 4. Did each of M&W, PC and Taylor Law draft an internal "memo to file" regarding the events from April 14 to 24? | | |
| 274. | 6/3/26 | M&W, PC | A.B. AND B.B. O/B/O E.B.-1 AND E.B.-2 VS. FORT LEE BOARD OF EDUCATION; File no: 97566 ELH | M&W, PC issues the Fee-Padding and Ethical Breach Solicitation Letter to Rue Law, the law firm retained by Parents strictly for the federal case filed on February 2, 2026 in the District of New Jersey.<br><br>M&W, PC demands that Rue Law intercept, filter, and manage the independent, *pro se* communications of Parents because Parents are allegedly "harassing" the LEA. M&W, PC issues this demand despite receiving 11 separate written notices from Parents between February 18, 2026 and May 21, 2026 confirming the self-represented status of Parents on all student records requests, ad hoc IEP meetings, annual review meetings, and IDEA matters.<br><br>1. <u>Prior Notice of Pro Se Status</u>:<br><br>Between February 18, 2026, and May 21, 2026, Parents provided 11 separate written notices to the LEA and M&W, PC explicitly stating that Parents are proceeding *pro se* on all administrative IDEA matters, including student records requests, ad hoc IEP meetings, and annual review meetings. Rue Law is retained strictly for the federal civil action filed on February 2, 2026.<br><br>2. <u>The Solicitation Request to Rue Law</u>:<br><br>Following the 11 prior notices, M&W, PC issued a letter to Rue Law requesting that Rue Law "filter" the independent, *pro se* communications of Parents and "**bring to our attention any concerns**" because Parents are allegedly "harassing" the LEA.<br><br>3. <u>Implicated Rules of Professional Conduct</u>:<br><br>*NJ RPC 4.3 (Dealing with Unrepresented Person)*: M&W, PC directed | The LEA retaliates by: (i) dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws; and (ii) bypassing Parents entirely, in violation of the Rules of Professional Conduct and the *pro se* status of Parents, to route the Fee-Padding and Ethical Breach Solicitation Letter directly to their federal counsel. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

133

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | correspondence regarding *pro se* matters to an attorney who does not represent Parents in those matters, rather than communicating directly with the unrepresented Parents.<br><br>*NJ RPC 1.2(c) (Scope of Representation)*: M&W, PC formally solicited Rue Law to perform administrative monitoring tasks outside the agreed-upon, limited scope of the representation between Parents and Rue Law and attempted to pressure Rue Law by claiming that Parents are "harassing" the LEA.<br><br>*NJ RPC 1.5 (Reasonableness of Fees)*: M&W, PC generated billable correspondence to a third-party attorney regarding administrative matters that do not fall under the representation or legal purview of that attorney. | | |
| | | | | 4. <u>Concurrent Administrative Status</u>:<br><br>At the time M&W, PC routed this correspondence to Rue Law, **the LEA had not fulfilled the pending student records requests of Parents**, breaching the 10-day N.J.A.C. 6A:14-2.9(b) deadline on March 26, 2026 and the 45-day 34 CFR § 99.10 deadline on April 30, 2026, **and had not confirmed mutually agreeable annual review meetings**. | | |
| 275. | 6/3/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to Board Secretary Rinderknecht and All Board Members, and copying DSS Heinze under the March 21 Cease & Desist Letter, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit. | The LEA retaliates by: (i) dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws; and (ii) bypassing Parents entirely, in violation of the Rules of Professional | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. reminds the LEA that Parents notified the LEA **11 times that Rue Law Group has not been retained by Parents** to represent Parents with respect to student records requests, annual review meetings, and IDEA matters: | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | 1. February 18, 2026<br>2. February 27, 2026<br>3. March 13, 2026 (twice)<br>4. March 14, 2026<br>5. March 18, 2026<br>6. March 20, 2026<br>7. April 15, 2026 (twice)<br>8. May 20, 2026<br>9. May 21, 2026<br><br>Parent A.B. notes that the LEA is disregarding 11 notices between February 18, 2026 and May 21, 2026 that Parents are proceeding *pro se* on student records requests, annual review meetings, and IDEA matters because the LEA is manufacturing IDEA disputes to inflate the legal costs of Parents. | Conduct and the *pro se* status of Parents, to route the Fee-Padding and Ethical Breach Solicitation Letter directly to their federal counsel. | |
| 276. | 6/3/26 | DSS Heinze | Response to your Questions | DSS Heinze responds to Parent A.B. by writing:<br>1. "*The District is not available to conduct annual review meetings on June 25, June 26, or June 30, 2026, as school will not be in session and the required team members are not available.*"<br>2. All requested student records were provided by M&W, PC on March 18, 2026 with the exception of "*voluminous emails*," which should be provided to you "*within two weeks*."<br>3. The District will proceed with the unilateral annual review meeting dates of June 10, 2026 at 1:00pm for [E.B.-1] and June 16, 2026 at 11:00am for [E.B.-2]. | The LEA retaliates by: (i) dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws; and (ii) bypassing Parents entirely, in violation of the Rules of Professional Conduct and the *pro se* status of Parents, to route the Fee-Padding and Ethical Breach Solicitation Letter directly to their federal counsel. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 277. | 6/3/26 | Parent A.B. | NJDOE OFAC: Imposing Detention | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to DSS Heinze under | The LEA retaliates by: (i) dictating unilateral annual | Parent A.B. is forced to communicate with the LEA |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | on Parent | the March 21 Cease & Desist Letter, and copies Board Secretary Rinderknecht, All Board Members, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit. | review dates and times to Parents while continuing to withhold student records in violation of state and federal laws; and (ii) bypassing Parents entirely, in violation of the Rules of Professional Conduct and the *pro se* status of Parents, to route the Fee-Padding and Ethical Breach Solicitation Letter directly to their federal counsel. | under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. responds to the LEA by providing the LEA with further dates Parents are available for annual review meetings and requesting clarity on the position of the LEA on student records: | | |
| | | | | 1. <u>Please set mutually agreed upon times and dates</u>.<br><br>Parent A.B. acknowledges that at the last annual review meeting, DSS Heinze asked Parents to pay the salaries of special education teachers in the District in order to keep [E.B.-2] and [E.B.-1] in their local schools.<br><br>Parent A.B. comforts DSS Heinze by clarifying that Parents are happy to pay the hourly rate of teachers on June 25, June 26, or June 30, 2026 between 1:00pm and 3:00pm to ensure their attendance.<br><br>Alternatively, Parent A.B. requests June 22 or June 24, 2026 between 1:00pm and 3:00pm. | | |
| | | | | 2. <u>Where are the behavior charts, incident reports, written statements, raw data, and logs?</u><br><br>Parent A.B. informs DSS Heinze that he will create an index of all of the files and documents he received from M&W, PC on March 18, 2026 when he gets home in order to understand if the LEA and their lawyers are acting in bad faith and lying. | | |
| 278. | 6/3/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. notifies the NJDOE OFAC Investigations Unit and Business Administrator Rinderknecht that the LEA is manufacturing a fabricated paper trail by repeatedly lying in writing in order to falsely discredit Parent A.B., and Parent A.B. copies All Board Members, | The LEA retaliates by: (i) dictating unilateral annual review dates and times to Parents while continuing to | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | DSS Heinze under the March 21 Cease & Desist Letter, M&W, PC and Taylor Law.<br><br>A. <u>Missing Student Records for [E.B.-2] and [E.B.-1]</u><br><br>Parent A.B. identifies the following documents as missing from the March 18, 2026 student records production of M&W, PC:<br>  1. Behavior chart and notes of [E.B.-2];<br>  2. Behavior chart and notes of [E.B.-1] after December 5, 2025;<br>  3. Incident reports of disciplinary matters relating to [E.B.-2] and [E.B.-1];<br>  4. Written statements relating to [E.B.-2] and [E.B.-1] provided to the district (e.g. handwritten statements that LFCMS administrators made [E.B.-1] write some years ago);<br>  5. Raw data, teacher data sheets, work samples, behavior tracking logs, prompting logs, and accommodation logs relating to [E.B.-2] and [E.B.-1]; and<br>  6. Internal emails relating to [E.B.-2] and [E.B.-1].<br><br>Per N.J.A.C. 6A:32-2.1, internal staff emails concerning my child constitute student records because they were maintained for second-party review, meaning they are not exempt "private memory aids." As established in L.R. v. Camden City Pub. Sch. Dist., 238 N.J. 547 (2019), New Jersey law provides distinct, robust parental access rights. Pursuant to N.J.A.C. 6A:32-7.5, my parental right to access these records is guaranteed, subject only to mandatory redactions required to protect other students' privacy under N.J.A.C. 6A:32-7.1(f).<br><br>B. <u>Index of Student Records for [E.B.-2]</u><br><br>Parent A.B. indexes the zip file provided by M&W, PC on March 18, 2026 with respect to [E.B.-2] only, and notes that Parents already possessed all of these records except for the last item:<br>  1. Legal documents relating to a change in middle name | withhold student records in violation of state and federal laws; and (ii) bypassing Parents entirely, in violation of the Rules of Professional Conduct and the *pro se* status of Parents, to route the Fee-Padding and Ethical Breach Solicitation Letter directly to their federal counsel. | accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | (**Parents provided to the District**) 2. Occupational Therapy Evaluation of Rose Santos-Martinez dated 07/09/2024 (**Parents provided to the District**) 3. Accommodation Letter from [Developmental Pediatrician] dated 6/19/24 (**Parents provided to the District**) 4. 238 pages of old IEPs (**Exchanged by Parents and the District over the years**) 5. 24 pages of IEP meeting invitations and consents (**Exchanged by Parents and the District over the years**) 6. Neuropsychological Report by [Private Neuropsychologist] dated 1/31/25 (**Parents provided to the District**) 7. Authorizations for sharing information with evaluators (**Parents provided to the District**) 8. 139 pages of IEP progress reports (**Readily available to Parents on the Parent Portal Genesis**) 9. Spanish summer school progress report (**Parents provided to the District**) 10. [Private Speech and Social Skills Provider] progress reports (**Parents received on an ongoing basis**) 11. Registration and residency information (**Parents provided to District**) 12. Reports cards (**Readily available to Parents on the Parent Portal Genesis**) 13. Service logs from [Private Speech and Social Skills Provider] (**Readily available to Parents from [Private Speech and Social Skills Provider]**) 14. 3/13/26 IEP meeting audio recording | | |
| | | | | C. Index of Student Records for [E.B.-1] Parent A.B. asks the LEA if he needs to index the March 18, 2026 zip file for [E.B.-1] as well or if the above index with respect to [E.B.-2] is enough to demonstrate that the LEA is acting in bad faith and lying. | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 279. | 6/3/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to M&W, PC and copying the NJDOE OFAC Investigations Unit, Board Secretary Rinderknecht, All Board Members, DSS Heinze under the March 21 Cease & Desist Letter and Taylor Law.<br><br>Parent A.B. asks M&W, PC, who proactively mocked and provoked Parent A.B. by writing "This guy is fun" on May 13, 2026, the following question in response to the Fee-Padding and Ethical Breach Solicitation Letter of M&W, PC:<br><br>*"How can a parent possibly harass a government entity (a) when such a government entity is repeatedly violating state and federal statutes with the assistance of two law firms and (b) the parent is the only party abiding by the March 21 Cease & Desist Letter of such government entity?"* | The LEA retaliates by: (i) dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws; and (ii) bypassing Parents entirely, in violation of the Rules of Professional Conduct and the *pro se* status of Parents, to route the Fee-Padding and Ethical Breach Solicitation Letter directly to their federal counsel. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 280. | 6/4/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to DSS Heinze under the March 21 Cease & Desist Letter, and copies Board Secretary Rinderknecht, All Board Members, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit.<br><br>Parent A.B. reiterates that Parents are available for annual review meetings on June 22, June 24, June 25, June 26, and June 30 between 1:00pm and 3:00pm.<br><br>Parent A.B. reiterates that the LEA is legally required to provide all student records prior to the annual review meetings. | The LEA retaliates by: (i) dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws; and (ii) bypassing Parents entirely, in violation of the Rules of Professional Conduct and the *pro se* status of Parents, to route the Fee-Padding and Ethical Breach Solicitation Letter directly to their federal counsel. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 281. | 6/4/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to DSS Heinze under the March 21 Cease & Desist Letter, and copies Board Secretary Rinderknecht, All Board Members, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit.<br><br>Parent A.B. flags a March 18, 2026 email from Parent A.B. to [Case Manager 2], [Case Manager 1], DSS Heinze, Superintendent Collazo, President Morell, and Vice President Richter, informing them that the student records production of M&W, PC on March 18, 2026 is missing the updated behavior chart and notes of [E.B.-2] that contains prior instances of self-harm:<br><br>*"Can Dr. [Case Manager 2] send me a chart that looks like the attached for [E.B.-2] as well? I did not see it in the records that I received today and I went through all of them?"* | The LEA retaliates by: (i) dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws; and (ii) bypassing Parents entirely, in violation of the Rules of Professional Conduct and the *pro se* status of Parents, to route the Fee-Padding and Ethical Breach Solicitation Letter directly to their federal counsel. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 282. | 6/5/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to Board Secretary Rinderknecht and All Board Members, and copying DSS Heinze under the March 21 Cease & Desist Letter, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit.<br><br>Parent A.B. notes that Parents provided notice to the LEA 12 times from February 18, 2026 to June 3, 2026 that Parents have not retained any attorney of any kind for student records requests, ad hoc IEP meetings, annual review meetings, or any IDEA matters.<br><br>Parent A.B. notes that M&W, PC is <u>knowingly</u> obstructing such matters by:<br>  a. claiming to need "**about two weeks**" to "review and redact" the student records on March 18, 2026,<br>  b. claiming that the student records will be "provided to you on a **rolling basis**" on April 15, 2026, | The LEA retaliates by: (i) dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws; and (ii) bypassing Parents entirely, in violation of the Rules of Professional Conduct and the *pro se* status of Parents, to route the Fee-Padding and Ethical Breach Solicitation Letter directly to their federal counsel. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

140

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | c. claiming to "anticipate providing you with those redacted documents **within two weeks at most**" on May 20, 2026, and<br>d. deciding to "**no longer communicate** directly with you" and will "communicate exclusively with" Rue Law on May 20, 2026. | | |
| | | | | Parent A.B. notes that freezing the rights of Parents under IDEA and inflating their legal costs by asking their federal litigator to represent Parents in matters outside the scope of such federal litigator is not appropriate. | | |
| 283. | 6/5/26 | DSS Heinze | Annual Review Meetings and Records Request | DSS Heinze responds to Parent A.B. on behalf of the LEA by writing:<br><br>"*We believe your reference to behavior charts, notes, and logs may refer to the 'Notes' maintained within the District's student information system. Those records have been produced previously and additional records are being reviewed through counsel. Beyond those records, **the District has not identified additional behavior charts, behavior tracking logs, prompting logs, accommodation logs, or similar records** responsive to your request.*"<br><br>"*With respect to scheduling, **the District is not available on June 22, June 24, June 25, June 26, or June 30, 2026**, due to scheduling conflicts and the unavailability of required team members.*"<br><br>"*The District intends to proceed*" with the unilateral annual review meeting dates and times without Parents. | The LEA retaliates by: (i) dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws; and (ii) bypassing Parents entirely, in violation of the Rules of Professional Conduct and the *pro se* status of Parents, to route the Fee-Padding and Ethical Breach Solicitation Letter directly to their federal counsel. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 284. | 6/5/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. provides the zip file that contains the March 18, 2026 student records production of M&W, PC to the NJDOE OFAC Investigations Unit and DSS Heinze, and copies M&W, PC and Taylor Law. | The LEA retaliates by: (i) dictating unilateral annual review dates and times to Parents while continuing to | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | Parent A.B. informs DSS Heinze that Parents are available between 1:00pm and 3:00pm on **June 15**, **June 16**, **June 17**, and **June 18, 2026**, in addition to the previously provided dates of June 22, June 24, June 25, June 26, and June 30, 2026. | withhold student records in violation of state and federal laws; and (ii) bypassing Parents entirely, in violation of the Rules of Professional Conduct and the *pro se* status of Parents, to route the Fee-Padding and Ethical Breach Solicitation Letter directly to their federal counsel. | accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. demands the behavior chart and notes of [E.B.-2] containing prior instances of self-harm by the end of the business day. | | |
| 285. | 6/5/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. notes the following issues to Board Secretary Rinderknecht and All Board Members, and copies NJDOE OFAC Investigations Unit, the LEA Safety Working Group, DSS Heinze, DSC Drumgoole, Superintendent Collazo, M&W, PC and Taylor Law: | The LEA retaliates by: (i) dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws; and (ii) bypassing Parents entirely, in violation of the Rules of Professional Conduct and the *pro se* status of Parents, to route the Fee-Padding and Ethical Breach Solicitation Letter directly to their federal counsel. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | 1. The two law firms representing the LEA likely provided notice of the April 14 FERPA violations, the April 15 decoy file, and the April 24 fraudulent public statement to their malpractice carriers. | | |
| | | | | 2. Independent conflict counsel would have likely recommended that the LEA release the behavior chart and notes and schedule annual review meetings on mutually agreed dates and times. | | |
| | | | | 3. The entire administration of the LEA, their two law firms, and their 69 lawyers are refusing to send a single PDF file containing the behavior chart and notes to Parents 80 days after the original request on March 18, 2026. | | |
| | | | | 4. The confusion of the LEA and their lawyers is disingenuous considering that Gina Ruesga, the former principal of the Lewis | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | F. Cole Intermediate School, provided a similar behavior chart and notes to Parent A.B. two years ago as file number 1788_001. | | |
| | | | | 5. The bad faith delays of the LEA create a safety issue, particularly under circumstances where the LEA does not have any raw data tracking the IEPs of disabled students, and raw data is required under state and federal laws to ensure disabled students are receiving a FAPE. | | |
| | | | | 6. The annual review meetings will be void *ab initio* if the LEA refuses to negotiate mutually agreed dates and times with Parents, and Parents are available between 1:00pm and 3:00pm on June 15, June 16, June 17, and June 18, 2026, in addition to the previously provided dates of June 22, June 24, June 25, June 26, and June 30, 2026. | | |
| | | | | 7. The student records were due by March 26, 2026 under state law and April 30, 2026 under federal law, and the LEA is legally required to provide all student records to Parents prior to the annual review meetings. | | |
| | | | | 8. The Board should retract the retaliatory and unlawful cease-and-desists to enable parental participation under the IDEA, particularly considering that:<br>a. The March 21 Cease & Desist Letter orders both Parents to communicate with Director Heinze as their sole point of contact: "*All communications regarding this matter should be directed to the Director of Special Services.*"<br>b. The LEA violated the retaliatory and unlawful March 21 Cease & Desist during communications relating to the April 14 FERPA violations, the April 15 decoy file, the April 24 fraudulent public statement, and the May 23 | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | detention, prompting responses from Parent A.B.<br>c. Parent A.B. abided by retaliatory and unlawful March 21 Cease & Desist Letter meticulously and limited his emails to Director Heinze, whereas Superintendent Collazo, DSC Drumgoole, Principal Diaz, [Case Manager 2], [Case Manager 1], and their lawyers contacted Parent A.B. repeatedly.<br>d. Parent B.B. has not sent a single communication to the LEA since March 21, 2026. | | |
| 286. | 6/7/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. requests that Board Secretary Rinderknecht and All Board Members review the updated version of this **Violations of Laws Ledger**.<br><br>Parent A.B. copies the NJDOE OFAC Investigations Unit, DSS Heinze, M&W, PC, and Taylor Law, and moves the LEA Safety Working Group, Superintendent Collazo, and DSC Drumgoole to the BCC line since future communications will likely be procedural. | The LEA retaliates by: (i) dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws; and (ii) bypassing Parents entirely, in violation of the Rules of Professional Conduct and the *pro se* status of Parents, to route the Fee-Padding and Ethical Breach Solicitation Letter directly to their federal counsel. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 287. | 6/7/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to Board Secretary Rinderknecht and All Board Members, and copying DSS Heinze under the March 21 Cease & Desist Letter, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit.<br><br>Parent A.B. distributes an updated version of this **Violations of Laws** | The LEA retaliates by: (i) dictating unilateral annual review dates and times to Parents while continuing to withhold student records in violation of state and federal laws; and (ii) bypassing Parents entirely, in violation | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and- |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | *Ledger*, reflecting cleanup comments. | of the Rules of Professional Conduct and the *pro se* status of Parents, to route the Fee-Padding and Ethical Breach Solicitation Letter directly to their federal counsel. | desists against Parents. |
| 288. | 6/8//26 | DSS Heinze | NJDOE OFAC: Imposing Detention on Parent | In direct contradiction to her prior response where DSS Heinze claimed the LEA is unavailable on June 22, 2026, DSS Heinze now claims the LEA is available on June 22, 2026, and she finally allows Parents to attend the annual review meetings:<br><br>"*In response to your request for additional meeting dates and times, the District can offer the following dates for the annual review meetings:*<br><br>*[E.B.-1]'s Annual Review Meeting–June 15, 2026 at 1:00 p.m.*<br><br>*[E.B.-2]'s Annual Review Meeting–June 22, 2026 at 1:15 p.m.*" | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 289. | 6/8/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to Board Secretary Rinderknecht and All Board Members, and copying DSS Heinze under the March 21 Cease & Desist Letter, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit.<br><br>Parent.A.B. thanks the LEA for allowing Parents to attend the annual review meetings and requests responses to the other issues from the Friday, June 5, 2026 communication as well to ensure that parental participation is substantive instead of performative. | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 290. | 6/9/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to Board Secretary Rinderknecht and All Board Members, and copying DSS Heinze under the March 21 Cease & Desist Letter, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit. | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. requests that the LEA ensure substantive parental participation under both state and federal laws for the upcoming annual review meetings scheduled for June 15, 2026 at 1:00pm and June 22, 2026 at 1:15pm by resolving the following issues immediately: | | |
| | | | | 1. Delinquent Student Records<br><br>Parent A.B. notes that both state and federal laws strictly require the provision of student records prior to any meeting of a Child Study Team. Parent A.B. requests that the LEA deliver the student records no later than Friday, June 12, 2026 for [E.B.-1] and no later than Friday, June 19, 2026 for [E.B.-2] for Parents to review them over the respective weekends.<br><br>Parent A.B. notes the following:<br>● The LEA is currently 75 days past the state statutory deadline (10 days) and 40 days past the federal FERPA deadline (45 days).<br>● A routine review and redaction of student records does not take 85 days (as of today), which is precisely why the mandatory statutory deadlines exist.<br>● The LEA cannot claim to be lawfully tracking the progress of a disabled student while simultaneously admitting in writing that it does not have raw data or logs.<br>● At a minimum, the LEA must produce (i) mandatory incident reports for student discipline, (ii) updated versions of File No. 1788_001 containing incidents of self-harm, (iii) any historical | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | written statements the administration required the students to draft, and (iv) any internal emails that are not a private memory aid (i.e., a note-to-self). | | |
| | | | | 2. Unlawful Cease-and-Desist Orders<br><br>Parent A.B. requests that the LEA formally retract the unlawful, retaliatory, and unconstitutional cease-and-desist orders.<br><br>Parent A.B. notes that Parent B.B. has not sent a single communication to the LEA since the March 21 Cease & Desist Letter and must be permitted to participate in the annual review meetings.<br><br>Parent A.B. notes that he meticulously limited his communications to the Director of Special Services as directed by the March 21 Cease & Desist Letter until the April 14 mass FERPA violations.<br><br>Parent A.B. notes that the LEA would have received far fewer communications from Parent A.B. had the LEA simply:<br>• Prevented administrative fraud and refrained from falsifying the written record;<br>• Voluntarily forwarded the unlawful disclosures to the NJDOE OFAC;<br>• Prevented conflicted administrators from interviewing, disciplining, and reviewing the disciplining of [E.B.-2];<br>• Protected the statutory authority of the Child Study Teams from administrative overreach;<br>• Prioritized student safety by actively addressing the concerning behaviors between classmates;<br>• Secured the high school building for a disabled middle schooler serving detention;<br>• Allowed Parent A.B. to leave detention instead of conditioning his release upon the administrative burden of sweeping an empty building; | | |

147

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | • Prevented Superintendent Collazo from fabricating a false narrative of "confusion" in writing to excuse the endangerment of a disabled student in an unstaffed building;<br>• Fulfilled multiple legal obligations to provide student records rather than attempting to force unilateral annual review meetings; and<br>• Restrained the bad faith inflation of legal fees by outside counsel, including unethical attempts to solicit the federal litigator of Parents to intercept their pro se communications. | | |
| 291. | 6/9/26 | [Case Manager 1] | Frontline Education | [Case Manager 1] provides written notice to Parents that the annual review meeting of [E.B.-1] will be held on June 15, 2026 at 1:00 p.m. | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 292. | 6/9/26 | [Case Manager 2] | Frontline Education | [Case Manager 2] provides written notice to Parents that the annual review meeting of [E.B.-2] will be held on June 22, 2026 at 1:15 p.m. | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 293. | 6/9/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. requests that Board Secretary Rinderknecht and All Board Members review the updated version of this *Violations of Laws Ledger*, and copies DSS Heinze under the March 21 Cease & Desist Letter, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit.<br><br>Parent A.B. thanks the LEA for providing written notice of the revised dates and times of annual review meetings, but reiterates that the LEA must provide the delinquent student records and rescind the unlawful cease-and-desists prior to such annual review meetings. | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 294. | 6/10/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. requests that Board Secretary Rinderknecht and All Board Members review the updated version of this *Violations of Laws Ledger*, and copies DSS Heinze under the March 21 Cease & Desist Letter, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit.<br><br>Parent A.B. requests an update by the close of business today on whether the LEA plans to provide the delinquent student records and rescind the unlawful cease-and-desists prior to the annual review meetings in order for Parent A.B. to set aside his entire weekend this upcoming weekend to review the data room. | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 295. | 6/10/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to DSS Heinze under the March 21 Cease & Desist Letter, and copies Board Secretary Rinderknecht, All Board Members, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit.<br><br>Parent A.B. requests formal PWNs from the LEA under 34 C.F.R. § 300.503 and N.J.A.C. 6A:14-2.3, which requires the LEA to explain why the LEA is refusing to provide student records to parents prior to the annual review meetings. | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | | their legal fees. | |
| 296. | 6/10/26 | M&W, PC | Fw: [EXTERNAL] CONFIDENTIAL STUDENT RECORDS PRODUCTION (M&W File No. 97566) | M&W, PC provides 10,035 pages of student records directly to Rue Law and excludes Parents from the disclosure, despite Parents providing 12 separate notices between February 18, 2026, and June 3, 2026 that Parents are proceeding *pro se* on all administrative IDEA matters, including student records requests, ad hoc IEP meetings, and annual review meetings, and that Rue Law was retained strictly for the federal civil action filed on February 2, 2026. | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 297. | 6/10/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | A few hours after receiving deficient student records from M&W, PC, Parent A.B. informs Board Secretary Rinderknecht and All Board Members of the following issues, copying DSS Heinze under the March 21 Cease & Desist Letter, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit:<br><br>1. Fee-Padding and Ethical Breaches<br><br>Consistent with the Fee-Padding and Ethical Breach Solicitation Letter of June 3, 2026, M&W, PC solicited Rue Law again for Rue Law to review all of these student records even though federal discovery has not started yet and Rue Law was retained strictly for the federal civil action filed on February 2, 2026.<br><br>2. Voluntary Disclosure of Attorney-Client Communications<br><br>The deficient student records included many attorney-client communications between the LEA and its lawyers similar to the April 14 disclosures involving mass FERPA and IDEA violations. | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | M&W, PC engaged in this voluntary disclosure of attorney-client communications to Parent A.B. on June 10, 2026 after disclosing similar attorney-client communications to Parent A.B. on April 14, 2026. Parent A.B. had warned M&W, PC on May 21, 2026 to cease sending attorney-client communications to Parent A.B.: <br><br> "*As you are aware, I was the person who actually reviewed the 11,738-page file and alerted your client to the presence of mass FERPA and IDEA violations as well as potential attorney-client communications. If you unlawfully shut me out of the process, who is supposed to identify mass FERPA and IDEA violations as well as potential attorney-client communications for your client?*" <br><br> M&W, PC responded to Parent A.B. on June 10, 2026 by sending more lists of disabled students and more attorney-client communications between the LEA and its lawyers to Parent A.B. | | |
| | | | | 3.  Bad Faith Data Dump <br><br> M&W, PC disclosed the 10,035 pages in the form of a mass, unorganized data dump, which is unusual considering M&W, PC claimed to be "diligently" working on "reviewing and redacting" these documents for the past 86 days. The number of documents that require redactions in the file are very limited. | | |
| | | | | 4.  Intentionally Randomized <br><br> The records are not in any chronological order or any other kind of order, and instead appear to be purposefully **randomized** to exhaust Parents, frustrate their participation, and inflate their legal costs. <br> • The pattern appears to be as follows for a student: <br>   ○ Document from high school (e.g., an email from the high school case manager) → | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | ○ Document from elementary school (e.g., a homework assignment) → <br> ○ Document from high school (e.g., an email from the high school teacher) → <br> ○ Repeat pattern. <br> ● Further, the records of both students from different schools are jumbled together in the same file. | | |
| | | | | 5. Unreasonable Delays <br><br> Providing basic documents 86 days later with *de minimis* redactions is unreasonable. <br> ● The HIB investigations and written statements Parent A.B. has been requesting for months are minimally redacted and barely legible. <br> ● The behavior charts and notes Parent A.B. has been requesting for months are minimally redacted and only a few pages long. | | |
| | | | | 6. Accounting for Remaining Student Records <br><br> The LEA should update Parent A.B. on the status of the remaining student records by editing the following brackets: <br> a. Behavior chart and notes of [E.B.-2] [**provided today**] <br> b. Behavior chart and notes of [E.B.-1] after December 5, 2025 [**provided today**] <br> c. Incident reports of disciplinary matters relating to [E.B.-2] and [E.B.-1] [**older reports provided today, many more missing**] <br> d. Written statements relating to [E.B.-2] and [E.B.-1] provided to the district [**older statements provided today, some missing**] <br> e. Raw data, teacher data sheets, work samples, behavior tracking logs, prompting logs, and accommodation logs relating to [E.B.-2] and [E.B.-1] [**none provided**] | | |

152

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | f.   Internal emails relating to [E.B.-2] and [E.B.-1] [**some provided, many more to come**] | | |
| 298. | 6/11/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | After reviewing the deficient student records from M&W, PC in more detail until 4:57 a.m., Parent A.B. informs Board Secretary Rinderknecht and All Board Members of the following issues, copying DSS Heinze under the March 21 Cease & Desist Letter, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit:<br><br>1.  New FERPA and IDEA Violations:<br><br>The deficient student records includes the names of 7 in-class services and pull-out resource students with IEPs on page 2,766, meaning the LEA is unable to produce student records without engaging in multiple FERPA and IDEA violations.<br><br>2.  Significant Overlap with April 15 Decoy File<br><br>The 10,035-page disclosure includes a significant number of communications between Parents and the LEA and vice versa, which raises questions about the purpose of the April 15 decoy file re-aggregated by the LEA and M&W, PC immediately after the April 14 FERPA and IDEA violations. | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 299. | 6/11/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. requests that Board Secretary Rinderknecht and All Board Members review the updated version of this *Violations of Laws Ledger*, and copies DSS Heinze under the March 21 Cease & Desist Letter, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit.<br><br>**Parent A.B. requests that M&W, PC cease sending nonsense emails such as "No more than Kacey Musgraves' repeated failure to respond to my requests to collaborate on a dobro and banjo-soaked ode to FERPA" while engaging in FERPA and IDEA** | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | **violations by revealing the names of disabled children within the LEA.** | their legal fees. | |
| 300. | 6/11/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to DSS Heinze under the March 21 Cease & Desist Letter, and copies Board Secretary Rinderknecht, All Board Members, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit.<br><br>Parent A.B. requests that two administrators in the LEA cease engaging in severe confidentiality breaches, as well as violations of multiple state and federal laws, by forwarding the disability status of [E.B.-2] and [E.B.-1] and the details of their disabilities to their friends and mentors outside the LEA. | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 301. | 6/11/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. bifurcates communications between elected officials and the administration, limiting this communication to DSS Heinze under the March 21 Cease & Desist Letter, and copies Board Secretary Rinderknecht, All Board Members, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit.<br><br>Parent A.B. reiterates that the LEA must resolve 3 issues prior to the first annual review meeting on Monday, June 15, 2026 to avoid hostile annual review meetings and ensure parental participation under state and federal laws:<br>1. Delinquent Student Records: The LEA must provide all student records of [E.B.-2] and [E.B.-1] or issue PWNs explaining why the LEA is refusing to provide such records.<br>2. Unlawful Cease & Desists: The LEA must rescind the retaliatory, unconstitutional, and baseless cease-and-desists.<br>3. Course Scheduling: The LEA must construct an appropriate course schedule for [E.B.-1] that does not contain a STEM tax, an additional burden, or a forced waiver for participation in advanced courses or programs. | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 302. | 6/12/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. requests that Board Secretary Rinderknecht and All Board Members review the updated version of this *Violations of Laws Ledger*, and copies DSS Heinze under the March 21 Cease & Desist Letter, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit. | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. requests that the LEA attach this *Violations of Laws Ledger* to the IEP of [E.B.-1] as the Parental Statement during the annual review meeting on Monday, June 15, 2026, and cross-reference the Parental Statement in the Concerns of the Parent section of the IEP. | | |
| 303. | 6/12/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. requests that the Child Study Teams and the LEA Safety Working Group review the updated version of this *Violations of Laws Ledger*, and copies DSS Heinze under the March 21 Cease & Desist Letter, Board Secretary Rinderknecht, All Board Members, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit. | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. informs the Child Study Teams and the LEA Safety Working Group that his wife will not be in attendance because of the three cease-and-desists from the Board and the two assertions of harassment from their two law firms representing the Board. | | |
| | | | | Parent A.B. specifies that he will be attending the annual review meeting on Monday, June 15, 2026, alone under protest to preserve parental rights during these hostile meetings. | | |
| 304. | 6/12/26 | DSS Heinze | NJDOE OFAC: Imposing Detention on Parent | DSS Heinze responds on behalf of the LEA with the following points:<br>• The LEA refuses to attach this *Violations of Laws Ledger* as the Parental Statement of Parents and states that the Parental Statement will be part of the educational records of [E.B.-1].<br>• The LEA refuses to acknowledge the STEM tax, the additional burden, and the forced waiver in the predetermined course schedule of [E.B.-1], and the LEA states that the disparate | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | impact such a schedule may have on [E.B.-1] is irrelevant.<br>● The LEA does not view the three cease-and-desists of the Board and the two assertions of harassment from their two law firms as preventing parental participation after specifically targeting Parent B.B. for intimidation.<br>● DSS Heinze writes the following to Parent A.B.: "***Nothing is preventing your participation in [E.B.-1]'s upcoming IEP meeting. The District looks forward to your participation and input as a member of the IEP team on Monday.***"<br>    ○ (Parent A.B. notes that the requirement under IDEA to have "one or both of the parents" does not mean that a school district can intimidate the other parent and prevent her from attending an annual review meeting. **34 CFR § 300.322(a)** is not a loophole that allows a district to intimidate one parent just because the other parent is willing to attend.) | designed to punish Parents by obstructing their participation and inflating their legal fees. | issued three cease-and-desists against Parents. |
| 305. | 6/12/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. informs the Child Study Teams, the LEA Safety Working Group, DSS Heinze, DSC Drumgoole, Board Secretary Rinderknecht, and All Board Members of the following, with the NJDOE OFAC Investigations Unit, M&W, PC and Taylor Law copied:<br><br>1. The LEA is legally required to incorporate this ***Violations of Laws Ledger*** as a Parental Statement to the IEP upon the request of Parents.<br><br>2. The LEA should provide the documents listed under **NJ P.L. 2025, c. 107** to Parents.<br>    a. The LEA has **not provided an agenda, a draft IEP, proposed goals, or the current levels of academic and functional performance (PLAAFP) baselines** to Parents under NJ P.L. 2025, c. 107.<br>    b. The statute strongly encourages the LEA to provide such documents to Parents today, and the statute will | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | become mandatory on July 1, 2026.<br>c.  Because the LEA voluntarily provided such documents to Parents in past years, withholding such documents today is a separate federal violation of law despite NJ P.L. 2025, c. 107 not taking full effect until July 1, 2026. | | |
| 306. | 6/12/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | **Parent A.B. provides** the Child Study Teams, the LEA Safety Working Group, DSS Heinze, DSC Drumgoole, Board Secretary Rinderknecht, and All Board Members an 11-page **Agenda** for the June 15, 2026 annual review meeting, with the NJDOE OFAC Investigations Unit,  M&W, PC and Taylor Law copied on the communication. Parent A.B. notes the following in his Agenda:<br><br>1. Denial of Parent Participation<br>  a.  The LEA is unlawfully denying parental participation by:<br>    i.  refusing to cross-reference this ***Violations of Laws Ledger*** as a Parental Statement in the Concerns of the Parent section of the IEP, and<br>    ii.  refusing to attach such a Parental Statement as an Appendix to the IEP.<br>  b.  Parent B.B. is a substantive member of the Child Study Team and co-taught [Advanced Course], [Advanced Course], and [Advanced Course] during the 2025-2026 academic year.<br>  c.  Parent B.B. is not attending this annual review meeting because the three cease-and-desists issued by the Board intimidated her out of participating in this process.<br>  d.  Because Parent B.B. is unable to attend the annual review meeting, the Child Study Team will not have the data necessary to review, analyze, and issue recommendations with respect to STEM courses.<br>  e.  Parent A.B. is a substantive member of the Child Study Team and co-taught [Advanced Course] and [Advanced Course] during the 2025-2026 academic year.<br>  f.  Parent A.B. is unable to meaningfully participate in the annual | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|------------------------------------|----------|-------------------|
| | | | | review meeting because the LEA did not provide all of the student records of [E.B.-1] to Parents, in violation of state and federal laws.<br>g. Parent A.B. is unable to meaningfully participate in the annual review meeting because the LEA did not provide the NJ P.L. 2025, c. 107 documents to Parent A.B., which were provided to Parents in previous years. | | |
| | | | | 2. Denial of Data-Driven IEP<br>a. DSS Heinze admitted in writing on June 5, 2026 that the LEA possesses absolutely no raw data for [E.B.-1], neither behavior tracking logs, nor prompting logs, nor accommodation logs, nor any other logs.<br>b. Under state and federal laws, an IEP must be data-driven. If the educators are not tracking daily data, how can the Child Study Team determine whether the disabled student is making meaningful progress toward his IEP goals?<br>c. Considering that the LEA does not keep raw data or logs, how can the LEA keep track of whether [E.B.-1] achieved a series of IEP goals 80% or more of the time, meaning at least 4 (numerator of successful attempts) out of every 5 (denominator of total opportunities) times during any marking period where the goal was coded "A" for "Achieved" for such marking period?<br>d. Considering that the LEA does not keep raw data or logs, how can the LEA keep track of whether [E.B.-1] is progressing satisfactorily toward a separate series of IEP goals 80% or more of the time, meaning at least 4 (numerator of successful attempts) out of every 5 (denominator of total opportunities) times during any marking period where the goal was coded "PS" for "Progressing Satisfactorily" for such marking period.<br>e. The writing sample references in many of the IEP goals are from the [Advanced Course] classroom, where student records show the general education teacher refused to appropriately | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | grade the student because she felt "unsafe" after parent emails requesting implementation of the IEP and the Neuropsychological Report.<br>f. For any data point, please provide the underlying dates of each consecutive trial and the exact percentages scored on each. If you do not have the daily tracking logs, what mathematical formula did you use to arrive at your conclusions?<br>g. On March 28, 2025, the LEA agreed on the record to have [Private Neuropsychologist] conduct updated classroom observations. Why did the LEA neglect to follow up on the agreement knowing that the LEA is not collecting its own data?<br><br>3. Denial of Physical Safety, Privacy, and Confidentiality<br>a. A student was stabbed 7 times in the high school bathroom after the last annual review meeting. Separately, the high school was completely unstaffed during a recent Saturday detention, leading to child endangerment concerns with respect to [E.B.-2]. Is the LEA addressing safety concerns at the high school?<br>b. Student records demonstrate that Anthony Muscato and Disha Patel shared the disability status and medical diagnoses of the disabled student with unauthorized third parties. Has the LEA taken any disciplinary action?<br>c. The April 14 student records unlawfully disclosed 8 lists identifying the full names and federal disability status of all IEP students in the LEA. The June 10 student records include the full names and special education placements of seven children in this LEA. Can the LEA manage basic record security without systemic FERPA violations?<br>d. On September 8, 2025, the LEA unilaterally removed the smartwatch accommodation of [E.B.-1] from the previous school year without an IEP meeting after Parents refused to give up their right to oppose unjust discipline. On March 13, 2026, the LEA reinstated the smartwatch accommodation | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | without any disciplinary conditions. Please provide the PWN describing the data behind the change in position.<br>e.  The LEA wrote an email to Parents claiming that Parents had not raised the issue of smartwatch accommodations during the interim period of 6 months. Why did the LEA intentionally lie about the issue? What are the monthly fees billed by the two law firms handling this matter for the LEA compared to 6 months of compensatory education?<br>f.  [Case Manager 1] has been incommunicado for months. Who is the case manager of [E.B.-1]? | | |
| | | | | 4. Denial of Appropriate Course Scheduling<br>a.  Please review the 12 questions that were posed to the LEA regarding course scheduling on March 5, 2026. Please note that [E.B.-1] as well as the IBO representative in Washington D.C. rejected almost all of the April 2, 2026 answers of the LEA as intentionally misrepresenting facts. Please provide accurate answers to the 12 questions.<br>b.  Why is DSS Heinze writing emails on behalf of [Case Manager 2] to deny makeup sessions at [Private Speech and Social Skills Provider]? | | |
| 307. | 6/13/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | **Parent A.B. provides** the Child Study Teams, the LEA Safety Working Group, DSS Heinze, DSC Drumgoole, Board Secretary Rinderknecht, and All Board Members a 3-page **Questions List** for the June 15, 2026 annual review meeting, with the NJDOE OFAC Investigations Unit,  M&W, PC and Taylor Law copied on the communication.<br><br>Parent A.B. provides the Questions List, which is a simplified version of the Agenda, to the LEA in order to prevent the LEA from arguing that the Agenda was too complicated for the administrators, law firms, and 69 lawyers of the LEA. | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | Parent A.B. notes the following as well:<br><br>"*As I wrote previously, I propose postponing the meeting until (i) all student records are provided, (ii) an appropriate course schedule is constructed, (iii) the cease-and-desists are lifted, and (iv) documents under NJ P.L. 2025 c. 107 are presented to parents.*<br><br>*If I do not hear back, I will be there under protest tomorrow by assuming your desire is to hold a predetermined and invalid meeting.*" | their legal fees. | |
| 308. | 6/15/26 | Parent A.B. | IEP Meeting Agenda and Parent Questions | DSS Heinze responds to Parent A.B. **at 10:12 a.m., exactly 3 hours before the annual review meeting,** with a new Agenda from the LEA and attempts to preclude any parental participation by annotating the Agenda and Questions List of Parent A.B. with legal annotations in BLUE text from M&W, PC that are entirely unresponsive to the issues.<br><br>(Parent A.B. notices that **the annotations of M&W, PC use teachers, case managers, and service providers as human shields** by forcing them to verbally defend systemic administrative data collection failures on an audio recorded line, exposing teachers, case managers, and service providers to severe professional and legal liability.) | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 309. | 6/15/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | **At 12:23 p.m., less than an hour before the annual review meeting,** Parent A.B. drafts his own responses to the annotations from M&W, PC and alerts the Child Study Teams, the LEA Safety Working Group, DSS Heinze, DSC Drumgoole, Board Secretary Rinderknecht, and All Board Members, with the NJDOE OFAC Investigations Unit, M&W, PC and Taylor Law copied:<br><br>"*Folks,*<br><br>*Please find attached responses from the district to my Agenda* | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | *in BLUE text, as well as my annotations to their responses in RED text.*<br><br>*Also, I noticed that the District also sent responses to my Questions, but my Questions were simply a condensed version of the Agenda. I drafted the Questions primarily as a precaution to the District claiming to be in a state of 'confusion,' 'uncertainty,' or 'misunderstanding,' to quote the Superintendent directly. Accordingly, I do not feel the need to separately annotate the Questions with my responses since I already annotated the much longer Agenda. I hope that makes sense considering that the content is the same, but let me know if you disagree.*<br><br>*At the end of the day, I want to make absolutely sure that neither you, nor a toddler, nor even a labrador retriever reviewing any of this information can claim to be in a state of 'confusion,' 'uncertainty,' or 'misunderstanding,' to quote the Superintendent directly.*<br><br>*Thanks so much, and see you soon!"* | their legal fees. | |
| 310. | 6/15/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | **At 1:51pm**, **approximately 15 minutes after being escorted out of the annual review meeting by an armed police officer,** Parent A.B. notifies the NJDOE OFAC Investigations Unit of the following, and copies the Child Study Teams, the LEA Safety Working Group, DSS Heinze, DSC Drumgoole, Board Secretary Rinderknecht, All Board Members, M&W, PC, and Taylor Law:<br><br>"*Dear NJDOE OFAC Investigations Unit:*<br><br>*[DSS Heinze] screamed at me (with an audio-recorded, actual shriek) at the annual review meeting just now, and then when I objected and stated that I felt "unsafe," the police officers* | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | *waiting next door immediately escorted me out of the building.*<br><br>*Please note that [M&W, PC] was at this meeting specifically to provoke me because (i) their name was not on the original Written Notice for the annual review meeting, and (ii) I had previously given the district notice that I would like to hire an attorney for [E.B.-1] to attend these meetings if the district is going to bring its own attorney in the form of [M&W, PC].*<br><br>*I understand that the complete lack of any factual or legal bases for their actions requires the district to purposefully provoke parents and fabricate a 'difficult parent' defense, but there should be limits on the provocations and police resources should not be used for these inappropriate purposes."* | The LEA further retaliates by (i) ambushing Parent A.B. in a hostile meeting with M&W, PC, who was not on the Written Notice sent to Parent A.B. and was an unauthorized participant in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (ii) shrieking at Parent A.B. and making him feel verbally attacked and unsafe, and (iii) escorting Parent A.B. out of the high school with an armed police officer who was lying in wait in the next room immediately after Parent A.B. complained about the shrieking. | |
| 311. | 6/15/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | **At 2:39 p.m.**, Parent A.B. notifies Board Secretary Rinderknecht and All Board Members of the following, and copies the NJDOE OFAC Investigations Unit, the Child Study Teams, the LEA Safety Working Group, DSS Heinze, DSC Drumgoole, M&W, PC, and Taylor Law:<br><br>"*Please review the attached **audio recording** and please note the following sequence of events from today.*<br><br>*1. Prior to entering the annual review meeting room, I was very excited to see all of the teachers and had a very cordial discussion with Mr. [Special Education Teacher] in the hallway. …*<br><br>*2. Upon entering, I continued to be all smiles until [M&W, PC]* | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees.<br><br>The LEA further retaliates by (i) ambushing Parent A.B. in | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | *ambushed me at the meeting. [M&W, PC] has been aware for years that I do not attend IEP meetings with school attorneys present unless my children have their own legal counsel present. …*<br><br>*3. As you can hear from the audio, all I did was consistently object to the presence of [M&W, PC] **without raising my voice** and I asked the attorney for [M&W, PC] to leave the room. …*<br><br>*4. In response, at minute 12:00 of the attached audiotape, **Director Heinze screamed at me for objecting and literally shrieked "Mr. [B.]!"** When I jerked back and said "I feel under attack, I feel unsafe," the District responded by having police, who were waiting next door, escort me out of the building. The audio recording speaks for itself. …*<br><br>*This annual review meeting is void ab initio. …"* | a hostile meeting with M&W, PC, who was not on the Written Notice sent to Parent A.B. and was an unauthorized participant in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (ii) shrieking at Parent A.B. and making him feel verbally attacked and unsafe, and (iii) escorting Parent A.B. out of the high school with an armed police officer who was lying in wait in the next room immediately after Parent A.B. complained about the shrieking. | |
| 312. | 6/15/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | **At 3:59 p.m.**, Parent A.B. notifies Board Secretary Rinderknecht and All Board Members of the following, and copies the NJDOE OFAC Investigations Unit, the Child Study Teams, the LEA Safety Working Group, DSS Heinze, DSC Drumgoole, M&W, PC, and Taylor Law:<br><br>*"I am available in the afternoons between 1:00pm and 3:00pm for annual review meetings for [E.B.-1] until July 2nd. Please send a written notice that includes all attendees instead of ambushing the parent with [M&W, PC]. You are legally required to be accurate in these notices.*<br><br>*You received plenty of prior communications from me stating that I want to protect [E.B.-1] and make sure he is represented by an attorney in the event you are represented by an attorney. My view is that hiring attorneys for these collaborative* | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees.<br><br>The LEA further retaliates by (i) ambushing Parent A.B. in a hostile meeting with M&W, | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
|  |  |  |  | *meetings are a waste of money, which ironically is precisely why [M&W, PC] has been inserting itself into this process. I realize that your attorney likely advised you to provoke me and have me arrested. The reality is that she failed miserably because [DSS Heinze] shrieked at me and then had me removed from the building by police. I have never witnessed or read about a situation where a father who was attacked verbally was escorted out of a building by police after stating that he feels 'unsafe.'*<br><br>*Despite the events of today, my kind advice is for us all to move forward and collaborate. Please note that I recommend the following:*<br><br>*1. We should have an annual review meeting for [E.B.-1] without attorneys present. …*<br><br>*2. A neutral facilitator from the district should lead the meeting [instead of a conflicted attorney from M&W, PC]. …*<br><br>*[Parent A.B. specifically recommends the principals of other schools within the district.]*<br><br>*3. [DSS Heinze] should make a written pledge not to scream and shriek at Parent A.B. …*<br><br>*I believe that we can have a productive and collaborative meeting for [E.B.-1]. Please let me know when you are available and send an accurate written notice.*<br><br>*Please also use this opportunity to (i) rescind the unlawful, retaliatory, and baseless cease and desists, which would allow my wife to be there, (ii) provide all student records, and (iii) provide documents under NJ P.L. 2025 c. 107."* | PC, who was not on the Written Notice sent to Parent A.B. and was an unauthorized participant in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (ii) shrieking at Parent A.B. and making him feel verbally attacked and unsafe, and (iii) escorting Parent A.B. out of the high school with an armed police officer who was lying in wait in the next room immediately after Parent A.B. complained about the shrieking. |  |

165

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 313. | 6/15/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | **At 5:25 p.m.**, Parent A.B. notifies Board Secretary Rinderknecht and All Board Members, copying the NJDOE OFAC Investigations Unit, the Child Study Teams, the LEA Safety Working Group, DSS Heinze, DSC Drumgoole, M&W, PC, and Taylor Law, that Parent A.B. is making the same de-escalation requests for the annual review meeting of [E.B.-2] on June 22, 2026 as well. | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees.<br><br>The LEA further retaliates by (i) ambushing Parent A.B. in a hostile meeting with M&W, PC, who was not on the Written Notice sent to Parent A.B. and was an unauthorized participant in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (ii) shrieking at Parent A.B. and making him feel verbally attacked and unsafe, and (iii) escorting Parent A.B. out of the high school with an armed police officer who was lying in wait in the next room immediately after Parent A.B. complained about the shrieking. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 314. | 6/15/26 | Parent A.B. | NJDOE OFAC: Imposing Detention | **At 7:21 p.m.**, Parent A.B. notifies Board Secretary Rinderknecht and All Board Members of the following, and copies the NJDOE OFAC | The LEA continues to violate state and federal laws by | Parent A.B. is forced to communicate with the LEA |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | on Parent | Investigations Unit, the Child Study Teams, the LEA Safety Working Group, DSS Heinze, DSC Drumgoole, M&W, PC, and Taylor Law:<br><br>"*A final request for both of the upcoming annual review meetings. Instead of having the **armed officer lying in wait in the next room** for an ambush, I would like the armed officer to join the meeting as a member of the Child Study Team. Having the armed officer wait in the next room and listen in is **extremely dangerous**. I am not interested in being the victim of **gun violence at school** if the officer mishears any instructions from administrators or confuses the shrieking from your administrators with a parental attack, especially since he is in the other room. The added benefit to such an approach will be his body camera can record everyone, and we will have multiple data points of your behavior (particularly the extent to which the [M&W, PC] attorney was **grinning the entire time**).*<br><br>*Thanks again, and please provide updates as soon as possible so that I can block off dates on my calendar **prior to flying out on July 4th for two months***." | withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees.<br><br>The LEA further retaliates by (i) ambushing Parent A.B. in a hostile meeting with M&W, PC, who was not on the Written Notice sent to Parent A.B. and was an unauthorized participant in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (ii) shrieking at Parent A.B. and making him feel verbally attacked and unsafe, and (iii) escorting Parent A.B. out of the high school with an armed police officer who was lying in wait in the next room immediately after Parent A.B. complained about the shrieking. | under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 315. | 6/16/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. requests that Board Secretary Rinderknecht and All Board Members review the updated version of this ***Violations of Laws Ledger*** and that the Child Study Teams attach the same to the IEPs of [E.B.-1] and [E.B.-2] as the Parental Statement and cross-reference | The LEA continues to violate state and federal laws by withholding mandatory student records and | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | such Parental Statement in the Concerns of the Parent section of such IEPs. | enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees. | accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | Parent A.B. separately addresses Business Administrator Rinderknecht as well:<br><br>"*Please fulfill all of your independent fiduciary duties to the Board of Education as a corporate entity, with the full understanding that administrators and their attorneys purposefully created circumstances today where a parent could have been the victim of gun violence on school grounds after being shrieked at by one of your administrators.*" | The LEA further retaliates by (i) ambushing Parent A.B. in a hostile meeting with M&W, PC, who was not on the Written Notice sent to Parent A.B. and was an unauthorized participant in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (ii) shrieking at Parent A.B. and making him feel verbally attacked and unsafe, and (iii) escorting Parent A.B. out of the high school with an armed police officer who was lying in wait in the next room immediately after Parent A.B. complained about the shrieking. | |
| 316. | 6/16/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. alerts Business Administrator Rinderknecht of spoliation concerns because the shrieking and armed intervention at the annual review meeting on June 15, 2026 happened only seconds after Parent A.B. requested student records, particularly raw data supporting the mathematical equations underlying the IEP goals. | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | **Parent A.B. requests that Business Administrator Rinderknecht send the following letter to all teachers, case managers, and service providers** who could be instructed by the administration to engage in spoliation:<br><br>"*Dear Faculty and Staff, …*<br><br>*Please review and strictly adhere to the following mandatory compliance protocols immediately:*<br><br>*Preserve All Existing Records "As-Is": You are directed to maintain and preserve all existing physical and digital records exactly as they currently exist. This includes, but is not limited to, graded assessments, worksheets, writing samples, gradebook entries, emails, and existing lesson plans.*<br><br>*No Retroactive Document Creation: Under no circumstances should any staff member alter, modify, backdate, or retroactively generate any new tracking logs, data sheets, rubrics, or behavior/accommodation charts for any past period of the 2025–2026 school year.*<br><br>*Real-Time Documentation Only: Consistent with standard district policy and New Jersey educational regulations, all progress monitoring and data entry must reflect contemporaneous, real-time tracking. Do not attempt to synthesize past observations into new charts or spreadsheets.*<br><br>*Digital Integrity & Metadata: Please be advised that all digital platforms (Google Workspace, Genesis, Microsoft Office) maintain automatic, permanent electronic metadata tracking creation dates and modifications. To protect the integrity of the district's files and your own professional standing, do not create or edit historical documentation. …*" | retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees.<br><br>The LEA further retaliates by (i) ambushing Parent A.B. in a hostile meeting with M&W, PC, who was not on the Written Notice sent to Parent A.B. and was an unauthorized participant in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (ii) shrieking at Parent A.B. and making him feel verbally attacked and unsafe, and (iii) escorting Parent A.B. out of the high school with an armed police officer who was lying in wait in the next room immediately after Parent A.B. complained about the shrieking. | obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 317. | 6/16/26 | DSS Heinze | Facilitated IEP Meeting | Upon learning that Parent A.B. will be abroad for two months starting on July 4, 2026, the LEA seizes the opportunity for gamesmanship and decides to have DSS Heinze respond to Parent A.B. with the following points:<br>● "*The District has reviewed your recent correspondence regarding future IEP meetings, including your request for the participation of a neutral facilitator.*"<br>  ○ Parent A.B. used the term "neutral facilitator" in his prior emails to refer to a specific set of administrators within the LEA.<br>● "*In an effort to support productive discussion and meaningful participation by all members of the IEP team, the District is willing to participate in a Facilitated IEP Meeting through the New Jersey Department of Education.*"<br>  ○ The LEA is aware that the NJDOE will need a minimum of 3 to 6 weeks to facilitate such meetings and is opportunistically suggesting a delay to frustrate the process after learning of the July 4, 2026 departure date of Parent A.B.<br>  ○ Parent A.B. had already named three principles and former principals within the LEA who could facilitate such meetings immediately instead of a conflicted law firm that mocked Parent A.B. twice in writing recently ("*This guy is fun*" and "*ode to FERPA*").<br>● The LEA completely ignores requests from Parent A.B. to provide legally mandated student records and NJ P.L. 2025, c. 107 documents.<br>● The LEA completely ignores requests from Parent A.B. to rescind the unconstitutional, retaliatory, and baseless cease-and-desists.<br>● The LEA continues to have an administrator who shrieked at Parent A.B. with an armed man lying in wait in the next room be the main point of contact of Parent A.B. | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees.<br><br>The LEA further retaliates by (i) ambushing Parent A.B. in a hostile meeting with M&W, PC, who was not on the Written Notice sent to Parent A.B. and was an unauthorized participant in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (ii) shrieking at Parent A.B. and making him feel verbally attacked and unsafe, and (iii) escorting Parent A.B. out of the high school with an armed police officer who was lying in wait in the next room immediately after Parent A.B. complained about the shrieking. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

170

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 318. | 6/16/26 (four emails) | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. responds to Business Administrator Rinderknecht and Superintendent Collazo instead of DSS Heinze in a series of back-to-back emails expressing his dismay that the LEA is out of control, and copies the Child Study Teams, the LEA Safety Working Group, DSS Heinze, DSC Drumgoole, All Board Members, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit:<br><br>1. Fiduciary Duties of the Business Administrator<br><br>Parent A.B. writes the following to Business Administrator Rinderknecht:<br><br>"*Dear Business Administrator:*<br><br>*When you fulfilled your independent fiduciary duties to the Board of Education as a corporate entity and updated your insurance carrier with the latest absurd facts, did your insurance carrier advise you that purposefully creating the circumstances where a parent might have been shot on school grounds was a phenomenal idea from a risk-management perspective?*"<br><br>2. Fiduciary Duties of the Board<br><br>Parent A.B. requests that Board Secretary Rinderknecht and All Board Members review the updated version of this ***Violations of Laws Ledger*** and that the Child Study Teams attach the same to the IEPs of [E.B.-1] and [E.B.-2] as the Parental Statement and cross-reference such Parental Statement in the Concerns of the Parent section of such IEPs.<br><br>3. Administrators Blaming Staff<br><br>Parent A.B. requests that Superintendent Collazo explain why | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees.<br><br>The LEA further retaliates by (i) ambushing Parent A.B. in a hostile meeting with M&W, PC, who was not on the Written Notice sent to Parent A.B. and was an unauthorized participant in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (ii) shrieking at Parent A.B. and making him feel verbally attacked and unsafe, and (iii) escorting Parent A.B. out of the high school with an armed police officer who was lying in wait in the next room immediately after Parent A.B. complained about the shrieking. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | administrators exposed the case managers, teachers, and service providers to severe professional and legal liability by forcing them to verbally defend systemic administrative data collection failures on the record at the June 15, 2026 annual review meeting. | | |
| 319. | 6/16/26 | DSS Heinze | NJDOE OFAC: Imposing Detention on Parent | The LEA continues to insist that Parent A.B. participate in annual review meetings while Parent A.B. is abroad for two months starting on July 4, 2026, and the LEA continues to have DSS Heinze harass Parent A.B. by having her email him a second time the day after shrieking at him:<br><br>"*Mr. [B.],*<br><br>*I remain the Director of Special Services for Fort Lee Public Schools and will continue to perform my responsibilities with respect to your children's educational programming and the IEP process.*<br><br>*As stated previously, the District remains willing to participate in a Facilitated IEP Meeting through the New Jersey Department of Education and awaits your response regarding that proposal.*<br><br>*Please advise whether you are agreeable to proceeding through the NJDOE Facilitated IEP process.*" | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees.<br><br>The LEA further retaliates by (i) ambushing Parent A.B. in a hostile meeting with M&W, PC, who was not on the Written Notice sent to Parent A.B. and was an unauthorized participant in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (ii) shrieking at Parent A.B. and making him feel verbally attacked and unsafe, and (iii) escorting Parent A.B. out of the high school with an armed police officer who was lying in wait in the next room immediately | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | | after Parent A.B. complained about the shrieking. | |
| 320. | 6/16/26 (two emails) | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. responds to DSS Heinze and copies the Child Study Teams, the LEA Safety Working Group, DSC Drumgoole, Superintendent Collazo, Board Secretary Rinderknecht, All Board Members, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit.<br><br>"*Dear Director Heinze:*<br><br>***You emailed me twice today after shrieking at me yesterday*** *and having me removed from the annual review meeting by an armed police officer. Your unhinged behavior and emails are not normal unless you have full institutional support to* ***strategically harass me****.*<br><br>*You are* ***continuing to insist on having the annual review meetings while I am out of the country****. You have until I fly out on July 4, 2026 to hold them. I already provided a few names of multiple administrators in the LEA who can lead the meetings instead of your lawyers who have conflicts of interest. My choices are not limited to meetings led by your lawyers, who mocked my complaints by writing "This guy is fun" and "ode to FERPA," and an NJDOE-facilitated process that would take place while I am abroad. …*<br><br>*Further, I already stated that I am available every business day between 1:00pm and 3:00pm until I fly out on July 4, 2026... Instead of being so transparently noncooperative and obstructionist by insisting on delaying and frustrating the process,* ***consider sending the student records and the NJ 2025 c. 107 documents right now****. What is stopping you?*** | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees.<br><br>The LEA further retaliates by (i) ambushing Parent A.B. in a hostile meeting with M&W, PC, who was not on the Written Notice sent to Parent A.B. and was an unauthorized participant in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (ii) shrieking at Parent A.B. and making him feel verbally attacked and unsafe, and (iii) escorting Parent A.B. out of the high school with an armed police officer who was lying in wait immediately after Parent A.B. complained about the shrieking. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | *Finally, **please cease contacting me solely to get a rise out of me** when there are case managers available who can manage communications, although on second thought I am not sure if that makes any sense considering you were caught writing their emails in the past.*" | | |
| 321. | 6/16/26 to 6/17/26 (six emails) | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. responds to Business Administrator Rinderknecht in a series of back-to-back emails expressing his dismay that **the LEA is completely out of control**, and copies the Child Study Teams, the LEA Safety Working Group, Superintendent Collazo, DSS Heinze, DSC Drumgoole, All Board Members, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit: | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | 1. Updated ***Violations of Laws Ledger***<br><br>Parent A.B. requests that Board Secretary Rinderknecht and All Board Members review the updated version of this ***Violations of Laws Ledger*** and that the Child Study Teams attach the same to the IEPs of [E.B.-1] and [E.B.-2] as the Parental Statement and cross-reference such Parental Statement in the Concerns of the Parent section of such IEPs. | The LEA further retaliates by (i) ambushing Parent A.B. in a hostile meeting with M&W, PC, who was not on the Written Notice sent to Parent A.B. and was an unauthorized participant in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (ii) shrieking at Parent A.B. and making him feel verbally attacked and unsafe, and (iii) escorting Parent A.B. out of the high school with an armed police | |
| | | | | 2. Demand for Annual Review Meeting or PWN for [E.B.-1]<br><br>Parent A.B. reiterates his **postponement request** during the June 15, 2026 annual review meeting and demands a meeting or a PWN under **N.J.A.C. 6A:14-2.3(h)(5)** and **34 C.F.R. § 300.503(a)(2)**. | | |
| | | | | 3. Request for Audio Recording and Body Camera Footage<br><br>Parent A.B. requests the audio recording and body camera footage of the June 15, 2026 annual review meeting from the LEA under N.J.A.C. 6A:32-7.1 and FERPA, 34 C.F.R. § 99.10, which the LEA is legally required to provide within 10 calendar days. | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | 4. <u>Attorney Misconduct and Unauthorized Assumption of LEA Authority</u><br>   a. M&W, PC explicitly issued administrative directives to Parent A.B., stating "***Please step out***" and "***Last time, I'm asking you***" and "***Step out***," mimicking or directly joining law enforcement commands after DSS Heinze shrieked at Parent A.B. in response to Parent A.B. requesting student records.<br>   b. **34 C.F.R. § 300.320(a)(4)** explicitly defines who may act as the LEA representative. The LEA representative must be a district employee qualified to supervise special education and commit district resources.<br>   c. A contracted attorney has zero statutory authority to act as the LEA representative, chair an IEP meeting, or terminate federally protected parental participation rights, leading to a severe procedural denial of FAPE under 34 C.F.R. § 300.322.<br><br>5. <u>Physical Escalation by M&W, PC in Joint Action with LEA</u><br>   a. **Unwarranted Physical Confrontation**: While administrators managed the security request, the M&W, PC attorney left her seat on the far side of the table and walked toward Parent A.B. to physically confront Parent A.B. while Parent A.B. was being escorted out by an armed officer.<br>   b. **Deliberate Escalation of Risk**: Having M&W, PC physically confront Parent A.B., who repeatedly said "*You brought her specifically to agitate me*" and "*This is a provocation*" in reference to M&W, PC during the meeting, represents a severe, unnecessary escalation by the LEA. This action demonstrates a calculated attempt to provoke a physical reaction from Parent A.B. to manufacture grounds for an arrest or criminal charges.<br>   c. **Evidence of Malicious Intent**: Parent A.B. heard M&W, PC exclaim "***Great job!***" after Parent A.B. was forced to leave the room. The school staff and M&W, PC were not acting out of a genuine, good faith fear for safety. | officer who was lying in wait in the next room immediately after Parent A.B. complained about the shrieking. | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | d. **Parent A.B. Not a Safety Threat**: As Parent A.B.was departing the broader building, Parent A.B. asked the armed officer if he really felt threatened by either Parent A.B. or his coffee and laptop at any point, and the armed officer said, "*No man, but they don't want you there, you know.*" | | |
| | | | | 6. Total Loss of Attorney-Client Privilege; Lawyer as Witness<br>a. **Loss of Privilege (NJ RPC 3.7)**: By usurping control and issuing direct orders to Parent A.B., M&W, PC acted as an administrative actor rather than legal counsel. This waives attorney-client privilege for the incident.<br>b. **Unlicensed School Administration (N.J.A.C. 6A:9B-11.1)**: Directing the removal of Parent A.B. from a federal proceeding is a supervisory administrative function. M&W, PC does not hold the mandatory administrative certificate issued by the State Board of Examiners.<br>c. **Public Procurement Violation (N.J.S.A. 18A:18A)**: Public funds are strictly capped by the scope of the awarded contract. The Board authorized public funds for legal representation, not uncertified administrative tasks. | | |
| 322. | 6/17/26 | DSS Heinze | Facilitated IEP meeting | The LEA responds to Parent A.B. by constructively denying all of his requests regarding [E.B.-1] without PWNs, including rescheduling the aborted June 15 annual review meeting, delivering the audio and video recordings of such meeting, and delivering all student records required under state and federal laws.<br><br>DSS Heinze states the following on behalf of the LEA and attempts to move the discussion onto the annual review meeting of [E.B.-2] by discussing the annual review meeting of [E.B.-2] only:<br><br>"*Our goal remains to work collaboratively with you to develop an appropriate educational program for your child and to ensure that all members of the IEP team have an opportunity* | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees.<br><br>The LEA further retaliates by | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | *to participate in a constructive and student-focused discussion."*<br><br>*"In an effort to support meaningful parent participation and facilitate productive discussion among all members of the IEP team, the District has contacted the New Jersey Department of Education regarding the availability of a state-facilitated IEP meeting."*<br><br>By ignoring formal statutory demands and denying PWNs, the LEA uses performative "collaboration" to avoid answering for an unlawfully terminated meeting. | (i) ambushing Parent A.B. in a hostile meeting with M&W, PC, who was not on the Written Notice sent to Parent A.B. and was an unauthorized participant in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (ii) shrieking at Parent A.B. and making him feel verbally attacked and unsafe, and (iii) escorting Parent A.B. out of the high school with an armed police officer who was lying in wait in the next room immediately after Parent A.B. complained about the shrieking. | |
| 323. | 6/17/26<br><br>(five emails) | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. responds to Business Administrator Rinderknecht in a series of back-to-back emails expressing his dismay that **the LEA is completely out of control**, and copies the Child Study Teams, the LEA Safety Working Group, Superintendent Collazo, DSS Heinze, DSC Drumgoole, All Board Members, M&W, PC, Taylor Law, and the NJDOE OFAC Investigations Unit:<br><br>A. <u>Denial of Access to Case Managers to Create Hostile Environment</u><br><br>Parent A.B. is being forced to communicate with an administrator who shrieked at him when case managers are required to communicate with Parents under **N.J.A.C. 6A:14-3.2** because the LEA wants to sustain a hostile environment:<br><br>*"I do not understand why Director Heinze is still emailing me. I* | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees.<br><br>The LEA further retaliates by (i) ambushing Parent A.B. in | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

177

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | *listened to 13 minutes of audio where I am repeatedly exclaiming without raising my voice that the presence of your attorney, who was there in direct violation of the written notice under IDEA, is 'provoking me' and leading me to be 'very agitated.' I was under a lot of distress, which was compounded by the verbal attack of your shrieking administrator and the armed officer who entered the room. I need to understand if your attorney reacted to my obvious distress by standing up and walking straight at me from all the way across the room as the armed officer was approaching from the other side. Do you understand that purposefully creating the circumstances where a parent is physically arrested or gunned down might be bad for you from a risk management perspective?"*<br><br>B. Denial of Safe Environment for Parents (6 Parental Requests)<br><br>Parent A.B. requests that the LEA respond to the following **6 parental requests with respect to each disabled child.**<br><br>*June 22, 2026 Annual Review Meeting for [E.B.-2]*<br><br>1. No armed personnel<br>2. No yelling, no screaming, and no shrieking<br>3. No attendees other than the attendees enumerated in the written notice<br>4. The LEA will provide all student records required by state and federal laws<br>5. The LEA will provide all NJ P.L. 2025 c. 107 documents<br>6. The LEA will rescind the unconstitutional, retaliatory, and baseless cease-and-desists to allow my wife to attend<br><br>*TBD Date (prior to July 4, 2026) Annual Review Meeting for [E.B.-1]*<br><br>1. No armed personnel | a hostile meeting with M&W, PC, who was not on the Written Notice sent to Parent A.B. and was an unauthorized participant in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (ii) shrieking at Parent A.B. and making him feel verbally attacked and unsafe, and (iii) escorting Parent A.B. out of the high school with an armed police officer who was lying in wait in the next room immediately after Parent A.B. complained about the shrieking. | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | 2. No yelling, no screaming, and no shrieking<br>3. No attendees other than the attendees enumerated in the written notice<br>4. The LEA will provide all student records required by state and federal laws<br>5. The LEA will provide all NJ P.L. 2025 c. 107 documents<br>6. The LEA will rescind the unconstitutional, retaliatory, and baseless cease-and-desists to allow my wife to attend | | |
| | | | | C. Parent A.B. Confirms Participation in Meetings<br><br>Because of past attempts by the LEA to manipulate the written record, Parent A.B. specifies that he will participate in future meetings even if the LEA denies the 6 parental requests and the LEA attends such meetings armed with guns, shrieks, and unauthorized lawyers. | | |
| 324. | 6/18/26 | Superintendent Collazo | NJDOE OFAC: Imposing Detention on Parent | Superintendent Collazo responds to Parent A.B. by (a) denying the 6 parental requests listed above and (b) confirming that the Business Administrator believes the LEA being armed with guns, shrieks, and unauthorized participants at IEP meetings does not present risk-management issues:<br><br>"*Dear Mr. [B.],*<br><br>*I am responding on behalf of Mr. Rinderknecht.  Mr. Rinderknecht is not involved in your children's IEP process. Please direct future correspondence regarding these matters to Ms. Heinze, Director of Special Services.*<br><br>*Sincerely,*<br>*Diane Collazo*" | The LEA continues to violate state and federal laws by withholding mandatory student records and enforcing unconstitutional, retaliatory, and baseless cease-and-desists, which are designed to punish Parents by obstructing their participation and inflating their legal fees.<br><br>The LEA further retaliates by (i) ambushing Parent A.B. in a hostile meeting with M&W, PC, who was not on the Written Notice sent to Parent A.B. and was an | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | | unauthorized participant in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (ii) shrieking at Parent A.B. and making him feel verbally attacked and unsafe, and (iii) escorting Parent A.B. out of the high school with an armed police officer who was lying in wait in the next room immediately after Parent A.B. complained about the shrieking. | |
| 325. | 6/18/26 (three emails) | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. distributes an updated version of this *Violations of Laws Ledger* to:<br>1. Board Secretary Rinderknecht and All Board Members to enable a review of violations of laws;<br>2. Business Administrator Rinderknecht in his capacity as a fiduciary of the LEA as a corporate entity; and<br>3. The Child Study Teams for review and incorporation into the IEPs of [E.B.-1] and [E.B.-2] as a Parental Statement.<br><br>Parent A.B. copies Superintendent Collazo, DSS Heinze, DSC Drumgoole, the LEA Safety Working Group, and the NJDOE OFAC Investigations Unit. | The LEA continues its campaign of retaliation and intimidation by **refusing the 6 parental requests** for safe, data-driven annual review meetings: (1) no armed personnel, (2) no yelling, screaming, or shrieking, (3) no unauthorized participants in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (4) provision of all student records under N.J.A.C. 6A:32-7.5, N.J.A.C. 6A:14-2.9(b), 34 C.F.R. § 99.10, and 34 C.F.R. § 300.613, (5) provision of all NJ P.L. 2025 c.107 documents, and (6) no C&Ds | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | | to allow the mother to attend. | |
| 326. | 6/18/26 (three emails) | [Case Manager 2] [Case Manager 1] | Frontline | Approximately 15 minutes after receiving the **Violations of Laws Ledger**, [Case Manager 2] and [Case Manager 1] send back-to-back meeting notices to Parents through Frontline without any explanation. | The LEA continues its campaign of retaliation and intimidation by **refusing the 6 parental requests** for safe, data-driven annual review meetings: (1) no armed personnel, (2) no yelling, screaming, or shrieking, (3) no unauthorized participants in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (4) provision of all student records under N.J.A.C. 6A:32-7.5, N.J.A.C. 6A:14-2.9(b), 34 C.F.R. § 99.10, and 34 C.F.R. § 300.613, (5) provision of all NJ P.L. 2025 c.107 documents, and (6) no C&Ds to allow the mother to attend. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| | | | | [Case Manager 2] sends a meeting notice for the same date, time, and location as the previous meeting notice for the annual review meeting of [E.B.-2], without any explanation of why the LEA is sending a new notice for the same meeting. | | |
| | | | | [Case Manager 1] sends a new meeting notice for a continuation of the unlawfully aborted annual review meeting of [E.B.-1], without any explanation of whether Parent A.B. is being invited into another ambush with physical, armed aggression. | | |
| 327. | 6/18/26 (thirteen emails) | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. excoriates Athina Cornell, the M&W, PC partner in charge of IDEA, Eric Harrison, the M&W, PC partner in charge of the federal case, and Lester Taylor, the founding partner of Taylor Law, in a series of back-to-back emails for continuing to provoke Parent A.B. into a reaction while **the LEA is completely out of control**, and copies the Child Study Teams, the LEA Safety Working Group, Superintendent Collazo, DSS Heinze, DSC Drumgoole, Board Secretary and Business Administrator Rinderknecht, All Board Members, M&W, PC, Taylor Law, and the NJDOE OFAC | The LEA continues its campaign of retaliation and intimidation by **refusing the 6 parental requests** for safe, data-driven annual review meetings: (1) no armed personnel, (2) no yelling, screaming, or shrieking, (3) no | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | Investigations Unit:<br><br>1. **2:09 p.m.**: "*Dear Dr. [Case Manager 2], why did I just get a new meeting notice for a meeting that is already scheduled for Monday? In the name of all things holy, please let it be a legitimate reason instead of a new state or federal statutory violation requiring me to update the ledger. Come on man. Thanks, [Parent A.B.]*"<br><br>2. **2:58 p.m.**: "*Athina, can you please ghost-write emails for Director Heinze faster so that she can ghost-write emails for the case manager faster so that Dr. [Case Manager 2] can get back to me? Thanks, [Parent A.B.]*"<br><br>3. **3:24 p.m.**: "*Folks, what is this? I prefer the illiterate lawyers at this point, at least they fire off C&Ds in a split second. Athina, just pick up the goddamn phone and tell [[Case Manager 2]] why I got a new notice. [Parent A.B.]*"<br><br>4. **3:44 p.m.**: "***Dear Army of 69 Lawyers**: If the case manager tells me one thing now, and then he tells me another thing an hour later, who really cares as long as he is acting in good faith? However, if you are continuing to do nefarious things behind the scenes and using the case managers to do it, then can you please get more organized on your end so that I do not keep blaming these guys at the ground level for actions and inactions that are completely out of their control? [Parent A.B.]*"<br><br>5. **4:05 p.m.**: "*Dear Dr. [Case Manager 2], I am sorry I am really not trying to create work for you prior to a 3-day weekend, but **I reject your updated notice and request a rescheduling unless the reason for the revised notice can be explained and is not related to anything that requires my consent**.* | unauthorized participants in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (4) provision of all student records under N.J.A.C. 6A:32-7.5, N.J.A.C. 6A:14-2.9(b), 34 C.F.R. § 99.10, and 34 C.F.R. § 300.613, (5) provision of all NJ P.L. 2025 c.107 documents, and (6) no C&Ds to allow the mother to attend. | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | *Thanks, [Parent A.B.]"* | | |
| | | | | 6. **4:11 p.m.**: "*Dear Mr. Rinderknecht: I am starting to feel like you are as annoyed as I am with the inefficiency of all of this as a numbers guy. Do you want to take up my advice from March 20 and hire a few more law firms and lawyers? You can keep the current cohort for non-legal thuggery; they can show up at IEP meetings and order me around; they scare my wife with C&Ds, etc. But you need a proper crew to keep up with all of this for the next four years. Have a great weekend. Very best, [Parent A.B.]"* | | |
| | | | | 7. **4:22 p.m.**: "*Dear Superintendent Collazo: Are you confused? Thanks, [Parent A.B.]"* | | |
| | | | | 8. **5:06 p.m.**: "*Athina, are you planning on holding a meeting without me on Monday? Please ghost-write the response for Director Heinze <u>now</u> for her to let me know. [Parent A.B.]"* | | |
| | | | | 9. **5:09 p.m.**: "*Eric, if you have some free time from making fun of FERPA and engaging in overall incompetence, can you please yank the leash of your partner now so that she does her job and responds to the LEA instead of creating more and more difficult circumstances for her client? [Parent A.B.]"* | | |
| | | | | 10. **5:25 p.m.**: "*Folks, I was having a pretty peaceful day after sending my last email and closing up this chain yesterday. Where is this nonsense coming from? [Parent A.B.]"* | | |
| | | | | 11. **5:38 p.m.**: "*Athina, this is not smart lawyering, this is plain dumb. You know I am going to show up at the school at exactly 1:15pm on Monday with my coffee and laptop if I do not hear back because I know for a fact that you will not recognize my demand for an explanation or my rescheduling request. So* | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | *what is the purpose of the notice today other than annoying everybody and wasting the resources of the LEA? Why is Dr. [Case Manager 2] unable to send me a cover email just laying out his thoughts on why he is sending a second notice hours prior to the [end of the] last business day before the meeting? [Parent A.B.]"* | | |
| | | | | 12. **5:40 p.m.**: *"Lester, I almost forgot about you, do you want to prescribe another C&D proscribing my speech since I sent too many emails today? That train is never late! Do you know what the hell is going on? [Parent A.B.]"* | | |
| | | | | 13. **5:41 p.m.**: *"**All 69 of you are useless**. Let this be the final email in this chain. Thanks, [Parent A.B.]"* | | |
| 328. | 6/19/26 (two emails) | Parent A.B. | Parental Statement | Parent A.B. requests that Board Secretary and Business Administrator Rinderknecht and All Board Members **notify Parent A.B. ahead of time if there are any changes to the LEA denying the 6 parental requests** for: <br><br> 1. No armed personnel; <br> 2. No yelling, screaming, or shrieking; <br> 3. No unauthorized participants in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322; <br> 4. Provision of all student records under N.J.A.C. 6A:32-7.5, N.J.A.C. 6A:14-2.9(b), 34 C.F.R. § 99.10, and 34 C.F.R. § 300.613; <br> 5. Provision of all NJ P.L. 2025 c. 107 documents; and <br> 6. No C&Ds, which would allow the mother to attend. | The LEA continues its campaign of retaliation and intimidation by **refusing the 6 parental requests** for safe, data-driven annual review meetings: (1) no armed personnel, (2) no yelling, screaming, or shrieking, (3) no unauthorized participants in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (4) provision of all student records under N.J.A.C. 6A:32-7.5, N.J.A.C. 6A:14-2.9(b), 34 C.F.R. § 99.10, and 34 C.F.R. § 300.613, (5) provision of all NJ P.L. 2025 c.107 | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | | documents, and (6) no C&Ds to allow the mother to attend. | |
| 329. | 6/22/26 | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Following his **cardiology** appointment on the morning of June 22, 2026, Parent A.B. (a) rejects the two meeting notices dated June 18, 2026 from [Case Manager 2] and [Case Manager 1], and (b) requires formal PWNs pursuant to 34 C.F.R. § 300.503 prior to scheduling or participating in any further annual review meetings. These PWNs must describe:<br><br>1. Why the LEA utilized an armed officer to forcibly eject Parent A.B. from an active annual review meeting in response to his questions about unauthorized meeting participants, missing student records, and hostile verbal and physical escalations by the administration; and<br><br>2. Why the LEA is refusing to grant an affirmative response to the 6 parental safety and procedural requests submitted for future meetings.<br><br>**Parents remain ready to proceed with safe, data-driven annual review meetings immediately upon the written agreement of the LEA to the 6 safety and procedural requests.** | The LEA continues its campaign of retaliation and intimidation by **refusing the 6 parental requests** for safe, data-driven annual review meetings: (1) no armed personnel, (2) no yelling, screaming, or shrieking, (3) no unauthorized participants in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (4) provision of all student records under N.J.A.C. 6A:32-7.5, N.J.A.C. 6A:14-2.9(b), 34 C.F.R. § 99.10, and 34 C.F.R. § 300.613, (5) provision of all NJ P.L. 2025 c.107 documents, and (6) no C&Ds to allow the mother to attend. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
| 330. | 6/22/26 | [Case Manager 2] | Meeting 6/22/26 | In blatant disregard of the cardiac warning and the demand for mandated PWNs, Director Heinze directs [Case Manager 2] to feign ignorance and attempt to proceed with the 1:15 p.m. meeting without Parent A.B.<br><br>At **1:33 p.m.**, [Case Manager 2] sends the following message to Parent A.B., attempting to bait Parent A.B. into entering a dangerous environment: | The LEA continues its campaign of retaliation and intimidation by **refusing the 6 parental requests** for safe, data-driven annual review meetings: (1) no armed personnel, (2) no yelling, screaming, or shrieking, (3) no | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | "*Good afternoon Mr. [B.],*<br><br>***My understanding was that you were attending the meeting in person. We plan to start shortly.*** *I am including the meeting link below if you would like to participate virtually.*"<br><br>This correspondence intentionally ignores that offering a virtual link does not cure the ongoing refusal to agree to the 6 safety and procedural conditions. Even if a virtual setting mitigates the threat of armed physical aggression, proceeding virtually without the other requests remains a direct denial of the right to meaningful parental participation under the IDEA. | unauthorized participants in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (4) provision of all student records under N.J.A.C. 6A:32-7.5, N.J.A.C. 6A:14-2.9(b), 34 C.F.R. § 99.10, and 34 C.F.R. § 300.613, (5) provision of all NJ P.L. 2025 c.107 documents, and (6) no C&Ds to allow the mother to attend. | |
| 331. | 6/22/26 to 6/23/26<br><br>(eight emails) | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. distributes an updated version of this ***Violations of Laws Ledger***, which now includes a transcript of the June 15, 2026 unconstitutional eviction of Parent A.B. from a federally mandated meeting, to the following recipients, and copies the NJDOE OFAC Investigations Unit:<br>1. Board Secretary Rinderknecht and All Board Members to enable a review of violations of laws;<br>2. Business Administrator Rinderknecht in his capacity as a fiduciary of the LEA as a corporate entity; and<br>3. The Child Study Teams for review and incorporation into the IEPs of [E.B.-1] and [E.B.-2] as a Parental Statement.<br><br>Parent A.B. reiterates his requirement for formal PWNs pursuant to 34 C.F.R. § 300.503 prior to scheduling or participating in any further annual review meetings. These PWNs must describe:<br>1. Why the LEA utilized an armed officer to forcibly eject Parent A.B. from an active annual review meeting in response to his questions about unauthorized meeting participants, missing student records, and hostile verbal and physical escalations by the administration; and<br>2. Why the LEA is refusing to grant an affirmative response to the | The LEA continues its campaign of retaliation and intimidation by **refusing the 6 parental requests** for safe, data-driven annual review meetings: (1) no armed personnel, (2) no yelling, screaming, or shrieking, (3) no unauthorized participants in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (4) provision of all student records under N.J.A.C. 6A:32-7.5, N.J.A.C. 6A:14-2.9(b), 34 C.F.R. § 99.10, and 34 C.F.R. § 300.613, (5) provision of all NJ P.L. 2025 c.107 documents, and (6) no C&Ds | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

186

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | 6 parental safety and procedural requests submitted for future meetings. | to allow the mother to attend. | |
| | | | | Parent A.B. reiterates that Parents remain ready to proceed with safe, data-driven annual review meetings immediately upon the written agreement of the LEA to the 6 safety and procedural requests. | | |
| | | | | Parent A.B. outlines the various violations of laws with respect to the June 15, 2026 unconstitutional eviction of Parent A.B. from a federally mandated meeting:<br><br>1. Constitutional Violations<br>　a. ***First Amendment Retaliation***: The LEA weaponizes an armed police officer to physically evict Parent A.B. because Parent A.B.: (i) exercises his protected right to criticize public officials and their billing motives; (ii) objects to the presence of an unauthorized attorney who is there in violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. §300.322; and, (iii) requests student records that Parent A.B. is entitled to by state and federal laws.<br>　b. ***Fourth Amendment Unlawful Seizure***: Outside counsel, a private citizen with no statutory authority, utilizes the threat of an armed police officer to force a non-threatening individual out of a federally mandated meeting. The sequence of repeated commands ("*Last time, I'm asking you*," "*Step out*"), backed by an armed police officer, forces the submission of Parent A.B.<br>　c. ***Section 1983 Individual Liability***: Because the eviction was a retaliatory response to protected speech and is documented on tape, Qualified Immunity is voided. School officials and the private attorney face direct personal financial exposure, with the private attorney acting under the "color of state law" by directing an armed police officer.<br><br>2. IDEA Violations; FCA Violations<br>　a. ***False Claims Act (FCA) Violations / Fraud***: | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | i. Prior to the June 15, 2026 annual review meeting, Athina Cornell of M&W, PC wrote the following when responding to requests for raw data to understand the 80% "Achieved" or "Progressed Satisfactorily" rates in progress reports: "*Questions regarding the specific educational information used to evaluate individual goals are most appropriately addressed by the teachers and related service providers responsible for implementing and monitoring those goals*." <br><br> ii. During the June 15, 2026 annual review meeting, the DSS Heinze actively coaches a subordinate on a hot mic to affirm data exists ("*It's okay to say yes*"). The Department of Special Services likely does not track the data and is attempting to shift the blame to lower-level employees and contractors. <br><br> iii. The LEA receives federal **IDEA Part B grants** and bills **Medicaid** for related services based on potentially unsupported data points. Fabricating or **even estimating** metrics to maintain the appearance of compliance constitutes a material misrepresentation and is fraud. <br><br> b. ***Denial of Meaningful Parental Participation:*** The LEA evicts an equal member of the Child Study Team, Parent A.B., for asking mathematical data questions ("*Do you have the date and time-stamped logs or not? Yes or no?*"). Such an egregious act is compounded by the LEA holding a unilateral meeting on June 22, 2026 while blatantly ignoring the statutory demand for a Prior Written Notice (PWN) by Parent A.B. and his written confirmation that "*Parents remain ready to proceed with safe, data-driven annual review meetings immediately upon the written agreement of the LEA to the 6 safety and procedural requests*." <br><br> c. **Predetermination**: Holding an annual review without providing student records or a draft IEP beforehand (Parent A.B. stating, | | |

188

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|----------------------------------|----------|-------------------|
| | | | | "*Nothing was given to me before the meeting*") and reading off predetermined continuations of services (Occupational Therapist [Occupational Therapist] stating, "*I would just continue next year... same as this year*") proves the LEA was entirely closed to parental input. When Parent A.B. asks "*How about I sit and not say anything?*" while being unconstitutionally evicted, Athina Cornell of M&W, PC responds "*How about you step out?*" with the threat of an armed police officer backing her.<br><br>3. Misconduct (The "Cover-Up" Liabilities)<br>   a. ***Manufacturing a Pretext for Unconstitutional Eviction / Conspiracy***: LEA staff transparently attempted to manufacture a hostile work environment defense on the record (Speech Therapist [Speech Therapist] stating, "*I feel very uncomfortable*") immediately after Parent A.B. cited a severe safety failure in the LEA (Parent A.B. stating while looking at Athina Cornell of M&W, PC, "*A student was stabbed 7 times in the bathroom... You do not care about any of that. I do.*"), proves his comments were an institutional critique of administrative failure rather than a personal threat to the staff, and that staff were likely trained on using HR jargon to create a pretext for unconstitutional eviction.<br>   b. ***Suppression of Evidence***: Outside counsel verbally affirms on the record that she wanted Parent A.B. removed to prevent him from playing back the audio of DSS Heinze's unprofessional escalation (Parent A.B. stating, "*Would you like me to play the tape?*" / Athina Cornell of M&W, PC responding, "*I do not. Please step out.*").<br>   c. ***Evidentiary Fraud***: Directing [Case Manager 2] to draft a bad-faith email on June 22, 2026 ([Case Manager 2] writing, "*My understanding was that you were attending*") to falsely frame Parent A.B. as a no-show, despite possessing his 10:27 a.m. timestamped refusal to attend under unsafe conditions, is the | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
|  |  |  |  | definition of suborning a false government record. |  |  |
| 332. | 6/24/26 to 6/25/26 (seven emails) | [Case Manager 2] | Frontline (5)<br><br>[E.B.-1] Proposed IEP<br><br>[E.B.-2] | [Case Manager 2] distributes a progress update from [Private Speech and Social Skills Provider] to Parents. | The LEA continues its campaign of retaliation and intimidation by **refusing the 6 parental requests** for safe, data-driven annual review meetings: (1) no armed personnel, (2) no yelling, screaming, or shrieking, (3) no unauthorized participants in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (4) provision of all student records under N.J.A.C. 6A:32-7.5, N.J.A.C. 6A:14-2.9(b), 34 C.F.R. § 99.10, and 34 C.F.R. § 300.613, (5) provision of all NJ P.L. 2025 c.107 documents, and (6) no C&Ds to allow the mother to attend. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |
|  |  |  |  | [Case Manager 1] distributes an IEP for [E.B.-1] based on the invalid and predetermined June 15, 2026 annual review meeting, despite Parent A.B. being unconstitutionally evicted from such meeting by an armed police officer. |  |  |
|  |  |  |  | [Case Manager 1] distributes session notes from Occupational Therapist [Occupational Therapist] without the mathematical raw data that supports the 80% progress goals in the IEP of [E.B.-1]. |  |  |
|  |  |  |  | [Case Manager 1] sends a cover email to Parent A.B. that does not explain if anything in the IEP of [E.B.-1] changed compared to the prior IEP. [Case Manager 1] includes the audio of the invalid and predetermined June 15, 2026 annual review meeting of [E.B.-1]. |  |  |
|  |  |  |  | [Case Manager 2] distributes an IEP for [E.B.-2] based on the invalid and predetermined June 22, 2026 annual review meeting, which Parent A.B. had rejected because of unsafe conditions after his morning cardiology appointment. |  |  |
|  |  |  |  | [Case Manager 2] distributes session notes from Occupational Therapist [Occupational Therapist] without the mathematical raw data that supports the 80% progress goals in the IEP of [E.B.-2]. |  |  |
|  |  |  |  | [Case Manager 2] sends a cover email to Parent A.B. that does not explain if anything in the IEP of [E.B.-2] changed compared to the prior IEP. [Case Manager 1] includes the audio of the invalid and predetermined June 22, 2026 annual review meeting of [E.B.-2]. |  |  |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| 333. | 6/25/26 (nine emails) | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. **responds to the PWNs of [E.B.-2] and [E.B.-1]** with various requests and rebuttals, copying Board Secretary Rinderknecht, All Board Members, the Child Study Teams, the LEA Safety Working Group, and the NJDOE OFAC Investigations Unit.<br><br>A. Requests Regarding the PWN of [E.B.-1]<br>  1. Please attach the 200-page Parental Statement as an Appendix and resend the document through Frontline.<br>  2. Please explain the changes to the IEP.<br>  3. Please provide a PWN explaining why the LEA is refusing to grant an affirmative response to the **6 parental safety and procedural requests** submitted for future meetings:<br>    (1) No armed personnel;<br>    (2) No yelling, screaming, or shrieking;<br>    (3) No unauthorized participants in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322;<br>    (4) Provision of all student records under N.J.A.C. 6A:32-7.5, N.J.A.C. 6A:14-2.9(b), 34 C.F.R. § 99.10, and 34 C.F.R. § 300.613;<br>    (5) Provision of all NJ P.L. 2025 c. 107 documents; and<br>    (6) No C&Ds, which would allow the mother to attend.<br>  4. Parents remain ready to proceed with a safe, data-driven annual review meeting <u>immediately</u> upon the written agreement of the LEA to the 6 safety and procedural requests.<br><br>B. Rebuttals Regarding the PWN of [E.B.-1]<br>  1. The PWN states: "*On the morning of June 15, 2026 prior to the IEP meeting, Dr. Heinze provided written responses to those questions and advised Mr. [B.] that Athina Cornell, Esq., Special Education Counsel for the District, would be attending the meeting.*"<br>    a. Parent A.B. responds that instead of reading the body of the email carefully, he quickly downloaded the 3 attachments from the LEA and began preparing | The LEA continues its campaign of retaliation and intimidation by **refusing the 6 parental requests** for safe, data-driven annual review meetings: (1) no armed personnel, (2) no yelling, screaming, or shrieking, (3) no unauthorized participants in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (4) provision of all student records under N.J.A.C. 6A:32-7.5, N.J.A.C. 6A:14-2.9(b), 34 C.F.R. § 99.10, and 34 C.F.R. § 300.613, (5) provision of all NJ P.L. 2025 c.107 documents, and (6) no C&Ds to allow the mother to attend. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | responses, which is a natural reaction in response to the more than 30 pages of documents, including a brand new agenda that Athina Cornell of M&W, PC dumped on Parent A.B. approximately 3 hours before the annual review meeting at 10:12 a.m.<br>b. The fact that the email from the LEA contained the sentence, "*Please also be advised that Athina Cornell, Esq., Special Education Counsel for the District, will be attending today's meeting*," buried in paragraph no. 7 at the bottom of the email is **legally irrelevant**. Athina Cornell of M&W, PC was **not listed on the Notice of Meeting** mandated by the IDEA.<br>2. The PWN states: "*On Saturday June 13, 2026, at approximately 5:29 p.m., Mr. [B.] submitted an 11-page agenda for discussion. On Sunday June 14, 2026, at approximately 3:10 p.m., he submitted additional questions related to the proposed agenda.*"<br>a. The parent submitted these documents, namely the Agenda and Questions List, because the Superintendent, the Director of Special Services, and the Case Manager actively pursued a strategy of feigning confusion and incompetence for the past three years upon the advice of counsel.<br>b. Every single item in the Agenda and Questions List was previously raised by Parent A.B. in various emails to the LEA, as memorialized in this ***Violations of Laws Ledger***, and Parent A.B. wanted to prevent school officials and their lawyers from arguing that they are in a state of perpetual "confusion," "uncertainty," and "misunderstanding," to directly quote Superintendent Collazo in her prior email.<br>3. The PWN states: "*At the outset of the June 15, 2026 annual review meeting, Mr. [B.] stated that he was attending 'under protest' and declined to sign the attendance sheet.*" | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|----------------------------------|----------|-------------------|
| | | | | a.  The audio recording submitted by the LEA proves Parent A.B. stated he was attending "under protest" only after the unauthorized participant under the Notice of Meeting, Athina Cornell of M&W, PC, refused to leave the meeting.<br>b.  The staff member at the front desk and the special education teacher who greeted Parent A.B. at the front desk are witnesses that Parent A.B. was all smiles prior to entering the room. Upon entering the room, Parent A.B. looked around the room and said "*My favorite people! How are you? Great to see all of you!*" to the teachers.<br>c.  A few minutes later, after counsel for the LEA stood up and introduced herself, Parent A.B. said, "*What are you doing here?*" in a state of complete shock. After the unauthorized participant under the Notice of Meeting refused to leave, Parent A.B. objected and stated that he was attending "under protest."<br>4.  The PWN states: "*For **approximately 45 minutes**, Mr. [B.] continued to object to the meeting process and the attendance of District counsel. During this time, Mr. [B.] repeatedly interrupted District staff and other participants and spoke over team members while they attempted to proceed with the annual review.*"<br>    a.  This statement of the LEA is a **complete fabrication**. Parent A.B. was unconstitutionally evicted from the meeting **exactly 25 minutes** after the meeting started.<br>    b.  The meeting started at 1:15 p.m., and Parent A.B. sent a detailed email to the NJDOE OFAC Investigations Unit at exactly 1:51 p.m. after being removed from the building by an armed police officer.<br>    c.  The audio recording of the LEA explicitly demonstrates that Parent A.B. was unconstitutionally evicted by an armed police officer 25 minutes after the meeting | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
|  |  |  |  | started. |  |  |

Unique Factual / Procedural Issue (continued):

d. A significant portion of such 25 minutes revolves around requests by Parent A.B. for raw data, meaning the amount of time Parent A.B. actually spent objecting was **approximately 19 minutes**.

5. The PWN states: "*Mr. [B.] repeatedly objected to the attendance of District counsel and indicated that he did not wish to proceed with the meeting while counsel was present. Due to his unwelcome behavior, Mr. [B.] was asked to leave the meeting. … After repeated efforts to proceed with the meeting were unsuccessful, assistance was requested from the School Resource Officer and Mr. [B.] was escorted from the building.*"

   a. The above description from the LEA is consistent with First Amendment Retaliation, Fourth Amendment Unlawful Seizure, and Section 1983 Liability. The armed officer explicitly stated that he did not feel threatened at any point by either Parent A.B. or his coffee and laptop: "*No man, but they don't want you there, you know.*"

   b. The LEA is not permitted to unconstitutionally evict any parent from a federally mandated meeting with the threat of an armed officer because the parent is: (i) exercising his protected right to criticize school officials and the billing motives of their attorneys; (ii) objecting to the presence of an unauthorized attorney who is at the meeting in violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. §300.322, and (iii) requesting student records that such a parent is entitled to by state and federal laws.

6. The PWN states: "*The District also advised Mr. [B.] on multiple occasions that his concerns had been received, that they would be included as an appendix to the IEP, and that the District would be willing to reconvene another meeting at a*

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | *later date if additional discussion was necessary.*"<br><br>  a. As a factual matter, the LEA did not include the Parental Statement as an appendix to the IEP, which is why in one of his rebuttal emails on June 25, 2026, Parent A.B. requested that the LEA include the Parental Statement as an appendix to the IEP and resend the entire document, meaning the IEP plus the Parental Statement, through Frontline.<br><br>  b. The LEA repeatedly pushed back against postponing the meeting to a later date in response to Parent A.B. stating, "*And honestly I don't see what the problem is with postponing this meeting so that I can bring an attorney for [E.B.-1]. Ms. Hienze, why can't I bring my own attorney for [E.B.-1] for this IEP meeting? That's just really strange to me.*" The unauthorized participant under the Notice of Meeting, Athina Cornell of M&W, PC, repeatedly responded with, "Your objection has been noted," and DSS Heinze repeatedly cut off [Case Manager 1] and responded with, "*We are continuing!*"<br><br>7. The PWN states, in regards to a unilaterally scheduled prior meeting: "*An annual review meeting was later scheduled for June 10, 2026; however, that meeting was rescheduled at the parents' request.*"<br><br>  a. This **Violations of Laws Ledger** extensively discusses the fact that the LEA scheduled the June 10, 2026 meeting unilaterally in violation of state and federal legal mandates to hold such meetings at mutually agreed dates and times with Parents.<br><br>8. The PWN states: "*The District also offered to participate in a Facilitated IEP Meeting through the New Jersey Department of Education. However, the parents did not respond to the NJDOE representative, as of the time of this notice, to confirm or reject the facilitated IEP meeting.*"<br><br>  a. This statement of the LEA is a **complete fabrication**. A | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | facilitated IEP meeting was not offered for [E.B.-1] at any time. DSS Heinze offered a facilitated IEP meeting for [E.B.-2] and copied [Case Manager 2] only, not [Case Manager 1].<br>   b. The NJDOE representative confirmed via email that the facilitated IEP meeting was being proposed with respect to the previously scheduled Monday afternoon meeting of [E.B.-2] only.<br>9. The PWN states: "*The district remains open to reconvening a follow up IEP meeting.*"<br>   a. What is stopping the LEA from accepting the perfectly reasonable **6 safety and procedural requests** of Parents and holding the annual review meeting with Parents in attendance?<br>10. The PWN states: "*Grade 11: [Advanced Course]*" and is missing a Spanish course.<br>   a. This ***Violations of Laws Ledger*** has an extensive discussion regarding [Advanced Course], particularly with respect to why [E.B.-1] is required to take such a course as a STEM student. [E.B.-1] rejected such a course in favor of STEM classes multiple times.<br>   b. The LEA needs to provide a rational explanation to the 12 questions of Parents in this ***Violations of Laws Ledger***, particularly because some of the previous answers provided by the LEA required [E.B.-1] to accept additional burdens without support.<br>   c. Why is Spanish missing for 11th grade?<br>11. Parent A.B. requests all of the raw data for all of the goals in pages 28 to 30. | | |
| | | | | C. <u>Requests Regarding the PWN of [E.B.-2]</u><br>  1. Please explain the changes to the IEP.<br>  2. Please provide a PWN explaining why the LEA is refusing to grant an affirmative response to the **6 parental safety and** | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | **procedural requests** submitted for future meetings:<br>(1) No armed personnel;<br>(2) No yelling, screaming, or shrieking;<br>(3) No unauthorized participants in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322;<br>(4) Provision of all student records under N.J.A.C. 6A:32-7.5, N.J.A.C. 6A:14-2.9(b), 34 C.F.R. § 99.10, and 34 C.F.R. § 300.613;<br>(5) Provision of all NJ P.L. 2025 c. 107 documents; and<br>(6) No C&Ds, which would allow the mother to attend.<br>3. Parents remain ready to proceed with a safe, data-driven annual review meeting <u>immediately</u> upon the written agreement of the LEA to the 6 safety and procedural requests.<br><br>D. <u>Rebuttals Regarding the PWN of [E.B.-2]</u><br>1. The PWN states: "*Although the parents did not attend the June 22, 2026 meeting, the District provided a virtual option at the time of the meeting so that they could participate if they chose to do so.*"<br>　　a. Directing [Case Manager 2] to draft a bad-faith email on June 22, 2026 ([Case Manager 2] writing, "*My understanding was that you were attending*") to falsely frame Parent A.B. as a no-show, despite possessing his 10:27 a.m. timestamped refusal to attend under unsafe conditions, is the definition of suborning a false government record.<br>　　b. Parents remain ready to proceed with a safe, data-driven annual review meeting IMMEDIATELY upon the written agreement of the LEA to the 6 safety and procedural requests.<br>2. The PWN states: "*The District remains willing to reconvene the IEP team if additional discussion is necessary.*"<br>　　a. Parents remain ready to proceed with a safe, data-driven annual review meeting IMMEDIATELY upon the | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | written agreement of the LEA to the 6 safety and procedural requests.<br><br>3.  The PWN states: "*Personal Aide: Individual*"<br>    a.  The LEA assigned a personal aide to [E.B.-2] during the 2025 annual review meeting, despite his neuropsychological report calling for a special education teacher, because the LEA did not want to expend the resources for a special education teacher in Spanish and other electives.<br>    b.  Parent A.B. does not understand why the personal aide was kept in place for next year. What is a personal aide supposed to do at a high school to preempt maladaptive dysregulatory behaviors and provide academic structuring and support?<br>    c.  During the 2025 annual review meeting of [E.B.-2], DSS Heinze requested that Parents pay for special education teachers. Parent A.B. requests that DSS Heinze reiterate the same request explicitly if payment is the issue? | | |
| 334. | 6/26/26 to 6/28/26 (six emails) | Parent A.B. | NJDOE OFAC: Imposing Detention on Parent | Parent A.B. **responds to the audio recordings of the annual review meetings of [E.B.-1] and [E.B.-2]** that the LEA held without Parents, copying Board Secretary Rinderknecht, All Board Members, the Child Study Teams, the LEA Safety Working Group, and the NJDOE OFAC Investigations Unit:<br><br>A.  Audio Recording of [E.B.-1]'s Annual Review Meeting<br><br>1. *Falsifying a Federal Record*<br><br>After the unconstitutional eviction of Parent A.B., [Case Manager 1] continues the annual review meeting by falsifying the federal record, saying "*Mr. [B.] left the meeting*" to describe a parent being forcibly evicted by armed police. | The LEA continues its campaign of retaliation and intimidation by **refusing the 6 parental requests** for safe, data-driven annual review meetings: (1) no armed personnel, (2) no yelling, screaming, or shrieking, (3) no unauthorized participants in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (4) provision of all | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | Under IDEA, a Child Study Team can legally proceed with a meeting if a parent abandons the process or refuses to participate. By saying Parent A.B. "left," [Case Manager 1] is trying to fraudulently trigger the "parent walked out" protocol upon the advice of counsel.<br><br>The audio recording demonstrates that the LEA weaponized municipal law enforcement to strip away the statutory right of Parent A.B. to participate. As Parent A.B. was being forcibly evicted by armed police, Parent A.B. asked, "*How about I sit and not say anything?*" Athina Cornell from M&W, PC responded, "*How about you step out?*"<br><br>2. *Denial of Accommodations and Modifications*<br><br>The Child Study Team did not discuss how the proposed academic schedule of [E.B.-1] would incorporate accommodations and modifications in the absence of Study Hall. Study Hall was discussed extensively at the prior 2025 annual review meeting, but was completely ignored at the 2026 annual review meeting in the absence of Parents.<br><br>The assessments of [E.B.-1] were "staggered" during the 2025-2026 academic year, meaning tests, quizzes, and writing assignments were limited to one per day and were broken up into several days. The "staggered" approach (a) prevented [E.B.-1] from developing severe migraines and (b) allowed [Special Education Teacher] to implement accommodations and modifications during assessments, but without (c) [E.B.-1] missing any classroom instruction time.<br><br>The "staggered" approach was possible because of the existence of Study Hall, meaning [E.B.-1] would complete assessments during Study Hall with [Special Education Teacher]. The Child Study Team did not discuss how the absence of Study Hall would impact (a) migraines, (b) accommodations and modifications, and (c) any | student records under N.J.A.C. 6A:32-7.5, N.J.A.C. 6A:14-2.9(b), 34 C.F.R. § 99.10, and 34 C.F.R. § 300.613, (5) provision of all NJ P.L. 2025 c.107 documents, and (6) no C&Ds to allow the mother to attend. | |

199

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | classroom instruction time.<br><br>Ironically, during the yearly pediatric visit of [E.B.-1] on June 29, 2026, the pediatrician of [E.B.-1] recommended that Parents speak to the developmental pediatrician of [E.B.-1] regarding removing unnecessary homework as an IEP modification in order to incorporate a low-stimulation, downtime routine into his daily pre-bedtime schedule.<br><br>3. *Denial of Socialization at School*<br><br>The Child Study Team did not incorporate any social activities at school into his IEP. For many years, the LEA has been giving [E.B.-1] a list of clubs and sports at the beginning of the year to check a box.<br><br>At the 2025 annual review meeting, Parents suggested forming a video game club. Public schools have widely adopted video games and esports clubs for students. Such programs cater not only to traditional students but also students with special needs who traditionally do not participate in other after-school activities.<br><br>Parents do not understand why Parents have to have the same conversation with the LEA every year. The IEP should address [E.B.-1] participating in at least one, possibly two school activities.<br><br>4. *The STEM Tax and the Advanced Waiver Ambush*<br><br>In response to the Agenda of Parent A.B., M&W, PC imposed a gag order banning a discussion of the STEM tax, the additional burden, and the advanced waiver at the 2026 annual review meeting. According to M&W, PC, "*course scheduling*" discussions are unrelated to the "*educational needs*" and the "*access to the curriculum*" of [E.B.-1]. | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | The IBO office in Washington D.C. confirmed that the IB Diploma for STEM students is intended to be fulfilled with STEM classes as electives. [E.B.-1] does not understand <u>why</u> [Guidance Counselor] and [Case Manager 1] enrolled him in two years of [Advanced Course] and II as electives. Requiring STEM students to take [Advanced Course] and Theory of Knowledge as independent studies in order to access a STEM curriculum at FLHS disproportionately negatively impacts [E.B.-1] under his neuropsychological report.<br><br>The LEA requested a private conversation with [E.B.-1] to "explain the additional tasks" (quoting DSS Heinze) required by the LEA, but Parents object to such a private conversation because the LEA is continuing to solicit advanced waivers from [E.B.-1] for STEM taxes and additional burdens.<br><br>5. *Denial of Raw Data; IDEA Part B and Medicaid Fraud*<br><br>Where is the raw data that mathematically supports the 80% "Achieved" or "Progressed Satisfactorily" rates in progress reports? The LEA receives federal IDEA Part B grants and bills Medicaid for related services based on potentially unsupported data points. Fabricating or even estimating metrics to maintain the appearance of compliance constitutes a material misrepresentation and is fraud.<br><br>6. *Denial of Compensatory Education Regarding Smartwatch Accommodations*<br><br>The Child Study Team did not discuss whether the student is entitled to compensatory education for six months of unlawfully denied smartwatch accommodations. | | |
| | | | | B. <u>Audio Recording of [E.B.-2]'s Annual Review Meeting</u><br><br>1. *Granting ICR in English; Denying ICR in Spanish* | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | What is the reason for granting [E.B.-2] in-class resource support in English but denying in-class resource support in Spanish?<br><br>During the 2025 annual review meeting, DSS Heinze asked Parents to pay for special education teachers. Not surprisingly, [E.B.-2] was denied a special education teacher in Spanish for the 2025-2026 academic year. Instead, the LEA provided a personal aide for [E.B.-2].<br><br>[E.B.-2] did not have any academic issues in Spanish during the 2025-2026 academic year because of his extensive Spanish studies in the summer of 2025, which amounted to nearly 120 hours of instruction in 8 weeks. However, the emotional frustrations of [E.B.-2] continued in his Spanish classroom during the 2025-2026 academic year. The neuropsychological needs of a rising high school student cannot be supported by a personal aide. The issue is discussed extensively in his neuropsychological report.<br><br>**A personal aide will serve as a source of stigmatization.** While the lack of certified teachers may justify a personal aide in kindergarten as a stopgap solution, moving forward with such a solution in high school is counterproductive and relies on the continuation of summer Spanish coursework at the expense of the Parents. How could a personal aide be appropriate for any elective in high school considering the neuropsychological report?<br><br>2. *Denial of Safety; Child Endangerment*<br><br>Why was [E.B.-2] disciplined without a meeting of the Child Study Team to determine if his behavior was a manifestation of his disability? Why did the LEA leave [E.B.-2] alone for two hours in an unstaffed high school to serve his detention on Saturday? Why preclude him from attending his Saturday session at [Private Speech and Social Skills Provider], where he is addressing some of the issues | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|-----------------------------------|----------|-------------------|
| | | | | that led to the discipline?<br><br>Parents do not understand how M&W, PC can impose a gag order banning a discussion of these issues in the Agenda distributed by Parent A.B.<br><br>3. *Denial of Accommodations and Modifications*<br><br>During the meeting, DSC Drumgoole said that the course schedule of [E.B.-2] was very heavy because students rarely take [Advanced Course] and [Advanced Course] at the same time.<br><br>Parents note that there is a 20% to 25% overlap between [Advanced Course] and [Advanced Course]. Removing [Advanced Course], which is a two-period course, from the course schedule of [E.B.-2] would require including two additional courses that involve academic work unrelated to [Advanced Course]. Accordingly, the purported benefits of having [E.B.-2] drop [Advanced Course] would be realized only if [Advanced Course] is replaced by Study Hall and a course that [E.B.-2] can easily navigate.<br><br>Parents request that the Child Study Team discuss such issues and focus on whether Study Hall is necessary to implement the accommodations and modifications of [E.B.-2] without missing out on any classroom instruction time.<br><br>4. *Denial of Raw Data; IDEA Part B and Medicaid Fraud*<br><br>Where is the raw data that mathematically supports the 80% "Achieved" or "Progressed Satisfactorily" rates in progress reports? The LEA receives federal IDEA Part B grants and bills Medicaid for related services based on potentially unsupported data points. Fabricating or even estimating metrics to maintain the appearance of compliance constitutes a material misrepresentation and is fraud. | | |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|-----|------|--------|---------|----------------------------------|----------|-------------------|
| | | | | 5. *Denial of Compensatory Education Regarding Smartwatch Accommodations*<br><br>The Child Study Team did not discuss whether the student is entitled to compensatory education for six months of unlawfully denied smartwatch accommodations. | | |
| 335. | 6/30/26 | DSS Heinze | Response to Your Correspondence | The LEA responds to Parents by denying all of the requests of Parents and by inviting Parents to file for due process if Parents want to discuss the IEPs constructed by the LEA.<br><br>A few responses of the LEA worth separately highlighting are listed below:<br><br>1. *Admission of Medicaid / IDEA Funding Fraud*<br><br>The LEA states that the LEA is not required to "*compile information that does not otherwise exist*" when asked for raw data tracking IEP goals. The LEA is effectively admitting that the LEA does not possess the legally required daily or weekly progress metrics. This serves as documented evidence that the LEA lacks the requisite raw data to substantiate its IEP progress reports, exposing the district to severe False Claims Act liability for receiving IDEA funds and billing Medicaid (SEMI) without the mandated supporting metrics.<br><br>By formally stating that the LEA lacks the underlying raw data to track IEP goals, the LEA has effectively destroyed any evidentiary ability to prove the LEA provided FAPE for either [E.B.-2] or [E.B.-1].<br><br>2. *Denying Parental Participation to Deny FAPE*<br><br>The LEA actively weaponizes the cease-and-desists and the armed eviction to deny FAPE to [E.B.-2] and [E.B.-1]. The LEA maintains that | The LEA continues its campaign of retaliation and intimidation by **refusing the 6 parental requests** for safe, data-driven annual review meetings: (1) no armed personnel, (2) no yelling, screaming, or shrieking, (3) no unauthorized participants in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322, (4) provision of all student records under N.J.A.C. 6A:32-7.5, N.J.A.C. 6A:14-2.9(b), 34 C.F.R. § 99.10, and 34 C.F.R. § 300.613, (5) provision of all NJ P.L. 2025 c.107 documents, and (6) no C&Ds to allow the mother to attend. | Parent A.B. is forced to communicate with the LEA under the legal risk of both Parents being formally accused of harassment or obstructionism because the highest authority in the LEA issued three cease-and-desists against Parents. |

| No. | Date | Author | Subject | Unique Factual / Procedural Issue | Response | Discussion Status |
|---|---|---|---|---|---|---|
| | | | | the annual review meetings excluding the Parents were legally valid, and that the Parents can hire a lawyer and file for due process if the Parents disagree with the IEPs constructed at such meetings.<br><br>Specifically, the LEA states that requests to provide a certified special education teacher instead of a personal aide for the electives of [E.B.-2] "*were not presented*" to the LEA by the Parents "*because the parents did not participate*" at the annual review meeting.<br><br>3. *Implementing an Unlawful General Education Bypass*<br><br>The disabled students have neuropsychological reports dictating specific structures to prevent dysregulation and disproportionate burdens. Accordingly, the schedules of such disabled students are strictly Child Study Team mandates.<br><br>Nonetheless, the LEA refuses to let the legally mandated Child Study Teams oversee the educational programming of the disabled students and instead routes the family to general education guidance counselors. | | |

Notes:

1. As of March 21, 2026, data regarding communications that were deemed "excessive and repetitive to the Board, Administration, and CST" by the LEA in its March 21 Cease & Desist Letter includes the following:
   a. All communications as of March 21, 2026: 149 total
      i. 47 from LEA (32%)
      ii. 102 from Parents (68%)
         1. 96 from Parent A.B. (64%) and 6 from Parent B.B. (4%)
   b. Communications prior to 1st C&D: 52 total
      i. 20 from LEA (38%)
      ii. 32 from Parents (62%)
         1. 29 from Parent A.B. (56%) and 3 from Parent B.B. (6%)
   c. Communications between 1st C&D and 2nd C&D: 94 total
      i. 25 from LEA (27%)
      ii. 69 from Parents (73%)
         1. 66 from Parent A.B. (70%) and 3 from Parent B.B. (3%)
2. As of May 15, 2026, data regarding communications that were deemed "repetitive, voluminous, excessive" and "harassment" by the LEA in its May 15 Cease & Desist Email includes the following:
   a. Communications between 2nd C&D and 3rd C&D: 51 total
      i. 16 from LEA (31%)
      ii. 35 from Parent A.B. (69%) and 0 from Parent B.B. (0%)
         1. Parent A.B. strictly adhered to the March 21 Cease & Desist Letter and limited communications solely to DSS Heinze until April 15, 2026.
         2. From April 15, 2026 to May 15, 2026, Parent A.B. informed the Board of mass FERPA violations, administrative fraud, retaliatory discipline, and the Superintendent usurping the statutory authorities of the Child Study Team and the Board.
3. As of April 16, 2026, Parents object to the delays caused by the District in holding the annual review meetings. The District is indefinitely delaying annual review meetings by gratuitously withholding student records. Parents postponed annual review meetings past their legal due dates solely for the purposes of accommodating religious observances, deescalating the campaign of retaliation waged by the LEA, and maintaining the ability to retain lawyers for potential due process hearings.
4. At the last annual review meeting in 2025, Parents requested updated neuropsychological classroom observations from [Private Neuropsychologist], Ph.D. "just to make sure everything is moving along as she expected" (Audiotape of Annual Review Meeting 3/28/25). Parents expect the District to discuss why this action was not taken prior to any "expiration" (to directly quote the case manager) of supports or services.

5. Photo of Parent A.B. and [E.B.-2] serving detention together from 8:15 a.m. to 10:15 a.m. on Saturday, May 23, 2026 at FLHS because the building was empty other than a janitor, a volunteer coach, and a few student baseball players:

[REDACTED PHOTO]

6. The following is a transcript of the June 15, 2026 annual review meeting of [E.B.-1] at Fort Lee High School where Parent A.B. was in shock after seeing Athina Cornell of M&W, PC in attendance at the meeting in direct violation of N.J.A.C. 6A:14-2.3 and 34 C.F.R. § 300.322:

**TRANSCRIPTION**

**JUNE 15, 2026 ANNUAL REVIEW MEETING AT FORT LEE HIGH SCHOOL**

**Parent A.B. (talking while Athina Cornell from M&W, PC is talking in the background)**: …led this district into multiple investigations that was based on bad attorney advice very clearly, and you got her [Director Heinze] predecessor, her predecessor is not here anymore because of you [Athina Cornell from M&W, PC] as well…

**Athina Cornell from M&W, PC (talking while Parent A.B. is talking in the background)**: …this is about your student…

**Parent A.B. (talking while Athina Cornell from M&W, PC is talking in the background)**: …I came here, Mr. [Special Education Teacher]] is my witness, I was perfectly cordial, I was really looking forward to this meeting. And I also wanted to clear the air with some folks like [English Teacher], who I think is a great general education teacher but needs some help [on the special education side]. But you [Athina Cornell from M&W, PC] are constantly going after this gold rush of billable hours by giving your clients bad advice and advising them to be uncooperative. You were not on the list [Notice of IEP Team Meeting under the IDEA] that [Case Manager 1] sent me. If he is the case manager, then I respect that list [Notice of IEP Team Meeting under the IDEA] and I did not bring any attorney here myself and I do not want you to be here. But if he is not the case manager, if you are the case manager making administrative decisions on behalf of this district, which some of your attorney-client communications that you released to me voluntarily show may very well be the case, then you should edit that list [Notice of IEP Team Meeting under the IDEA] and send it to me again.

**Athina Cornell from M&W, PC (talking while Parent A.B. is talking in the background)**: …so [Case Manager 1] can you send the attendance sheet…

**Parent A.B. (talking while Athina Cornell from M&W, PC is talking in the background)**: I am attending this meeting under false pretenses that you presented and under protest because you are not supposed to be here. You are not supposed to be here.

**Athina Cornell from M&W, PC (talking while Parent A.B. is talking in the background)**: Okay, we will note that in the IEP document.

**Parent A.B.**: The meeting notice that was officially sent to me was an IDEA document. The document said there were no lawyers at this meeting. That's why I did not bring any attorney to this meeting. That's why [E.B.-1] is unrepresented at this meeting. I don't understand what you think you're going to gain here or your client is going to gain here. After you got involved and gave your client the kind of advice that led them to take blatantly illegal actions, your client was investigated by the United States Department of Education, Office of Civil Rights in a multi-pronged investigation, they were hit with two corrective action plans by the New Jersey Department of Education, OSEP, and now you have another OFAC investigation coming your way, you're getting sued left and right, this is not appropriate. You are not supposed to be here. You are not a member of this IEP team. Last time that you [Athina Cornell from M&W, PC] were here [in 2023], you told Mr. Diaz [the Lewis F. Cole Middle School Principal] that it was perfectly okay to keep [E.B.-1] out of an advanced mathematics class even though he had a 97 average…97.

[Parent A.B. turns to mathematics teacher Mrs. [Math Teacher].]

Mrs. [Math Teacher], his average for that marking period was, I am not making this up, a 100. When is the last time any student in one of your classes had a hundred during any marking period for his mathematics class.

[Parent A.B. turns back to Athina Cornell at M&W, PC and points at her.]

She is the architect of why you are all going into the meat-grinder.

**Athina Cornell from M&W, PC (talking while Parent A.B. is talking in the background)**: Please do not point at me sir. Please stop pointing at me.

**Parent A.B.**: She is the architect of all of these issues.

**Athina Cornell from M&W, PC**: No thank you.

**Parent A.B.**: She and the administrators. I came here perfectly calm. I was very happy to see Mr. [Special Education Teacher]. I was very happy to see Mr. [Special Education Teacher]. My wife wanted me to say "Hi" to Mr. [Social Science Teacher]. She is very sorry that she can't be here because she's being threatened by one of the other 69 lawyers that you guys hired. How many lawyers do you guys need to have an appropriate process, for God's sake.

[Parent A.B. turns to [Case Manager 1].]

And [Case Manager 1], I'm sorry but you should not be leading this meeting if you're a puppet because they're going to throw you under the bus. They're going to say that you engaged in misconduct and I don't want that. I like you very much as a person.

208

**[Case Manager 1]**: Mr. [B.], I appreciate it. I do. We are all here. We're getting close to the end of the year. And we really would like to hold his IEP meeting.

**Parent A.B.**: I would too, but that's why I came here even though I'm under 3 cease-and-desists. I was accused of harassment twice. Twice I was accused of harassment. I'm under 3 cease-and-desists. And that's why my wife was so scared she could not be here. She could not attend. And the person who is the architect of all of this, Methfessel & Werbel, that law firm ambushes me here, now? Are you serious? I mean, if you guys are trying to get a reaction out of me, you got it.

[Parent A.B. turns to the [Special Education Teacher].]

When I came here, Mr. [Special Education Teacher] is my witness, I was so happy to see him, I was so looking forward to this meeting, and I even told him, I am very excited [to see everyone].

[Parent A.B. turns to [Case Manager 1].]

But when you tell someone, as they're walking into a meeting [to sit down] that their child is going to be at another disadvantage because you have your lawyers present there, and I came here relying on the letter you sent me under IDEA [Notice of IEP Team Meeting sent by [Case Manager 1] to Parent A.B.], the written notice that said no attorneys, it's just us, friendly environment, I am then making the mistake of trusting you. And I don't know what to make of that because that's not going to lead to a productive IEP meeting. That's not why we're here.

[Parent A.B. turns to Athina Cornell of M&W, PC.]

She should not be here. She's not welcome here. She shouldn't be here when she knows, I gave you guys 12 notices that I'm not represented by counsel for IDEA matters or for IEP purposes. I told you guys explicitly, if I feel like I need an attorney, I'm going to have to go get one, I'm going to have to retain one. She knows she's not supposed to be here without me going and hiring a lawyer. She knows that. But she doesn't care because when you guys get nailed to the wall for violations of law, when you guys get crucified, her billable hours increase, she does great! When kids get molested at the middle school in the Fort Lee School District, like they did at the middle school, her kids high-five her probably saying that they're going to have a lot bigger Christmas presents this year. And that's why I don't want her here. Because she has a financial interest to make sure this meeting does not go anywhere.

[A third girl came forward alleging that she was molested by her special education teacher at the Lewis F. Cole Middle School during the time period after the last annual review meeting.]

**Director Monica Hienze**: Okay we're going to start the meeting.

**Parent A.B.**: Whereas I have a financial interest in making sure we're all cooperating, things are moving according to track, and anything that happened in the past, that'll get sorted out by the federal litigators, who cares about that?

**[Case Manager 1]**: Can we begin the meeting? [Looking at Director Heinze and Athina Cornell from M&W, PC.] Are we going to proceed with the meeting today?

**Parent A.B.**: You can proceed with the meeting but I'm not going to change anything that I'm saying, she's not supposed to be here, she needs to leave this room immediately for us to have a nice, cordial, civil discussion, I was really looking forward to this. Mr. [Special Education Teacher] is my witness as well, you cannot…you guys have been doing this for 4 months now, you are purposefully agitating parents, eliciting a reaction because she [Athina Cornell from M&W, PC] told you about some dumb "difficult parent" defense, and you've been trying to agitate me over and over and over again, and now you've succeeded. So, what exactly are you complaining about?

**[Case Manager 1]**: I'm sorry you are…I acknowledge what you're feeling…

**Parent A.B.**: [Case Manager 1], look, dude, she's not supposed to be here and you know it. She's not supposed to be here and you know it. So, what do you want from me?

**[Case Manager 1]**: I would like to know whether or not we are continuing today.

**Parent A.B.**: That's a script.

**Director Monica Hienze**: We are continuing!

**Parent A.B.**: He [[Case Manager 1]] even feels bad for me. He even is confused as to whether we should continue or not because he…he…

**[Case Manager 1]**: Mr. [B.]…

**Parent A.B.**: Sir, sir, sir, if they are writing your emails, and forcing you to do all of this, they should not be able to turn around and accuse you of misconduct in the future.

**Director Monica Hienze**: Mr. [B.] we are going to proceed with the meeting. You made your point abundantly clear. We're going to put [Occupational Therapist] on.

**Parent A.B.**: I should be allowed to have my attorney present here after I hire one or Athina should leave the room. It is not an unreasonable request folks. It's just not an unreasonable request. Athina should leave the room. We're not going to talk about any legal topics anyway. That's why I sent my agenda. I sent my questions. You guys know everything. I was supposed to come here and listen to you guys. And if you want to go through the agenda items that's okay. And if you don't, you don't have to. I sent my

210

responses again this morning. This was supposed to be so nice, cordial, and collaborative… My plan was, since I sent you guys the agenda and I sent you guys my questions, I could just relax and listen to what everyone has to say, and then formulate an IEP meeting…

**Director Monica Hienze**: Mr. [B.], we are proceeding.

**Parent A.B.**: …that's it. But you guys are choosing the path of maximum resistance. You're choosing the path of un-cooperation. You're choosing the path of obstructionism. You believe paying lawyers instead of cooperating with parents is the better way to go…

**Athina Cornell from M&W, PC (talking while Parent A.B. is talking in the background)**: Let's begin the IEP meeting.

**Parent A.B.**: …I just don't know if that's in your best interests. I've been in this school district for 30 years. I'm a graduate of this school.

**Athina Cornell from M&W, PC (talking while Parent A.B. is talking in the background)**: Thank you everyone. [Looking at [Case Manager 1].] Proceed.

**[Case Manager 1]**: I'm going to start. I'm going to proceed. I'm going to start with introductions, please, for everybody who's here.

**Principal Lauren Glynn**: Lauren Glynn, high school principal.

**Parent A.B. (talking while teachers are introducing themselves and signing in)**: Folks, lawyers can't help you if students are getting stabbed 7 times in the bathrooms and getting molested in the middle school. [Looking at Athina Cornell from M&W, PC.] Your presence here ma'am is highly inappropriate, you are an attorney, you're not a member of this IEP team, arguably you led this school into…sorry, what was your name, sir?

**[IB Coordinator]**: [IB Coordinator].

[Student records show that [IB Coordinator] wanted to communicate with the parents regarding the IB Diploma Program.]

**Parent A.B.**: Oh you're [IB Coordinator]! See this is the kind of thing…excuse me…hold on a second…I really wanted you to be here because your emails are brilliant. I think you foresaw some of the scheduling problems that we were going to have this year [about] a year and a half ago, which I was fascinated by, and I really wanted to talk to you, except now that your attorney is here to sabotage this entire meeting, I can't, because you actually made some very interesting observations…

**Director Monica Hienze**: Continue with the introductions. Go ahead…

211

**Parent A.B. (talking while teachers are introducing themselves and signing in)**: Sorry, yes, getting back to the topic [turning to Athina Cornell from M&W, PC], you're not supposed to be here, you need to leave immediately, you need to leave.

**Speech Therapist [Speech Therapist]**: [Speech Therapist], speech pathologist.

[Extremely low sound of two teacher introductions from the mathematics teacher Mrs. [Math Teacher] and the [science] teacher Mrs. [Science Teacher].]

**Special Education Teacher**: [Special Education Teacher], special education.

**[Spanish Teacher]**: [Spanish Teacher], Spanish teacher.

**Director of School Counseling Kate Drumgoole**: Kate Drumgoole, Director of School Counseling.

**Athina Cornell from M&W, PC:** Athina Cornell, attorney for the Board [of Education].

**Director Monica Heinze**: Monica Heinze, Director of Special Services.

**[Social Science] Teacher**: [Social Science Teacher], teacher of social studies.

**[Case Manager 1]**: [Case Manager 1], the case manager, and we have…

**Director Monica Hienze**: [Occupational Therapist], you can introduce yourself and begin.

**[Occupational Therapist]**: Yes, I'm [Occupational Therapist], I'm the occupational therapist.

[[Occupational Therapist] is joining remotely via an audio-visual appearance.]

**Parent A.B.**: Okay, so Athina, you're not supposed to be here, please leave. You're agitating me. You're making this a process that's not professional. I'm sorry but you're really not supposed to be here.

**Director Monica Hienze**: Okay go ahead [Occupational Therapist], we can hear you.

**Parent A.B.**: Athina, you're not supposed to be here, I'm sorry but why don't you just leave so we can have the meeting, if they need you they can come get you, you can still bill your hours, it'll be fine.

**Director Monica Hienze**: Mr. [B.], we are proceeding, go ahead [Occupational Therapist].

**Parent A.B.**: Look, you can proceed, but I just don't understand how you can proceed with an attorney here when I'm not represented by an attorney, and this attorney is the one that for years has been giving the school extremely, extremely bad legal advice.

**[Case Manager 1]**: In the interests of time…

**Parent A.B.**: I have interests here too to make sure that this meeting is productive. I'm the one who thought this meeting was going to be routine back in February. I'm the one who thought this meeting was supposed to be [routine], you know because we're the ones that brought an avalanche of evaluations a year ago.

[Director Heinze cranks up the audio sound to the maximum extent, forcing both [Case Manager 1] and Parent A.B. to make facial expressions of pain while they are covering their ears. Director Heinze participated in prior annual review meetings with the same family where <u>noise sensitivity was discussed extensively</u>.]

**[Occupational Therapist]**: …some of the skills we've been working on are fine motor skills, which [E.B.-1] has done very well on using both hands for bi-manual tasks. Something we introduced this year was using a mathematical compass…

**Parent A.B. (talking while [Occupational Therapist] is talking in the background)**: [Occupational Therapist], I have a question. Did the lawyer tell you what to say? Did the lawyer tell you what to say? Did you have a briefing with her before this meeting?

**Director Monica Hienze**: [Occupational Therapist], [Occupational Therapist] continue.

**[Occupational Therapist]**: I'm sorry, I couldn't hear.

**Parent A.B.**: Did the attorney, Athina, tell you what to say? Did you have a pre-meet with her prior to this meeting?

**[Occupational Therapist]**: I'm reading off of my updated…

**Parent A.B.**: Script?

**[Occupational Therapist]**: IEP progress. That's what I'm reading off of right now.

**Parent A.B.**: Okay. [Turning back to Athina.] Look, Athina, you're not supposed to be here. Why don't you step outside…

**Athina Cornell from M&W, PC**: [Looking at [Occupational Therapist]] Just continue please on the updated…therapy update…thank you so much.

**Parent A.B.**: I just don't understand what your role is here. Every time there's a problem in the district…

**Athina Cornell from M&W, PC**: Please stop interrupting.

**Parent A.B.**: …that's possibly caused by violations of law that you advised, we are all agitated as parents, but you are…

**Director Monica Hienze**: [Occupational Therapist] continue [Occupational Therapist]!

**Parent A.B. (talking while [Occupational Therapist] is talking in the background)**: I really don't think it's appropriate for you to be here, you really need to leave, Athina, for us to have this discussion in peace.

**Director Monica Hienze (talking while [Occupational Therapist] is talking in the background)**: Mr. [B.], if you can't stop speaking we're going to ask you to leave!

**Parent A.B. (talking while [Occupational Therapist] is talking in the background)**: I don't think you can do that, you're the one that brought an attorney and ambushed me and I don't have counsel…

**Athina Cornell from M&W, PC (talking while [Occupational Therapist] is talking in the background)**: Please stop interrupting.

**Parent A.B. (talking while [Occupational Therapist] is talking in the background)**: I'm not interrupting anybody, I'm just asking Athina to leave.

**Athina Cornell from M&W, PC (talking while [Occupational Therapist] is talking in the background)**: Thank you so much. Thank you so much.

**Parent A.B. (talking while [Occupational Therapist] is talking in the background)**: Athina, you need to leave so we can have this discussion in a way that's fair to [E.B.-1]. Without it being fair to [E.B.-1], I don't understand what we're doing here. Honestly, I'm very agitated right now, I'm under 3 cease and desists, and I have 2 harassment claims against me by 69 lawyers. How many lawyers do you guys need? Really? I mean, come on.

214

**[Occupational Therapist]**: …he's been great with actually just walking up to some students, asking to participate…

**Parent A.B. (talking while [Occupational Therapist] is talking in the background)**: Athina, I really think you need to leave this meeting. This is obstructionist. It's non-cooperative. Your client hasn't responded to most of the documents that I sent them. I just don't understand how we're supposed to have a productive meeting with an attorney present here. This is really weird. And honestly I don't see what the problem is with postponing this meeting so that I can bring an attorney for [E.B.-1]. Ms. Hienze, why can't I bring my own attorney for [E.B.-1] for this IEP meeting? That's just really strange to me. This is really weird. Wouldn't you guys want your own attorney if your kid was having an IEP meeting with an attorney present for the school district, right? I mean, I just don't understand, it's really weird. Athina, I really do think you need to leave this meeting. This is not productive. It is designed to be obstructionist. It is uncooperative. It is a violation of multiple laws, including IDEA, the Individuals with Disabilities [Education] Act, and New Jersey state laws. I'm sorry, but I can't hear anything that she [OT [Occupational Therapist]] is saying because I'm busy objecting to the attorney's presence here. If she left, we'd have a very… I could then calm down and listen to everyone, but she's here specifically to provoke me so I'm being provoked. What's the issue?

**Director Monica Hienze**: Thank you [Occupational Therapist].

**[Occupational Therapist]**: …and I've been in touch with Rose [private OT] just discussing everything…

**Parent A.B. (talking while [Occupational Therapist] is talking in the background)**: If you've already predetermined what you're going to do, then yeah, of course you need an attorney, but I would like this to be a collaborative environment where a member of the Child Study Team, the father, is present with giving input, and if you're not gonna let me give input, and you're just gonna read off of pre-prepared scripts that your attorneys wrote, I don't think that's appropriate. And look at the problems that you've had guys: A student was stabbed 7 times in the bathroom…

**Athina Cornell from M&W, PC**: Mr. [B.], your objection is noted, please stop interrupting everyone so we can proceed…

**Parent A.B. (talking while Athina Cornell from M&W, PC is talking in the background)**: A student was stabbed 7 times in the bathroom. A third girl came forward saying she was molested by her special education teacher. You do not care about any of that. I do.

**Athina Cornell from M&W, PC**: Stop pointing at me and stop interrupting.

**Parent A.B. (talking while Athina Cornell from M&W, PC is talking in the background)**: I do. I care. I care.

**Athina Cornell from M&W, PC**: Thank you. Thank you. Stop interrupting.

**Parent A.B. (talking while Athina Cornell from M&W, PC is talking in the background)**: I grew up in this school district. I'm a graduate of Fort Lee High School.

215

**Athina Cornell from M&W, PC**: Are there any…

**Director Monica Hienze (looking at Athina Cornell from M&W, PC)**: What do we want to do?

**Athina Cornell from M&W, PC**: Are there any recommendations?

**[Case Manager 1]**: Any recommendations?

**[Occupational Therapist]**: I would just continue next year with the pull-out and push-in sessions, same as this year.

**Parent A.B.**: [Occupational Therapist], do you have raw data or logs of what's been going on because I didn't see any of it in the student records.

**[Occupational Therapist]**: [Awkward silence]

**Parent A.B.**: So just keep track of that moving forward, otherwise, if you're not keeping track of raw data, logs, exactly what you're doing, the percentages, the numerator, the denominator, inadvertently you might be in a position where you can't prove that you're providing the kid FAPE. Do you see what I mean?

**[Occupational Therapist]**: [Awkward silence]

**Parent A.B.**: [E.B.-1] likes you. I'm not saying anything. I'm just saying, you gotta keep proper paperwork, just talk to Rose [private OT]  about that, and if you need me to do it, I can hire Rose again to do it more formally in an evaluation, it's not a problem.

**Director Monica Hienze**: Rose has not renewed the contract so she will not be joining us next year.

**Parent A.B.**: That's fine.

**[Case Manager 1]**: Can you speak to goals for next year?

**[Occupational Therapist]**: Goals?

**Parent A.B.**: But hold on [Occupational Therapist]. Hold on. Are you keeping track of this stuff? Do you have logs and tracking logs and any raw data we can look at to see whether you've hit those percentages?

**[Occupational Therapist]**: Ummm, percentage? Well...

**Parent A.B.**: Let me tell you what I'm talking about. The goals say something like he does this 80% of the time. So do you have logs that show, you tested it 10 times in a row and he did it 8 times? Because I didn't see them in the student records.

**[Occupational Therapist]**: I report based on, for example, if we do an exercise, if he completes it in the session, I say how many times he completed it in that session.

**Parent A.B.**: Do you write it down?

**[Occupational Therapist]**: Yes.

**Parent A.B.**: So where is it? I haven't seen the logs. That's what I'm saying.

**[Occupational Therapist]**: Oh, the logs, I mean, I keep them with all my other student logs, but, ummm…I just keep them for my own records…

**Parent A.B.**: I just want to be clear so that we're talking about the same thing, if that's okay. So, there are a bunch of occupational therapy items in the goals of [E.B.-1]. Some of them might say… I don't have it in front of me because I don't even have a draft IEP. Nothing was given to me before the meeting. But some of them might say "Achieved," some of them might say "Progressing Satisfactorily." [Case Manager 1], when you are allowed to do your job, this is the way it normally works, right? There are these data sets, this raw data, that's attached to each claim in the IEP of whether it's "Achieved" or "Progressing Satisfactorily." I did not see any of that in the student records that were provided to me. And when Director Heinz said there's no other information other than what's been provided to you, it told me that there's no other raw data or logs memorializing any of that. Now, I have her statements in an email. What I'm asking you is a different question. Are you saying that, inconsistent with what she said, you actually have the raw data written down and the logs written down showing that out of 5, 10, 15 opportunities, 20 opportunities, the date and time recorded shows that in 80% of those opportunities, mathematically, he either "Achieved" or "Progressed Steadily [Satisfactorily]" toward that goal. Do you have that data?

**[Occupational Therapist]**: Like I said, it's what I wrote down…

**Parent A.B.**: So you have it. You have it. I just haven't seen it. Is that what you're saying?

**[Occupational Therapist]**: Yes, I usually, that's something that I report back onto the IEP, onto the progress report, whatever I have written down, I summarize into that report.

**Parent A.B.**: So hold on a sec. But summarizing your thoughts and observations is one thing. I'm saying, do you have the actual time-stamped, date-stamped logs? And if you do, then present them to me. Because I did not receive them. And Director Heinze, maybe because she's not in the weeds, said that she doesn't, the district doesn't track that information.

**Director Monica Heinze**: Director Heinze said [referring to herself in the third person], we don't track behavioral intervention data, **sir** [tone clearly escalates when saying "sir"].

**Parent A.B.**: I asked for raw data, ma'am. I asked for raw data. You know, if you want to have a discussion, by the way, maybe your lawyer should leave or maybe she should talk in your stead. What do you think?

**[Case Manager 1]**: Did you address next year's goals? Did you speak to the goals for next year?

**[Occupational Therapist]**: I'm sorry…

**Parent A.B.**: [Occupational Therapist], can I just say something? Is that okay? Because I'm very nervous with Athina being here and with past instances I've identified where the district literally wrote one thing, and then [Athina] wrote something else and their record shows that they lied. [Parent A.B. is describing past instances of Athina Cornell from M&W, PC teaching the district how to lie.] So I'm very concerned about that. So let me just say this. If you don't remember, or you don't know the answer to something, it's totally okay to just say "I don't know" or "I'm gonna double check and get back to you." There's nothing wrong with that. If Athina were a real lawyer, she'd have told the district that three years ago. Right? So, all I want you to do is just think about, like, this is very important…

**Director Monica Hienze**: …okay [Occupational Therapist]…[tries to interrupt]

**Parent A.B.**: …if you have 80% success, you really need to show that.

**Director Monica Hienze**: So we're gonna move on. Thank you [Occupational Therapist].

**Parent A.B.**: So do you have it or do you not have it?

**Director Monica Hienze**: She will double check.

**Parent A.B.**: Excuse me. Are you saying that I'm her lawyer now? That's the answer that I gave her. Do you have it or do you not have it?

218

**Director Monica Hienze**: [Occupational Therapist], it's okay to say yes.

**[Occupational Therapist]**: Yes.

**Parent A.B.**: You have it? Okay that's great.

**[Occupational Therapist]**: I'm sorry! I'm sorry! Can you repeat that?

**Parent A.B.**: Do you have the logs with dates and times stamped, or no?

**[Occupational Therapist]**: Monica was saying something, I'm sorry.

[[Occupational Therapist] is very uncomfortable speaking for herself and looks at Director Monica Heinze to feed her lines.]

**Director Monica Heinze**: Okay [Occupational Therapist], we're going to move on, thank you.

**Parent A.B.**: Excuse me, why can't she answer the question? Do you have the date and time-stamped logs or not? Yes or no?

**[Occupational Therapist]**: I have the records of every time we see each other, it's something that I report, I summarize how the session went, and that is what I recorded.

**Parent A.B.**: And it shows mathematically that out of, let's say, 10 attempts, 8 of them, it was successful.

**[Occupational Therapist]**: If it's appropriate to that goal, yes, if it's for an exercise goal, then yes.

**Parent A.B.**: Okay, then we'll take a look at it, that's great.

**Director Monica Heinze**: Thank you [Occupational Therapist].

[[Occupational Therapist] continues to appear very nervous.]

**Parent A.B.**: So, look, I don't want Athina here. This is really inappropriate. She's getting me very agitated. She's getting me very... [Case Manager 1], do you know what my concern is? My concern is that you guys could have easily hired another lawyer…excuse me…you guys could have easily brought…excuse me…ma'am…I'm talking…

219

**Director Monica Heinze**: You don't stop talking so we're going to keep going.

**Parent A.B.**: This is an important, substantive point…excuse me…

**Athina Cornell from M&W, PC**: It's not substantive to this IEP development.

**Parent A.B.**: It's very substantive to the IEP development.

**Athina Cornell from M&W, PC**: No thank you. No thank you.

**Parent A.B.**: You have 69 lawyers. You could have brought any one of them here. You brought her specifically to agitate me. That is very substantive because it shows, it's another piece of evidence that demonstrates, you are not interested in a collaborative process. You're trying to be obstructionist.

**Athina Cornell from M&W, PC**: Thank you so much.

**Parent A.B.**: You're trying to get a rise out of me. I came here with the best of intentions, and now you guys have completely provoked me. And you know what, if you've provoked me, then let me be provoked, why are you complaining? This is good for you based on what your attorneys are telling you, right? Your attorneys are telling you that you can break the law as much as you want, kids can get stabbed in the bathrooms as much as you want, and it's perfectly fine as long as parents are difficult. As long as parents are difficult…

**Speech Therapist [Speech Therapist]**: This is so inappropriate. I'm sorry. I feel very uncomfortable.

**Parent A.B.**: Why can't Athina leave…

**Athina Cornell from M&W, PC**: Please stop interrupting everyone, **sir** [tone clearly escalates when saying "sir"].

**Parent A.B.**: …for half an hour for us to get through the material?

**Athina Cornell from M&W, PC**: Please stop interrupting sir.

**Speech Therapist [Speech Therapist]**: Mr. [B.], can I share with you, would you like to hear about…

220

**Parent A.B.**: Why can't Athina leave for half an hour…

**Athina Cornell from M&W, PC**: Please stop!

**Parent A.B.**: …for us to have a nice discussion.

**Athina Cornell from M&W, PC**: Please stop!

**Parent A.B.**: Because she's an attorney and [E.B.-1]'s not represented by an attorney!

**Athina Cornell from M&W, PC**: Please stop and let people speak without interruption.

**Parent A.B.**: Ma'am, you have to leave this room, you're not a member of the IEP team.

**Athina Cornell from M&W, PC**: You need to stop interrupting everyone.

**Parent A.B.**: You're not a member of the IEP team. You need to leave the room.

**Athina Cornell from M&W, PC**: You've made everyone extremely uncomfortable, they would like to be able to provide the information…

[A student was stabbed 7 times and bled throughout the bathroom floors and hallways <u>during the time period after the last annual review meeting</u>.]

**Parent A.B.**: We had an excellent IEP meeting last time until your client [Director Monica Heinze] asked me to pay for SPED teachers.

**Athina Cornell from M&W, PC**: Stop interrupting, sir. Go ahead…

**Parent A.B.**: Until your client [Director Monica Heinze] asked me to pay for SPED teachers, we had a pretty productive IEP meeting last time. So what I want right now is you should leave. You should have Athina leave.

**Speech Therapist [Speech Therapist]**: Maybe have the teachers share just because I feel like maybe more pertinent and will address more of Mr. [B.]'s concerns.

221

**Parent A.B.**: I think [E.B.-1]'s speech is extremely pertinent, isn't it?

**Speech Therapist [Speech Therapist]**: It is pertinent, but I feel like academics are your primary concern.

**Parent A.B.**: No. I think [E.B.-1] getting suspended… I think [E.B.-1] participating in the social life of the school… I think all of that's very important.

**Speech Therapist [Speech Therapist]**: I agree with you…

**Parent A.B.**: But she [Athina Cornell from M&W, PC] does not need to be here for us to have this discussion.

**Speech Therapist [Speech Therapist]**: I can't speak to Mr. [B.].

**Parent A.B.**: I'm sorry. Everyone here was at the last IEP meeting. At the IEP meeting last year, raise your hand if you felt harassed or attacked.

**Athina Cornell from M&W, PC**: Mr. [B.], please stop sir. Please stop sir.

[No hands are raised.]

**Parent A.B.**: Did you feel harassed or attacked at the last IEP meeting or did we have a nice discussion?

**Athina Cornell from M&W, PC**: Please stop sir. You may not address the staff members here with the exception of IEP development. Irina, please provide your speech progress report.

**Parent A.B.**: Why are you provoking me? Your presence here, without a heads up for me to bring an attorney for [E.B.-1]…

**Athina Cornell from M&W, PC**: Thank you. Your protest is noted in the IEP.

**Parent A.B.**: …is a provocation. This is all you do. You are provoking me constantly. You are telling them, you're giving them advice to purposefully provoke me constantly, and it's not working because you're wrong on the facts, you're wrong on the law, and it doesn't matter how many times you pound that table, those facts are not gonna change, ma'am.

222

**Athina Cornell from M&W, PC**: [Turning her mouth into her recorder.] It's clear who is obstructionist in this meeting. [Turning to Speech Therapist [Speech Therapist].] Please proceed.

**Parent A.B.**: [slight laugh upon seeing Athina Cornell from M&W, PC performatively talk into the recorder] You are obstructionist. You're the lawyer. I'm a parent who cares about his disabled kid.

**Athina Cornell from M&W, PC**: Please stop interrupting.

**Parent A.B.**: You're a lawyer who's billing hours. Money brought you here. My love for my kid brought me here.

**Athina Cornell from M&W, PC**: Please stop interrupting everyone.

**Parent A.B.**: You are not supposed to be here.

**Athina Cornell from M&W, PC**: Do you not see what you're doing to the staff who is trying to support your son?

**Parent A.B.**: Your legal advice is why this whole district is disintegrating.

**Athina Cornell from M&W, PC**: Okay.

**Parent A.B.**: This school district is disintegrating because of your legal advice, ma'am.

**Director Monica Heinze:** Mr. [B.], we've tried scheduling this meeting probably more than a half a dozen times.

**Parent A.B.**: You didn't provide the student records, ma'am.

**Director Monica Heinze**: Mr. [B.], we'd like to do it today, we're running out of time with teachers here…

**Parent A.B.**: You didn't provide the student records…

**Director Monica Heinze**: MR. [B.]!!! **[Very loud shriek.]**

**Parent A.B.**: [Extremely nervous voice.] Don't yell at me ma'am. Excuse me. I feel under attack. I feel unsafe.

**Director Monica Heinze**: Oh my goodness.

**Voice in the background**: Oh my God.

**Parent A.B.**: I feel unsafe.

**Athina Cornell from M&W, PC**: Please step out. Please step out.

**Parent A.B.**: Why are you yelling at me ma'am? She yelled at me.

**Athina Cornell from M&W, PC**: Please step out, sir.

**Parent A.B.**: Would you like me to play the tape?

**Athina Cornell from M&W, PC**: I do not. Please step out.

**Parent A.B.**: She yelled at me a moment ago.

**Athina Cornell from M&W, PC**: Please step out.

**Parent A.B.**: I would like that tape.

**Voice in the background**: Security.

**Parent A.B.**: I would like that tape.

**Athina Cornell from M&W, PC**: Last time, I'm asking you.

**Parent A.B.**: Okay. Fine.

**Athina Cornell from M&W, PC**: Step out.

**Parent A.B.**: She yelled at me.

[Parent A.B. turns off his own audio recorder and starts heading toward the door.]

**Athina Cornell from M&W, PC**: Step out, sir.

**Parent A.B.**: How about I sit and not say anything?

**Athina Cornell from M&W, PC**: How about you step out?

**Parent A.B.**: Would that be okay?

**Athina Cornell from M&W, PC**: It's clearly impossible for you to do so.

**Parent A.B.**: But she just yelled at me.

**Athina Cornell from M&W, PC**: Please step out! [Athina Cornell from M&W, PC yells at Parent A.B.]

**Parent A.B.**: I am stepping out, but she yelled at me.

**Athina Cornell from M&W, PC**: Thank you.

**Director Monica Heinze**: Mr. [B.].

**Athina Cornell from M&W, PC**: Please step out!

**Parent A.B.**: She yelled at me ma'am.

**Athina Cornell from M&W, PC**: Thank you. Please step out.

**Parent A.B.**: You are not my mommy.

**Athina Cornell from M&W, PC**: Please step OUT!

**Parent A.B.**: She yelled at me.

**Athina Cornell from M&W, PC**: The staff is not comfortable with this kind of behavior! Please step out!

**Parent A.B.**: Ma'am, she yelled at me. And the police is here to remove me from the IEP meeting, are you kidding me?

**Athina Cornell from M&W, PC**: Please step out, sir!

**Parent A.B.**: Ma'am I'm a 2000 grad of this high school.

**Athina Cornell from M&W, PC**: Please step out of this meeting.

**Parent A.B.**: I am not being difficult.

**Athina Cornell from M&W, PC**: You are. You are intimidating the staff. Please step out.

**Parent A.B.**: I am not intimidating anybody.

**Athina Cornell from M&W, PC**: Thank you, sir. Thank you, sir. Please step out.

**Parent A.B.**: I was yelled at by Mrs. Heinze. I was yelled at by Mrs. Heinze.

**Athina Cornell from M&W, PC**: Thank you, sir. Please step out.

**Parent A.B.**: I was yelled at by Mrs. Heinze. She screamed at me.

**Athina Cornell from M&W, PC**: Thank you, sir. Please step out.

226

**Parent A.B.**: She's the one making me feel unsafe. I'm not making anyone feel unsafe.

**Athina Cornell from M&W, PC**: Thank you, sir. Please step out. Please step out. We will record the rest of this meeting.

**Parent A.B.**: You can record the rest of the meeting. She does not have a right to scream at me because she's frustrated that she's unable to get as much of a rise out of me as she [wants]...

[Turning to the armed officer.]

Sir, just so you know, I was in this building unescorted for 2 hours on Saturday…

**Athina Cornell from M&W, PC**: Please step out! Please step out! Please step OUT!!! **[Athina Cornell from M&W, PC yells out the last word.]**

**Parent A.B.**: …with no chaperone, nothing, and now they're removing me out of pure convenience. Just so you know, if you're a police officer who is going to maintain order here, you should do it on the weekends as well.

**Armed Police Officer**: We'll talk about it outside.

**Athina Cornell from M&W, PC**: Thank you so much. Please step out. Thank you so much. Please step out.

**Armed Police Officer**: Let's go.

**Parent A.B.**: You are not supposed to be here, ma'am.

**Athina Cornell from M&W, PC**: Thank you so much.

**Parent A.B.**: You are not supposed to be here.

**Athina Cornell from M&W, PC**: Step out.

**Parent A.B.**: Your legal advice got the district into the situation that it's in.

**Athina Cornell from M&W, PC**: STEP OUT! Step out, sir.

**Parent A.B.**: Ma'am, she yelled at me. Monica Heinze yelled at me. Great to see all of you.

[Door closes after Parent A.B. exits the room]

**Athina Cornell from M&W, PC**: **Great job!**

**[Giggles and laughter are heard in the room]**

**Athina Cornell from M&W, PC**: Let's continue with the recording of this meeting. I am very, very sorry. Let's take a minute so we can pause the recording. And let's take a minute.

[Recording stops. Recording restarts with [Case Manager 1] stating, "We are going to proceed with the meeting now. Mr. [B.] left the meeting, so we are going to proceed with all of the other attendees here".]

*As Parent A.B. is being escorted out of the main doors of the broader building, Parent A.B. asks the armed officer,* ***"Did you feel threatened by me or my coffee and my laptop?"*** *The armed officer responds,* ***"No man, but they don't want you there, you know."***